UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TOMAS ZAVALIDROGA,

                    Plaintiffs,

                                             5:17-CV-00117

v.                                              (DNH/TWD)

MADISON COUNTY, et al.,

                    Defendants.
_____

APPEARANCES:

TOMAS ZAVALIDROGA
Plaintiff pro se
P.O. General Delivery
Old Forge, New York 13420


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

## I.    INTRODUCTION

      Pro se Plaintiff Tomas Zavalidroga has commenced this civil rights action under 42

U.S.C. §§ 1981,1983, and 1985(3) against Defendants Madison County; Madison County Sheriff

Dept.; Madison County Sheriff Allen Riley; Madison County Deputy Sheriff Joshua Paul;

Correction Officer Jonathan Nowak; City of Oneida; Oneida City Police Dept.; Oneida Police

Chief David Meeker; Acting Oneida Police Chief Paul Thompson; Oneida Police Patrol Officer

Sarah Paul; Oneida Deputy Fire Chief Robert L. Cowles; Oneida Police Investigator M. Burgess;

Oneida City Hospital; RN Anne Kopytowski; John Klish; Nancy Klish; Oneida City Court Judge

Anthony Eppolito; and Oneida Court Clerk Lynn M. Mondrick.  (Dkt. No. 11.)[1]

Following the denial of his initial application to proceed *in forma pauperis* ("IFP

Application") as incomplete (Dkt. Nos. 2 and 4), Plaintiff filed a second IFP Application which

is now before the Court for review.  (Dkt. No. 5.)  Plaintiff has also filed a request that I be

recused from handling this case.  (Dkt. No. 10.)

## II.     IFP APPLICATION

As to Plaintiff's second IFP Application, the Court finds that Plaintiff has demonstrated

economic need and has filed the inmate authorization form required in the Northern District to

proceed with this matter *in forma pauperis*.  (Dkt. Nos. 5 and 6.)  As a result, Plaintiff's second

IFP Application (Dkt. No. 5.) is granted.

## III.    RECUSAL REQUEST

In a February 27, 2017, letter to the Hon. David N. Hurd, District Court Judge, Plaintiff

requested my recusal on the grounds that he has first hand knowledge that I have been a political

party functionary in Madison County; I have a financial interest in the outcome of this action;

and I personally know a number of the Defendants, including the Hon. Anthony Eppolito, Oneida

City Court Judge.  (Dkt. No. 10.)

A judge must recuse "[herself or] himself in any proceeding in which [her or] his

---

[1]  In response to Plaintiff's request that he be given an opportunity to clarify the causes of the action in his original complaint (Dkt. No. 5-1) the Court issued a Text Order on February 14, 2017, allowing Plaintiff an opportunity to file an amended complaint by March 17, 2017, and agreeing to forego initial review under 28 U.S.C. § 1915 until the amended complaint was filed. (Dkt. No. 9.)  Plaintiff filed his amended complaint consisting of two separate documents containing consecutively numbered paragraphs on March 16, 2017.  (See Dkt. Nos. 11 and 11-1.) The documents will be referred to together as Docket No. 11 when the citation is to one of the numbered paragraphs and otherwise to the relevant page number of Docket No. 11 or 11-1.

impartiality might reasonably be questioned." 28 U.S.C. § 455(a).[2]  Specifically, the Court must

consider "whether an objective and disinterested observer, knowing and understanding all of the

facts and circumstances, could reasonably question the court's impartiality." *S.E.C. v.*

*Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013), *as amended* (Nov. 26, 2013); *see also U.S. v. Amico*,

486 F.3d 764, 775 (2d Cir. 2007) (the "central focus is on whether [the] allegations [of bias and

partiality], when coupled with the judge's rulings on and conduct regarding them, would lead the

public reasonably to believe that [the judge's bias or partiality] affected the manner in which [she

or] he presided.").

 "A recusal decision rests within the sound discretion of the judge whose recusal is

sought." *Neroni v. Coccoma*, No. 3:13-cv-1340 (GLS/DEP), 2014 WL 2532482, at * 4

(N.D.N.Y. June 5, 2014).[3]  The Second Circuit has, however, instructed that when "the standards

governing disqualification have not been met, disqualification is not optional; rather it is

prohibited." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001).  In other words, "[a] judge is as

much obliged not to recuse [herself or] himself when it is not called for as [she or] he is obliged

to when it is." *Id*.  (citation and internal quotations marks omitted).  A judge is presumed to be

impartial, and the party seeking disqualification bears the substantial burden of proving that a

judge is not qualified by clear and convincing evidence.  *See Kinnear-Weed Corp. v. Humble Oil*

*& Refining Co.*, 441 F.2d 631, 634 (5th Cir. 1971).

 In *Maier v. Orr*, 758 F.2d 1578, 1583 (Fed. Cir. 1985), the Federal Circuit explained that

---

[2]  Inasmuch as Plaintiff has not complied with the requirements of 28 U.S.C. § 144, the
Court is treating his motion as one under 28 U.S.C. § 455.

[3]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in
accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

in considering the presence of disqualifying circumstances "[c]onclusory statements are of no effect. Nor are . . . unsupported beliefs and assumptions. Frivolous and improperly based suggestions that a judge recuse should be firmly declined. . . . Nor does mere association form a reasonable basis for questioning a judge's impartiality." Furthermore, a judge "must have neighbors, friends and acquaintances and be a part of [her or] his day and generation . . . [T]he ordinary results of such associations and the impressions they create in the mind of the judge are not the 'personal bias or prejudice' to which [§ 455] refers." *Ditta v. Branch Motor Exp.*, No. CIV-84-949E, 1990 WL 112360, at * 2 (W.D.N.Y. July 26, 1990) (Elfvin, D.J.) (quoting *Ex Parte N.K. Fairbank Co.*, 194 Fed. 978, 989 (M.D. Ala. 1912)).

Plaintiff's articulated basis for seeking my recusal is his own unsupported beliefs and erroneous assumptions concerning my actions and relationships. I was involved in Madison County politics more than five years ago before being appointed a Magistrate Judge. However, I never worked on the campaigns of any of the Defendants. The only conceivable financial interest I have in the outcome of this action is the same as the interest of all other Madison County property owners who pay real estate taxes. Although I know Defendants Judge Eppolito and Sheriff Riley well enough to say hello, I have never had a social or political relationship with them. Back while I was practicing law, probably around 2010 or before, I did legal work for Oneida Healthcare, formerly Oneida Hospital, through a medical malpractice insurer. I am not familiar with any of the other Defendants.

I have given consideration to the foregoing and concluded that there is no basis upon which my impartiality could be reasonably questioned by a disinterested and impartial observer. *See Razmilovic*, 738 F.3d at 29. I have also considered the possibility that Plaintiff's true

4

motivation in requesting my recusal is his dissatisfaction with rulings and recommendations made by me in an Order and Report-Recommendation, dated September 22, 2015 (Case No. 6:14-CV-1273, N.D.N.Y. (hereinafter "*Zavalidroga I*"), Dkt. No. 23), recommending dismissal of his previous lawsuit involving his mother's disappearance and dementia diagnosis, which was adopted by the Hon. Glenn T. Suddaby, Chief District Court Judge. *See Zavalidroga v. Oneida Cty. Dep't of Adult Protect. Servs.*, No. 6:14-CV-1273 (GTS/TWD), 2015 WL 9255557 (N.D.N.Y. Dec. 18, 2015).

Even if that is the case, Plaintiff's dissatisfaction with my prior rulings and recommendations does not provide a proper ground for my recusal. *See Liteky v. U.S.*, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *S.E.C. v. Loving Spirit Found, Inc.*, 392 F.3d 486, 494 (D.C. Cir. 2004) ("if disqualification were required merely as a result of counsel's disagreement with judicial conclusions reached in the course of litigation, the judicial system would grind to a halt.") (citation and internal quotation marks omitted).

Based upon the foregoing, I conclude that there are no grounds for my recusal, and that I am, in fact, obliged not to recuse myself, and therefore to deny Plaintiff's motion. *See In re Aguinda*, 241 F.3d at 201.

## IV. INITIAL REVIEW

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) directs that when a plaintiff proceeds *in forma*

*pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).[4]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief against a person who is immune from such relief."  28 U.S.C. § 1915A.

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the Plaintiff has stated "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court should construe the factual allegations in the light

---

[4]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

most favorable to Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged   but it has not "show[n] that the pleader is entitled to relief." *Id*. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotations marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

## V. AMENDED COMPLAINT

Plaintiff alleges that he has commenced this civil rights action against eighteen Defendants in order to: (1) "redress a long-standing civil rights conspiracy involving the

defendants and to secure emergency injunctive relief relating to the unlawful nullification of the contracts between Tomas Zavalidroga and Margaret Zavalidroga, the conversion of their real property and assests (sic) and Margaret Zavalidroga's forced confinement and detention at a nursing facility";[5] and (2) "redress his own false incarceration and a series of fraudulent prosecutions against him and the mistreatment he has suffered while incarcerated." (Dkt. No. 11 at ¶¶ 1-2.[6])

Plaintiff has asserted claims: (1) pursuant to 42 U.S.C. § 1981 for violation of his rights to equal protection and due process under the Fourteenth Amendment, to be free from unlawful seizure under the Fourth Amendment, to be free from involuntary servitude under the Thirteenth Amendment, and violation of various other rights under the First, Fifth, Sixth, and Eighth Amendments; (2) pursuant to 42 U.S.C. §§ 1983 and 1985(3) for deprivation of certain rights, privileges, and immunities guaranteed under the Constitution pursuant to the de facto policies and customs of Madison County, the City of Oneida, and State of New York, and by their failure to properly train and supervise subordinates; (3) under state law for false imprisonment, conversion, slander and defamation, and malicious prosecution; and (4) violation of the U.N. International Charter of Universal Human Rights. *Id.* at ¶¶ 50-53.

---

[5] Plaintiff's prior lawsuit, in which he alleged a conspiracy under 42 U.S.C. ¶¶ 1981, 1983, and 1985 to nullify the power of attorney Margaret had given him and to undo transfers of Margaret's real property to Plaintiff, was dismissed without prejudice on *Younger* abstention grounds because there was a pending state court action regarding guardianship over Margaret and control over her affairs and real property, including property Plaintiff had transferred to himself using his power of attorney. *See Zavalidroga v. Oneida Cty. Dep't of Adult Protect. Servs.*, No. 6:14-CV-1273 (GTS/TWD), 2015 WL 9255557 (N.D.N.Y. Dec. 18, 2015).

[6] Paragraph references are used where the referenced document contains consecutively numbered paragraphs. Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

The relief sought by Plaintiff includes: (1) compensatory and punitive damages of $5,000,000 each; (2) attorney's fees and costs; (3) an order recognizing the medical proxy powers granted to Plaintiff over the treatment of Margaret and the immediate release of Margaret from confinement with monetary damages and compensation awarded to her; (4) an order for the return of all items of personal property seized from Plaintiff while his power of attorney granted by Margaret was still valid and a review pursuant to the Fourth and Fifth Amendments of all searches, seizures, and warrants undertaken by the City of Oneida Police in this matter; (5) an investigation of Judge Eppolito concerning the post-sentencing prosecutions and orders of protection in violation of the Fourth, Fifth, and Fourteenth Amendments; (6) declaratory and injunctive relief under the U.N. International Charter of Universal Human Rights Treaty; and (7) review under the Eighth Amendment of the post-sentencing treatment of Plaintiff.  *Id*. at 4-5.

### A.     Margaret Zavalidroga's Disappearance and Subsequent Dementia Diagnosis

On July 18, 2014, Plaintiff's mother, Margaret, disappeared from Plaintiff's van while it was parked in the driveway of Defendants John and Nancy Klish.  (Dkt. No. 11 at ¶ 26.)  Plaintiff and Margaret had driven to the Klish home so that John Klish could help him trailer a farm vehicle he had purchased.  *Id*. at ¶ 25.  Plaintiff noticed his mother had disappeared when they returned from picking up the vehicle.  *Id*. at ¶ 26.  Nancy Klish had been at home the entire time Plaintiff and John Klish were picking up the vehicle.  *Id*.  Plaintiff alleges that John Klish was initially reluctant to look for Margaret and stopped altogether, and when John and Nancy Klish called 911 at Plaintiff's request, they ordered him to leave their house.  *Id*.

Defendant City of Oneida Police Officer Sarah Paul came to the scene but neglected to do a foot search or call in other officers.  *Id*. at ¶ 27.  An officer from the Sheriff's Department, who

turned out to be Sarah Paul's husband, also came by and asked Plaintiff a couple of questions. *Id.* at ¶ 27. Plaintiff alleges that on the evening of Margaret's disappearance, while he was at a local mall, he was told that people had heard on a police scanner that an elderly woman had been found in the woods and taken to Oneida Hospital. *Id.* at ¶ 29. According to Plaintiff, when he went to the hospital it took an inordinately long time for the hospital to confirm or deny her presence, and a hospital official told him that a conspiracy was afoot with regard to Margaret's disappearance. *Id.* Plaintiff alleges that at approximately 11:00pm on the evening of Margaret's disappearance, when he told Defendant Oneida Police Investigator M. Burgess that no search had been conducted for Margaret, Burgess lied and told him the Oneida Police had done a foot search of the surrounding woods earlier in the evening. *Id.* at ¶ 29.

The Madison County Sheriff's Department conducted a foot search of the area on July 21, 2014, and at 5:00pm, after four hours of searching, found Margaret about 100 feet from a major highway approximately one-half mile from the Klish home. *Id.* at ¶ 30. Plaintiff alleges that the search was staged and fabricated by the Sheriff's Department, which had barred Plaintiff from the search area and did not want anyone to observe the search. *Id.* at ¶ 31. Margaret was allegedly found in a state of undress, with hypothermia and suffering from symptoms of delirium. *Id.* at ¶ 33.

Margaret was taken to the Oneida Healthcare Center where Defendant RN Anne Kopytowski tested her for dementia. *Id.* Plaintiff alleges the testing was done immediately after Margaret was brought to the Healthcare Center for the purpose of supporting a pre-planned diagnosis of dementia, which would be used to justify Margaret's long-term drugging and forced confinement, and ultimately confiscation of all of Zavalidroga's assets under a fraudulent

guardianship and destruction of all prior contracts between Margaret and Plaintiff.  *Id*.

According to Plaintiff, Margaret has been confined falsely in a locked dementia unit and, as a

result, has suffered significant destruction of her physical and mental health.  *Id*. at ¶ 34.

**B.      Plaintiff's Arrest and Conviction in Connection with Margaret's Disappearance**

On the evening of July 21, 2014, after Margaret was found, Plaintiff was questioned and

placed under arrest on charges he had brought her into the woods and knew where she was when

he reported her missing.  *Id*. at ¶ 32.  Plaintiff was arraigned before Defendant City Court Judge

Eppolito and remained in jail from July 21, 2014, until approximately August 13, 2014.  *Id*. at

¶ 35.  Judge Eppolito issued an order of protection which forbade contact between Plaintiff and

Margaret.  *Id*.  The protective order was continually renewed by Judge Eppolito.  *Id*.  Plaintiff

alleges that in multiple court appearances between July 2014 and May 2016, Judge Eppolito

plotted a course to maintain charges against Plaintiff and push the matter to trial.  *Id*.  at ¶ 36.

Plaintiff, who initially represented himself at trial, asked Judge Eppolito's court clerk to

"stir up" the neatly stacked pieces of paper with information on prospective jurors.  *Id*. at ¶ 37.

Judge Eppolito forbade the court clerk from doing so.  *Id*.

Plaintiff alleges that during the course of the trial, Judge Eppolito allowed Defendant

Oneida Deputy Fire Chief Robert L. Cowles ("Cowles") to give perjured testimony.  *Id*. at ¶ 38.

According to Plaintiff, one minute Cowles testified that he had no knowledge of Plaintiff or

search details before July 21, 2014, and the next minute perjured himself by admitting he had

attended a special police meeting the day before.  *Id*.   Plaintiff also alleges that when John Klish

testified at trial that Plaintiff's van was parked in the Klish drive with the front window facing

the street, Judge Eppolito allowed him to change his testimony when the District Attorney reminded Klish that he had given a statement on July 21, 2014, that the van was parked in the driveway with the rear side facing the street so that he could not see into it. *Id.* at ¶ 39. In addition, Judge Eppolito is alleged to have refused to act on Defendant Burgess' testimony that he did not believe his own sworn statement but had never bothered to amend it. *Id.* at ¶ 40.

Plaintiff was convicted on July 29, 2016, and sentenced by Judge Eppolito to one year in the Madison County Jail, which Plaintiff alleges was run by Defendant Madison County Sheriff's Allen Riley. *Id.* at ¶ 41.

### C. Plaintiff's Incarceration

Plaintiff claims he was subjected to false prosecutions and other official harassment and abuse during his incarceration. *Id.* at ¶ 42. Plaintiff alleges that despite his having made clear that he did not want any medical testing or treatment while he was incarcerated, he was consistently badgered to take a TB test, and he was served with a post-trial order to submit to a DNA test by August 15, 2016, ten days after service of the order. *Id.* at ¶ 43. On August 13, 2016, before Plaintiff could properly respond to the demands and without administrative due process, he was administratively prosecuted for failure to submit to the DNA and TB tests and given fifty days of lock-in and a $25.00 fine. *Id.* at ¶ 44. Although criminal charges for the same thing in Oneida City Court were dismissed, the prosecutor issued several more orders to show cause on the same charges based upon contempt of court. *Id.* at ¶ 45.

Plaintiff alleges that on November 14, 2016, he was arrested by Defendant Madison County Sheriff Deputy Joshua Paul for violation of the protective order forbidding contact with Margaret as a result of his attempt to communicate with her via the U.S mail. *Id.* at ¶ 47.

According to Plaintiff, the arrest was made solely for the purpose of harassing him. *Id.*

Plaintiff also alleges that when his original fifty day lock-in was completed, he was informed by Defendant Madison County jail administrator Jonathan Nowak that the twenty-four hour lock-in status would continue indefinitely, and Plaintiff had been kept under lock-in for almost six months at the time he filed his original complaint, without being allowed daily exercise. *Id.* at ¶ 48. In addition, Plaintiff was continuously moved from smaller to smaller cell to the point where he was housed in a holding cell not suitable for habitation, and he was subjected to multiple strip searches without probable cause in a manner to which other inmates were not subjected. *Id.* at ¶ at 49.

## VI. LEGAL ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Plaintiff's Claim Under the United Nations' Universal Declaration of Human Rights

Plaintiff alleges the violation by Defendants of the U.N. International Charter of Human Rights Treaty. (Dkt. No. 11 at ¶ 53.) The United Nations' Universal Declaration of Human Rights does not "impose obligations as a matter of international law" enforceable in federal court." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004); *see also United States v. Chapman*, 351 F. App'x 740, 741 (3d Cir. 2009) ("[T]he Universal Declaration of Human Rights is a non-binding declaration that provides no private right of action."); *Bey v. New York*, No. 11-CV-3296 (JS)(WDW), 2012 WL 4370272, at * 7 (E.D.N.Y. Sept. 21, 2012) (no private right of action under international treaties, the United Nations' Universal Declaration of Human Rights, or provisions of the United Nations' Charter). Therefore, the Court recommends that Plaintiff's claim under the Declaration be dismissed with prejudice.

### B.    Plaintiff's Claims Under 42 U.S.C. §§ 1981 and 1985

Plaintiff has alleged claims for violation of a number of his constitutional rights under 42 U.S.C. § 1981 and for conspiracy under 42 U.S.C. § 1985(3).  (Dkt. No. 11 at ¶¶ 50-51.)  Section 1981 provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."  42 U.S.C. § 1981(a).  Section 1981(c) provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and under color of state law."

To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) plaintiff is a member of a minority race; (2) attempt to discriminate against Plaintiff on the basis of race by defendant; and (3) discrimination that concerned one or more of the activities enumerated in the statute.  *See Mian v. Donaldson, Lufkin & Jenrette Securities Corporation*, 7 F.3d 1085, 1087 (2d Cir. 1993).  Plaintiff has failed to allege facts showing that he is a member of a minority race and has, therefore, failed to state a claim under § 1981.

Section 1985(3) addresses in relevant part conspiracies to deprive "any person or class of person of the equal protection of the laws, or of equal privileges or immunities under the laws."  The elements of a conspiracy claim under § 1985(3), are: (1) that the defendants had a racial or other class-based, invidiously discriminatory animus; (2) that such animus motivated the defendants to enter into a conspiracy; (3) to deprive plaintiff of a constitutional or other federal right; (4) that a defendant committed an overt act in furtherance of that conspiracy; (5) resulting

in injury to the plaintiff. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267 (1993).

Given the absence of factual allegations in his amended complaint that he was discriminated against on the basis of race or some other cognizable suspect class, the Court finds that Plaintiff has failed to state a claim under § 1985. *See Webster v. Fischer*, 694 F.Supp. 2d 163, 196 (N.D.N.Y. 2010) (§ 1985(3) claim subject to dismissal when plaintiff fails to establish membership in a protected class), *aff'd* 398 F. App'x 683 (2d Cir. 2010).

### C. Claims Against Defendants Judge Eppolito and Court Clerk Mondrick

The Court has construed Plaintiff's amended complaint as alleging claims against Judge Eppolito and Mondrick under § 1983 for violation of his Sixth and Fourteenth Amendment due process rights with regard to the refusal of Plaintiff's request that the neatly stacked papers with information on prospective jurors be thoroughly "stirred up." (Dkt. No. 11 at ¶ 37.) The Court further construes the amended complaint as alleging Fourteenth Amendment due process claims against Judge Eppolito with respect to his handling of Plaintiff's criminal trial, issuance of and renewal of the protective order against Plaintiff, and various post-criminal trial proceedings. (See Dkt. No 11 at ¶¶ 35-36, 38-41, 47.)

#### 1. Judge Eppolito

It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities. *Bradley v. Fisher*, 13 Wall 335, 80 U.S. 335 (1871); *accord, Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam) (holding that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Immunity from suit is overcome in only two narrow circumstances. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's

judicial capacity." *Mireles*, 502 U.S. at 11. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice." *Mireles*, 502 U.S. at 11. A judge cannot "be deprived of immunity because the action he took was in error . . . or was in excess of authority." *Id*. at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

The allegations in Plaintiff's amended complaint show that the claim against Judge Eppolito is related to matters before him and to actions that were judicial in nature and were within his jurisdiction. Therefore, the Court finds that Judge Eppolito is entitled to judicial immunity and recommends that the amended complaint be dismissed as against him with prejudice.

### 2. Mondrick

The sole allegation against Mondrick in the amended complaint is that she had neatly stacked pieces of paper with information on prospective jurors, and Judge Eppolito forbade Plaintiff's request that she "stir up" the stack and allowed her to select jurors from the neat stack. (Dkt. No. 11 at ¶ 37.) The doctrine of "[q]uasi immunity has been extended to those officials performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Tornheim v. Eason*, 363 F.Supp. 2d 674, 677 (S.D.N.Y. 2005), *aff'd* 175 F. App'x 427 (2d Cir. 2006) (citation and internal quotation marks omitted). Quasi-judicial immunity attaches when the clerk is performing tasks that are

judicial in nature and an integral part of the judicial process, as well as to administrative functions undertaken pursuant to the explicit direction of a judicial officer. *See Humphrey v. Court Clerk for the Second Circuit*, No. 508-CV-0363 (DNH), 2008 WL 1945308, at * 2 (N.D.N.Y. May 1, 2008) ( citing *Rodriguez v. Weprin*, 116 F.3d 62, 66-67) (2d Cir. 1997)).

Plaintiff has acknowledged in his amended complaint that Judge Eppolito forbade the "stirring up" of the prospective juror pieces of paper as requested by Plaintiff. Therefore, the Court finds that Mondrick is entitled to quasi-judicial immunity and recommends that the amended complaint be dismissed against her with prejudice.

### D.   Defendant Oneida Deputy Fire Chief Robert L. Cowles

Plaintiff alleges that Judge Eppolito allowed Cowles to give perjured testimony at Plaintiff's criminal trial. (Dkt. No. 11 at ¶ 38.) That appears to be the sole factual allegation regarding Cowles in the amended complaint. In *Briscoe v. LaHue*, 460 U.S. 325 (1983), the Supreme Court held that the common law immunity long afforded private parties for testimony in a judicial proceeding, provides absolute immunity on civil rights claims under § 1983 for "all persons   governmental or otherwise   who were integral parts of the judicial process." Therefore, the Court finds that Defendant Cowles is entitled to absolute immunity from liability to Plaintiff under § 1983.

### E.   Defendants David Meeker and Paul Thompson

Plaintiff has named former City of Oneida Police Chief David Meeker and Acting City of Oneida Police Chief Paul Thompson as Defendants. (Dkt. No. 11 at ¶ 11.) However, the amended complaint is devoid of factual allegations of any personal involvement or misconduct by the two Defendants with regard to any of Plaintiff's claims. A complaint that "names a

17

defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff should be dismissed as to that defendant." *Dove v. Forham University*, 56 F.Supp. 2d 330, 335 (S.D.N.Y. 1999). Therefore, the Court recommends that the complaint be dismissed as against Meeker and Thompson.

### F. Madison County Sheriff's Department and the Oneida City Police Department

Plaintiff has named the Madison County Sheriff's Department and the Oneida City Police Department as Defendants. (Dkt. No. 11 at ¶¶ 3 and 10.) Although a municipality is subject to suit pursuant to § 1983, *see Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978), a municipal police or Sheriff's department that is an administrative arm of the municipality does not have the capacity to be sued as an entity separate from the municipality in which it is located.[7] *See Hayes v. County of Sullivan*, 853 F.Supp. 2d 400, 438 (S.D.N.Y. 2012); *Krug v. County of Rennselaer*, 559 F.Supp. 2d 223, 247 (N.D.N.Y. 2008). Therefore, any viable claims the Plaintiff may be found to have against the Oneida City Police Department or the Madison County Sheriff's Department are properly brought against their respective municipalities, and the Court recommends that the case be dismissed with prejudice as against the Madison County Sheriff's Department and the Oneida City Police Department.[8]

---

[7] *See* Oneida County Charter, Art. X: Department of Public Safety, §§ 10.1, 10.2 at ecode360.com/27520211, and Madison County New York website at www.madisoncountysheriff.us (last visited April 14, 2017).

[8] In *Morris v. New York City Police Dept.*, 59 F. App'x 421, 422-23 (2d Cir. 2003), the Second Circuit directed district courts to grant leave to pro se litigants to amend their complaints to name the municipality in which a police of sheriff's department sits as the real party in interest when a case is dismissed against the department on the grounds that it is not an entity capable of being sued. Inasmuch as Madison County and the City of Oneida have been named as Defendants herein, the Court will construe Plaintiff's claims against the two departments as

### G.   Defendants Madison County and the City of Oneida

In *Monell*, 436 U.S. at 691, the Supreme Court found that "the language of [section] 1983, read against the background of the legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000); *accord Monell*, 436 U.S. at 691.  Courts apply "rigorous standards of culpability and causation" to ensure that the municipality is not held liable solely for the actions of its employees. *Jeffes*, 208 F.3d at 61 (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).  Thus, in order for an individual whose constitutional rights have been violated to have recourse against a municipality under § 1983, he must show that he was harmed by a municipal "policy" or "custom." *Monell*, 436 U.S. at 690-91.  A "policy" or "custom" cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan, J., concurring in part and concurring in the judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell* . . . .").  To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." *Tuttle*, 471 U.S. at 823.

A municipal "policy" can include an officially promulgated policy, i.e., a formal act by a

---

claims against their respective municipalities.

municipality's governing body, *Monell*, 436 U.S. at 690, or an act taken by a municipal employee who, as a matter of State law, has final policy making authority in the area in which the action was taken. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-81 (1986); *Walton v. Safir*, 122 F. Supp. 2d 466, 477 (S.D.N.Y. 2001) ("[T]he act of an official with final decision-making authority, if it wrongfully causes the plaintiff's constitutional injury, may be treated as the official act of the municipality."). A municipal "custom" need not receive formal approval by the appropriate decisionmaker: "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability *on the theory that the relevant practice is so widespread as to have the force of law*." *Brown*, 520 U.S. at 404 (emphasis added).

Plaintiff has failed to allege facts plausibly showing that his alleged injuries were caused by any identified custom or policy Madison County or the City of Oneida. Even when a plaintiff is proceeding pro se "bare allegations of the existence of a custom or policy and his conclusory assertion that the policy was linked to his constitutional injuries are insufficient to state a *Monell* claim." *Youngblood v. City of New York*, No. 15 CIV 3541 (AT)(HBP), 2016 WL 3919650, at * 5 (S.D.N.Y. June 27, 2016).

A municipality may be liable for deprivation of constitutional rights under § 1983 for inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). However, to state a claim against either Madison County or the City of Oneida, Plaintiff must allege facts plausibly showing that the County or City failed to properly hire, supervise, or train employees in

connection with his claims.  *Twombly*, 550 U.S. at 570; *Hall v. Smith*, 170 F. App'x 105, 108

(11th Cir. 2006) (affirming dismissal of § 1983 claim against municipality where plaintiff alleged

no factual support for his conclusory statement that the municipality had a policy or custom of

grossly inadequate training and supervision of its law enforcement personnel).  Plaintiff's

training and supervisory liability claim is wholly conclusory.  (*See* Dkt. No. 11 at ¶ 51.)

Plaintiff must do more than plead "[c]onclusory allegations or legal conclusions

masquerading as factual conclusions" to state a municipal liability claim under *Monell*.  *Andino*

*v. Fischer*, 698 F.Supp. 2d 362, 376 (2d Cir. 2009). Because he has not done so, the Court

recommends dismissal of the amended complaint as against Madison County and the City of

Oneida.

### H.     Claim of Civil Rights Conspiracy Related to Margaret Zavalidroga

Plaintiff alleges a "long-standing civil rights conspiracy involving the defendants relating

to the nullification of contracts between Plaintiff and Margaret, conversion of their real property

and assets, and Margaret's forced confinement and detention in a nursing home facility.  (Dkt.

No. 11 at ¶ 1.)  Plaintiff has made no attempt in his amended complaint to identify which of the

Defendants he claims to have been involved in the conspiracy, nor can the Court ascertain with

absolute certainty whom of the Defendants Plaintiff claims to have been involved.[9]  (*See*

*generally* Dkt. No. 11.)  Plaintiff has named as Defendants individuals and agencies who had

some involvement in: (1) the investigation of Margaret's disappearance; (2) the determination

that she was suffering from dementia; (3) the guardianship proceeding which resulted in the

---

[9]  It appears that the named individual Defendants Plaintiff may have intended to include
as belonging to the civil conspiracy include John and Nancy Klish, Oneida City Police Officer
Sarah Paul, Oneida Police Investigator Burgess, the Oneida City Hospital, and RN Kopytowski.

nullification of Plaintiff's power of attorney; (4) the appointment of a guardian who challenged Plaintiff's transfers of Margaret's real property to himself; and (5) Margaret's forced confinement and detention in a nursing home facility. *Id.*

However, he has wholly failed to allege facts plausibly showing an agreement among any of the Defendants to act in concert to inflict an unconstitutional injury on Plaintiff as is required to state a claim under § 1983.[10] *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) ("complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed.").

Even if Plaintiff had adequately plead a civil conspiracy claim, the Court finds that the claim is barred under the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, federal courts generally lack subject matter jurisdiction over claims that seek review of adverse state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413. 416 (1923) (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"). Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). A court

---

[10] The specific elements of a § 1983 conspiracy claim that a plaintiff must show are: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citation omitted)

may dismiss an action *sua sponte* under the *Rooker-Feldman* doctrine. *See, e.g., Triestman v. Schniederman*, No. 1:16-CV-1079 (TJM/DEP), 2016 WL 6110489, at * 3 (N.D.N.Y. Sept. 20, 2016) (claims implicating the *Rooker-Feldman* doctrine, which relates to lack of subject matter jurisdiction, may be raised at any time by either party or *sua sponte* by the court).

In the complaint in *Zavalidroga I*, in which Plaintiff sued his two brothers and sister-in-law, the Oneida County Department of Adult Protective Services, and Oneida County Social Services employee Kristin Palmer, Plaintiff alleged a long-standing civil rights conspiracy to secure emergency injunctive relief relating to Margaret's confinement and detention and Plaintiff's power of attorney over her affairs. (*Zavalidroga I*, Dkt. No. 1 at ¶ 1.) In his complaint, Plaintiff alleged that the defendants in that lawsuit were engaged in an attempt to commence a fraudulent state court action in an effort to nullify his power of attorney over Margaret's affairs and to effect a conversion of property Margaret had conveyed to him.[11] *Id*. at ¶ 2.

Prior to the time the complaint in *Zavalidroga I* was dismissed upon initial review pursuant to 20 U.S.C. § 1915(e), Plaintiff informed the Court that the then ongoing state court guardianship proceeding New York State Supreme Court, Oneida County, referenced in the complaint, had resulted in the nullification of the power of attorney Margaret had given Plaintiff and the appointment by the Hon. Samuel D. Hester, Supreme Court Justice, of a legal guardian

---

[11] For background regarding the state court guardianship proceeding, see an October 23, 2014, article in the Oneida Daily Dispatch newspaper reporting that the Hon. Samuel Hester, New York State Supreme Court, Oneida County, stripped Plaintiff of his power of attorney over Margaret following a two-day hearing held around the time the complaint was filed in *Zavalidroga I*. *See* www.oneidadispatch.com/article/OD/20141023/NEWS/141029828 (last visited April 14, 2017).

for Margaret.[12] (*Zavalidroga I*, Dkt. Nos. 9 and 11 at 6-8.)  Plaintiff, through his civil conspiracy

claim in this case seeks, in effect, to appeal to the district court from Judge Hester's

determinations in the state court guardianship proceeding and have the district court return things

between Plaintiff and Margaret to pre-guardianship proceeding status.  (*See* Dkt. No. 11-1 at 5.)

The district court is barred from doing so under the *Rooker-Feldman* doctrine.  *See Siino v. NYC*

*Human Resources Administration/Department of Social Services*, No. 14-CV-7217 (MKB), 2015

WL 1877654, at * 4 (E.D.N.Y. April 21, 2015) ("To the extent that Plaintiff seeks review of state

court decisions and orders relating to her guardianship proceedings, federal court review of those

decisions and orders would be barred by the *Rooker-Feldman* doctrine."); *In re Card*, No. 12-

CV-114, 2012 WL 382730, at * 2 n.5 (E.D.N.Y. Feb. 6, 2012) (noting that the "*Rooker-Feldman*

doctrine would require a finding that subject matter jurisdiction is lacking because [plaintiff] is

essentially asking the Court to review an adverse state court judgment appointing a guardian

made before" the plaintiff commenced the federal action).

Based upon the foregoing, the Court recommends that Plaintiff's civil rights conspiracy

claim regarding Margaret be dismissed for lack of subject matter jurisdiction on the grounds it is

barred under the *Rooker-Feldman* doctrine.  The Court further recommends that the district court

decline to exercise supplemental jurisdiction over Plaintiff's state law claim for conversion,

which arises out of the state court guardianship proceeding Plaintiff seeks to challenge.  *See* 28

---

[12] In *Zavalidroga I*, Plaintiff submitted Justice Hester's Order to Show Cause in the state court action directing the Zavalidroga brothers, including Plaintiff, to show cause why Margaret's court appointed Guardian's application to have the Oneida County Sheriffs be authorized to execute deeds transferring back parcels of real property from Plaintiff to the Guardian, in support of his request for a temporary restraining order staying the state court proceeding. (*Zavalidroga I*, Dkt. No. 11 at 6-8.)

U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over state law claims where the related federal claims are dismissed).

I.  **Claim Regarding Allegedly False Incarceration and Fraudulent Prosecutions**

Plaintiff has described this civil rights lawsuit as, in part, seeking redress for his own false incarceration and fraudulent prosecution which resulted in his conviction on criminal charges and a sentence of incarceration for one year in the Madison County Jail.[13]  (Dkt. No. 11 at ¶¶ 2, 32, 41.)  Plaintiff is seeking compensatory damages in the amount of $5,000,000 as well as punitive damages.  (Dkt. No. 11-1 at 4-5.)  As with his civil conspiracy claim, Plaintiff has failed to specifically identify those Defendants against whom he is asserting his Fourth and Fourteenth Amendment claims under § 1983 and state law claims for false imprisonment and malicious prosecution, although the allegations clearly implicate Judge Eppolito, who has judicial immunity (s*ee, e.g.,* Dkt. No. 11 at ¶¶ 35-41); unidentified members of the Madison County Sheriff's Department who allegedly staged and fabricated the search that led to finding Margaret in the woods; *id*. at ¶¶ 30-31; and possibly Oneida Police Investigator Burgess.  *Id*. at ¶¶ 27, 29, 34.

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).  False arrest and false imprisonment are one and the same, and

---

[13]  According to a May 26, 2016, article in the Oneida Dispatch, updated on May 28, 2016, Plaintiff was found guilty of second degree reckless endangerment and third degree falsely reporting an incident.  *See* www.oneidadispatch.com/article/OD/20160526/NEWS/160529812. (site last visited on March 30, 2017).

the elements are the same under § 1983 and state law.  *Hershey v. Goldstein*, 938 F.Supp. 2d 491, 515 (S.D.N.Y. 2013).  Probable cause is a complete defense to claims for false arrest and imprisonment, and "a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause."  *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986).  On a malicious prosecution claim, a plaintiff must show that the criminal proceedings commenced against him terminated in his favor.  *Id.*  Since Plaintiff was convicted of the charges on which his false arrest or imprisonment and malicious prosecution claims are based, he has failed to state a claim for either.

Even if Plaintiff could be found to have stated a claim for false arrest or imprisonment or for malicious prosecution, the Court finds that the claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), in which the Supreme Court adopted the rule that

> when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction has already been invalidated.[14]

A plaintiff may show that the conviction has been invalidated by establishing that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus. . . ."  *Id.*  Plaintiff has made no such showing.  Where *Heck* applies, the Court may dismiss the claim *sua sponte.  See, e.g., Shue v. U.S.*, 466 F. App'x 51, 51-52 (2d Cir. 2012) (affirming *sua sponte* dismissal of claim pursuant to *Heck*).  Where the *Heck* bar applies, a claim for damages

---

[14]  *Heck* also applies to claims under 42 U.S.C. §§ 1981 and 1985(3).  *See Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999).

under § 1983 cannot accrue until a plaintiff obtains relief from the underlying criminal conviction. *Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014)

"In the context of § 1983 malicious prosecution cases, *Heck's* bar is coextensive with the favorable termination requirement." *Poventud*, 750 F.3d at 131. Therefore, Plaintiff's malicious prosecution claim is barred by *Heck*. Plaintiff's false arrest or imprisonment claim is likewise barred under *Heck* because to prevail on those claims Plaintiff would have to demonstrate that Defendants did not have probable cause to arrest him, *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), and a finding of lack of probable cause would necessarily imply the invalidity of is conviction.[15] *See Lewis v. Weiss*, No. 12-cv-07242 (ALC), 2016 WL 1718251, at * 4-5 (S.D.N.Y. April 27, 2016) (finding § 1983 claims for false arrest and false imprisonment barred under *Heck*); *Cracco v. City of New York*, No. No. 14 Civ. 8235 (PAC), 2015 WL 6738332, at * 3 (S.D.N.Y. Nov. 4, 2015) (same).

**J.      Claims Related to Plaintiff's Period of Incarceration**

Plaintiff alleges that while he was incarcerated in the Madison County jail, he was given fifty-days of lock down without administrative due process in connection with his failure to take a TB test and a court ordered DNA test. (Dkt. No. 11 at ¶¶ 43-45.) Plaintiff further alleges that when the fifty day lock-in was completed, Defendant Madison County jail administrator Defendant Jonathan Nowak informed him that the twenty-four hour a day lock-in would continue indefinitely; that he had been under lock-in without exercise time for six months at the time he

---

[15] The Court recommends that the district court decline to accept supplemental jurisdiction over Plaintiff's state law claims for false arrest, false imprisonment, and malicious prosecution. *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over state law claims where the related federal claims are dismissed).

commenced this action; and that he continued to be moved to smaller and smaller cells. *Id.* at ¶¶ 48-49. Plaintiff also claims that he was frequently subjected to being strip-searched. Id. at ¶ 49. *Id.* In addition, Plaintiff claims that he was arrested for violating the protective order regarding his mother by Defendant Madison County Sheriff Deputy Joshua Paul solely for the purpose of harassing him, and Judge Eppolito sustained the allegedly unconstitutional attack. *Id.* at ¶ 47. According to Plaintiff, Defendant Madison County Sheriff Allen Riley was in charge of the Madison County jail during the period of his incarceration. *Id.* at ¶ 42.

The Court construes Plaintiff's amended complaint as alleging claims against Defendants Riley and Nowak for denial of due process under the Fourteenth Amendment and cruel and unusual punishment under the Eighth Amendment with regard to his placement in lock-in, the increasingly smaller size of his cell, and frequent strip-searches. Mindful of the Second Circuit's instruction to liberally construe a pro se plaintiff's pleadings, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court recommends that Plaintiff be permitted to pursue those claims against Riley and Nowack.

The Court construes Plaintiff's amended complaint as alleging § 1983 claims for false arrest and malicious prosecution under the Fourth and Fourteenth Amendments, and for cruel and inhuman punishment under the Eighth Amendment against Joshua Paul.[16] The elements of a § 1983 claim for false arrest are: (1) defendant intended to confine plaintiff; (2) plaintiff was conscious of his confinement; (3) plaintiff did not consent to be confined; and (4) the confinement was not otherwise privileged. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d

---

[16] As previously noted, Plaintiff's § 1983 claims for false arrest and malicious prosecution are substantially the same as those claims under state law. *Tavernier*, 316 F.3d at 134.

Cir. 1995). Plaintiff was already incarcerated at the time of his alleged arrest by Joshua Paul and has not alleged facts showing any additional confinement as a result of the arrest.

The elements of a § 1983 claim for malicious prosecution are: "(1) the initiation or continuance of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). Plaintiff has failed to allege facts plausibly stating a claim for malicious prosecution.

Prisoners have no constitutional right to be free from harassment. *Greene v. Mazzuca*, 485 F.Supp. 2d 447, 451 (S.D.N.Y. 2007). Harassment, to be actionable, "must be so drastic as to violate the Eighth Amendment's right to be free from cruel and unusual punishment, but only in the harshest circumstances." *Id*. The Court finds that Plaintiff's claim that Joshua Paul arrested him for violation of the order of the protection with regard to Margaret, based upon Plaintiff's attempt to write to Margaret, particularly given Plaintiff's acknowledgment that Judge Eppolito "sustained" the allegedly unconstitutional action, fails to state a claim for relief under the Eighth Amendment.

Given the foregoing, the Court recommends that: (1) Plaintiff's claims against Riley and Nowack for violation of his rights under the Fourth, Eighth, and Fourteenth Amendments be allowed to go forward; and (2) Plaintiff's claims against Joshua Paul under the Fourth, Eighth, and Fourteenth Amendments be dismissed with leave to replead in light of Plaintiff's *pro se* status.

**K.      State Law Slander and Defamation Claim**

Plaintiff has alleged state law claims for slander and defamation.  (Dkt. No. 11 at ¶ 52.) "Defamation" consists of the twin torts of libel and slander under New York law.  *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001).   The elements of a state law claim for slander are: (1) defamatory statement or fact; (2) that is false; (3) published to a third party; (4) of or concerning the plaintiff; (5) either causing harm or constituting slander per se, and (6) not protected by privilege.  *Id*. at 266.

Plaintiff has not identified the statement or facts he claims to be false or identified the third party to whom they were allegedly published in his amended complaint.  Nor has he alleged facts plausibly showing any of the other elements of a slander claim.  Because of the absence of any facts with regard to Plaintiff's slander claim, there is no basis upon which to determine whether it relates to the claims against Riley and Nowak, which are the only claims that the Court is recommending survive initial review.  Therefore, the Court recommends that the district court decline to accept supplemental jurisdiction over the Plaintiff's state law slander and defamation claims.  *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over state law claims where the related federal claims are dismissed).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's second IFP Application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's request for my recusal in this case (Dkt. No. 10) is **DENIED**; and it is hereby

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 11 and 11-1) be **DISMISSED** upon initial review, except as to Plaintiff's Fourth, Eighth, and Fourteenth Amendment claims against Defendants Riley and Nowak arising out of Plaintiff's conditions of confinement in the Madison County jail, which the Court **RECOMMENDS** be allowed to proceed; and it is further

**RECOMMENDED** that dismissal of the amended complaint against Defendants Judge Eppolito, Mondrick, and Cowles be with prejudice on absolute immunity grounds; and it is further

**RECOMMENDED** that dismissal of the amended complaint against the Madison County Sheriff's Department and Oneida City Police Department be with prejudice; and it is further

**RECOMMENDED** that dismissal of Plaintiff's § 1983 claim for civil conspiracy regarding Margaret asserted against Defendants John and Nancy Klish, Oneida City Police Officer Sarah Paul, Oneida Police Investigator Burgess, the Oneida City Hospital, RN Kopytowski, and all other Defendants against whom Plaintiff intended to assert the claim, be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine; and it is further

**RECOMMENDED** that dismissal of Plaintiff's § 1983 claims for false arrest or imprisonment and malicious prosecution asserted against unidentified Madison County Sheriff's Department personnel, Burgess, and all other Defendants against whom Plaintiff intended to assert the claim, be dismissed without prejudice under *Heck*; and it is further

**RECOMMENDED** that dismissal of the amended complaint against Madison County

and the City of Oneida be with prejudice as to all claims dismissed under the *Rooker-Feldman* doctrine, and without prejudice as to all claims dismissed under *Heck* and claims arising out of Plaintiff's conditions of confinement; and it is further

**RECOMMENDED** that dismissal of the amended complaint against Defendants Meeker and Thompson be with leave to amend only as to Plaintiff's claims arising out of his conditions of confinement; and it is further

**RECOMMENDED** that dismissal of the conditions of confinement claims against Joshua Paul be with leave to amend; and it is further

**RECOMMENDED** that the District Court decline to accept supplemental jurisdiction over Plaintiff's state law claims for false arrest or imprisonment, malicious prosecution, conversation, and slander; and it is hereby

**ORDERED**, that the Clerk provide Plaintiffs with copies of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[17]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[17]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated:   April 14, 2017
        Syracuse, New York

                                     Thérèse Wiley Dancks
                                  United States Magistrate Judge

2012 WL 4370272
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Malcolm BEY, Francique Bey, Rein Bey,
Drizzle Bey, Truth Bey, and Amicus Curiae
Bey, in propia persona, sui juris, Plaintiffs,
v.
State of NEW YORK, Nassau County Inc., Nassau
County Family Court, Nassau County Child
Protective Services, Edmund Dane, Suzanne
Leahey, Elizabeth Mcgrath, rosalie fitzgerald,
john coppola, Alton Williams, David Sullivan,
Kathleen Rice, David Gotimer, Bruce Cohen,
Merry–Lou Ferro, Cheryl Kreger, Warren Freeman,
and Jane Doe/John Doe 1–100, Defendants.

No. 11–CV–3296 (JS)(WDW).
|
Sept. 21, 2012.

**Attorneys and Law Firms**

Malcolm Bey, Francique Bey, Rein Bey, Drizzle Bey,
Truth Bey, Amicus Curiae Bey, Uniondale, NY, pro se.

Ralph Pernick, Esq., N.Y.S. Attorney General's Office,
Mineola, NY, for Defendants N.Y.S. Defendants.

Liora M. Ben–Sorek, Esq., Nassau County Attorney's
Office, Mineola, NY, for Defendants County Defendants.

Adam Daniel Levine, Esq., Matthew K. Flanagan, Esq.,
Catalano, Gallardo & Petropoulous, LLP, Jericho, NY,
for Defendant Bruce Cohen, Esq.

Jessica Zimmerman, Esq., Marian C. Rice, Esq.,
L'Abbate, Balkan, Colavita & Contini LLP, Garden City,
NY, for Defendant Cheryl Kreger, Esq.

*MEMORANDUM & ORDER*

SEYBERT, District Judge.

**\*1** Presently pending before the Court are the following
motions: (1) Plaintiff Malcolm Bey's ("Mr.Bey") motions
to "set aside and vacate" this Court's Order dated July

28, 2011 (Docket Entries 19, 27); (2) Mr. Bey's motion
for a default judgment (Docket Entry 39); (3) a motion
to dismiss the claims against Defendants State of New
York, Nassau County Family Court, Judge Edmund
Dane, Judge David Sullivan, Rosalie Fitzgerald, and John
Coppola (the "State Defendants") (Docket Entry 25); (4) a
motion to dismiss the claims against Bruce Cohen (Docket
Entry 29); and (5) motions to dismiss the claims against
Cheryl Kreger (Docket Entries 18, 32). [1] For the following
reasons, Mr. Bey's motions to vacate and for a default
judgment are DENIED and the motions to dismiss are
GRANTED (with the exception of Defendant Kreger's
letter-motion at Docket Entry 18, which is DENIED AS
MOOT).

*BACKGROUND*

The Plaintiffs in this action are Mr. Bey; his wife,
Francique Bey ("Mrs.Bey"), and their minor children,
Rein Bey, Drizzle Bey, Truth Bey, and Amicus Curiae
Bey (the "Bey Children"). Mr. Bey commenced this action
*pro se,* on behalf of himself, his wife, and his children
against Nassau County, Inc. [sic], Nassau County Child
Protective Services ("CPS"), Suzanne Leahey, Elizabeth
McGrath, Alton Williams, Nassau County District
Attorney Kathleen Rice, David Gotimer, Merry–Lou
Ferro, and Warren Freeman (collectively, the "County
Defendants"), the State Defendants, Mr. Cohen, and Ms.
Kreger arising out of petitions for child neglect that were
filed in Nassau County Family Court in 2009 and 2010.
The Court will briefly summarize the facts as stated in the
Complaint-which are presumed to be true for the purposes
of this Memorandum and Order-that are relevant to the
pending motions.

On or around June 4, 2009, the Bey Children were
questioned at school by CPS regarding suspected child
abuse occurring in the Bey home. (Compl.¶ 26.) The
Bey Children were later taken to the police station for
further questioning. (Compl.¶ 26.) Mrs. Bey was arrested,
and the Bey Children returned home with their father.
(Compl.¶ 26.) The following day, however, the Bey
Children were removed from the home and placed in foster
care (Compl.¶¶ 27, 31), and on or around June 9, 2009
petitions for neglect were filed with the Family Court
against Mr. and Mrs. Bey. (Compl.¶ 31.)

Shortly thereafter, CPS inspected the Bey home and, after finding it habitable for the Bey Children, returned them to their father. (Compl.¶ 32.) A temporary restraining order was issued against Mrs. Bey, however, and she was only allowed supervised visitation with her children. (Compl.¶ 32.) She was ordered to take parenting and anger management classes. (Compl.¶ 34.) During this time, Mr. Bey "lost work" because he could not afford daycare, and he and his family were eventually evicted from their home. (Compl.¶ 35.) In December 2009, the neglect petition against Mr. Bey was withdrawn. (Compl.¶ 36.)

**\*2** In April 2010, a new neglect petition was filed and a temporary restraining order issued against Mr. Bey. (Compl.¶ 37.) During the next few months, the Bey Children were repeatedly questioned by CPS at school and visited by CPS twice a month at home. (Compl.¶ 39.) On June 7, 2010, Mr. Bey attempted to file an "objection and counterclaim" in Family Court, but Defendant Coppola, the Family Court's Deputy Chief Clerk, refused to file it. (Compl.¶ 40.) Mr. Bey was able to successfully file it, however, a few days later. (Compl.¶ 41.)

Mr. Bey returned to Family Court several times during the next few months for appearances before Judge Dane related to the neglect petition. (Compl.¶ 42.)[2] The proceedings were repeatedly adjourned, and Mr. Bey eventually told Judge Dane that he would not be returning to court. (Compl.¶ 42.) Judge Dane warned him that failure to appear would result in a warrant being issued for his arrest. (Compl.¶ 42.)

On October 19, 2010, Mr. Bey went to the Family Court to file papers and bumped into his court-appointed attorney, Mr. Cohen, leaving Judge Dane's chambers. (Compl.¶ 44.) Mr. Cohen advised him that he had missed a court appearance that morning before Judge Dane and that it had been rescheduled for 2:00PM. (Compl.¶ 44.) When Mr. Bey returned that afternoon, however, he was arrested for failing to appear that morning and incarcerated. (Compl.¶ 44.)

In January 2011, Judge Dane extended the temporary restraining order issued against Mr. Bey and ordered that he be mentally evaluated. (Compl.¶ 45.) Mr. Bey returned to court on March 15, 2011 for trial. CPS asked Mr. Bey to turn custody of the Bey Children over to CPS for one year, but Mr. Bey refused and his trial was adjourned to April 29, 2011. (Compl.¶¶ 46.48.) Around

the same time, Mr. Bey requested copies of "everything in the court file." (Compl.¶ 47.) Defendants Fitzgerald, the Family Court's Chief Clerk, and Coppola gave him some documents but not others. (Compl.¶ 47.) Mr. Bey returned to court on April 29 and was asked to turn over custody of his children to CPS for six months, but he again refused. (Compl.¶ 49.) His trial was adjourned to May 13, 2011. (Compl.¶ 49.) On that date, he was again asked to give CPS custody of his children. (Compl.¶ 50.) This time, Ms. Kreger, the Bey Children's appointed law guardian, "attempt[ed] to coerce" him to agree to it, but he again refused. (Compl.¶ 50.) The trial was rescheduled to June 8, 2011 (Compl.¶ 51), and on June 15, 2011, Ms. Kreger spoke with the Bey Children at school about the alleged neglect (Compl.¶ 52.)

Mr. Bey commenced this action on July 8, 2011, asserting claims for, *inter alia,* violations of the Constitution (*e.g.,* due process and unreasonable search and seizure), various criminal statutes (*e.g.,* genocide and kidnapping), international treaties and provisions of the United Nations' Charter, as well as a claim under the Alien Tort Claims Act and claims for "breech [sic] of trust and fiduciary duty," for "use of statutes[,] ordinances, rules and policies of the corporate state of New York[,] not a rule of law against indigenous man," and fraud. He is seeking monetary, declaratory, and injunctive relief. Mr. Bey simultaneously filed an application for a temporary restraining order and preliminary injunction which was denied by this Court on July 13, 2011. [3]

**\*3** On July 28, 2011, this Court entered an Order that: (1) reminded Plaintiffs that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure they had to serve process on Defendants by November 7, 2011 or their Complaint would be dismissed; (2) advised Plaintiffs of their duty to keep the Court informed of any change of address; and (3) warned Plaintiffs that the claims brought on behalf of the Bey Children would be dismissed without prejudice unless counsel entered a notice of appearance on their behalf within thirty days. (Docket Entry 7.) No counsel has filed a notice of appearance on behalf of the Bey Children to date.

Presently pending before the Court are the following: (1) Mr. Bey's motions to vacate the July 28, 2011 Order, (2) motions to dismiss filed on behalf of the State Defendants, Mr. Cohen, and Ms. Kreger, and (3) Mr. Bey's motion

for a default judgment against all Defendants. [4] Plaintiffs have not opposed the motions to dismiss.

*DISCUSSION*

Before discussing the merits of the pending motions, the Court must briefly address a threshold issue. Pursuant to Rule 11(a) of the Federal Rules of Civil Procedure, "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record ... or, by a party personally if the party is unrepresented." Since a non-attorney, *pro se* party may not represent another's interests, *see Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998), every *pro se* plaintiff must sign a copy of the operative complaint in order to be a party to the action, *see Lynch v. DeMarco,* No. 11–CV–2602, 2011 WL 3418390, at *2 (E.D.N.Y. July 29, 2011). Here, only Mr. Bey signed the Complaint; therefore, he is the only proper plaintiff in this action. If the Court does not receive a copy of the Complaint signed by Mrs. Bey within thirty (30) days of the date of this Memorandum and Order, all of her claims will be dismissed.

I. *Motion to Set Aside and Vacate*
On September 19, 2011, Mr. Bey filed a motion requesting that the Court "take mandatory judicial notice that the order dated July 28, 2010[sic], signed by Judge Joanna Seybert is inconsistent with Stare decisis [sic] Supreme Court Ruling [sic] *Winkleman v. Parma Central School District,* 550 U.S. 516 (2007)" and "set aside and vacate [this] void order." (Docket Entry 19.) Mr. Bey filed a similar (albeit less clear) motion to "take mandatory judicial notice" and "set aside and vacate" the July 28, 2011 Order on October 31, 2011. (Docket Entry 27.) These motions are denied for three reasons.

*First,* to the extent that Mr. Bey is seeking to vacate a "final judgment, order, or proceeding" pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, his motion is premature as the July 28, 2011 Order is not a "final" order for the purposes of Rule 60(b). *See Byrne v. Liquid Asphalt Sys., Inc.,* 250 F.Supp.2d 84, 87 (E.D.N.Y.2003) ("Courts have held that a final judgment is needed to support a Rule 60(b) motion." (citation omitted)); *Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 526–27 (N.D.N.Y.1995) (finding that an order "dismissing some but not all of the defendants, and dismissing some but not all of

plaintiff's claims, was interlocutory and thus not 'final' for the purposes of Rule 60(b)").

**\*4** *Second,* to the extent that Mr. Bey's motion is more properly construed as one for reconsideration under Local Civil Rule 6.3, his motion is time-barred. Local Civil Rule 6.3 requires motions for reconsideration to "be served within fourteen ¶ 4) days after the entry of the Court's determination of the original motion." Here, Mr. Bey waited almost two months after the Court issued its Order to file his first motion to vacate and another six weeks to file his second motion to vacate. Thus, both motions are time-barred and are, accordingly, DENIED. [5]

*Finally,* Mr. Bey's argument in support of reconsideration is without merit. Mr. Bey argues that he and his wife may represent the interests of their infant children *pro se.* However, while a parent may bring a lawsuit on behalf of an infant child, it is well established that the parent cannot do so *pro se. See Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) (holding that a father was not allowed to bring suit on behalf of his minor daughter without representation by counsel); *Berrios v. N.Y.C. Hous. Auth.,* 564 F.3d 130, 133 (2d Cir.2009) ("The fact that a minor or incompetent person must be represented by a next friend, guardian ad litem, or other fiduciary does not alter the principle ... that a non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel."). The Court warned Plaintiffs that the claims brought on behalf of the Bey Children would be dismissed unless counsel filed a notice of appearance by August 27, 2011. More than a year has passed and no lawyer has appeared on behalf of the Bey Children. Accordingly, their claims are DISMISSED without prejudice.

II. *Motion for Default Judgment*
Also pending is Mr. Bey's motion for the entry of default and a default judgment against all Defendants. A party is entitled to an entry of default when the party against whom judgment is sought "has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). In the present case, counsel for Defendants either filed a motion to dismiss or an answer on behalf of every Defendant (*see* Docket Entries 25, 29, 32, 34), and the Clerk of the Court noted this on December 7, 2011 when he refused to enter a certificate of default against Defendants (Docket Entry

44). Thus, there is no basis for entering a default judgment in this case, and Mr. Bey's motion is DENIED.

### III. *Motions to Dismiss*

There are three motions to dismiss pending: one filed by the State Defendants, one filed by Cheryl Kreger, and one filed by Bruce Cohen. The Court will first discuss the applicable standard of review before turning to the merits of the pending motions.

### A. *Standard of Review under Rule 12(b)(6)*

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). *First,* although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris,* 572 F.3d at 72 (alteration in original) (quoting *Iqbal,* 556 U.S. at 678) (internal quotation marks omitted). *Second,* only complaints that state a "plausible claim for relief" survive a motion to dismiss. *Id.* (internal quotation marks and citation omitted). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal quotation marks and citation omitted). While *pro se* plaintiffs enjoy a somewhat more liberal pleading standard, *see Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation omitted), they must still comport with the procedural and substantive rules of law. *Colo. Capital v. Owens,* 227 F.R.D. 181, 186 (E.D.N.Y.2005).

### B. *The State Defendants' Motion to Dismiss*

**\*5** For the following reasons, the Court grants the State Defendants' motion to dismiss.

### 1. *Claims against New York State and the Nassau County Family Court*

All of Mr. and Mrs. Bey's claims against the State of New York and the Nassau County Family Court are barred by

sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.1990) (citations omitted); *see also Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). This bar precludes suits against states for both monetary and equitable relief. *See Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *see also Atl. Healthcare Benefits Trust v. Googins,* 2 F.3d 1, 4 (2d Cir.1993). Therefore, all claims against the State of New York must be dismissed with prejudice.

The Nassau County Family Court is also immune from suit under the Eleventh Amendment because it is an arm of the State of New York. *Madden v. Vt. Sup.Ct.,* 8 F. App'x 128, 129 (2d Cir.2001) (finding that claims against the Vermont Supreme Court were barred by the Eleventh Amendment); *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir.2009) (finding that the New York state Unified Court System, of which a county court is a part, is an "arm of the State," and therefore entitled to Eleventh Amendment immunity); *Manko v. Steinhardt,* No. 11–CV–5430, 2012 WL 213715, at *3 (E.D.N.Y. Jan. 24, 2012) (dismissing claim against the Kings County Supreme Court of the State of New York Clerk's Office because it was barred by Eleventh Amendment immunity as an arm of the State of New York). Accordingly, the claims against the Nassau County Family Court must also be dismissed with prejudice.

### 2. *Claims against Judge Dane and Judge Sullivan*

The claims for monetary relief against Judge Dane and Judge Sullivan must be dismissed because "[i]t is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction," *Miller v. Cnty. of Nassau,* 467 F.Supp.2d 308, 312 (E.D.N.Y.2006) (citing *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Maestri v. Jutkof sky,* 860 F.2d 50, 52–53 (2d Cir.1988)), and that such "immunity is not overcome by allegations of bad faith or malice," *Mireles,* 502 U .S. at 11 (citation omitted); *see also Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18

L.Ed.2d 288 (1967) ( "[I]mmunity applies even when the judge is accused of acting maliciously and corruptly."). Here, as all of the claims against Judge Dane and Judge Sullivan arise solely out of actions they allegedly took from the bench while presiding over various proceedings involving Mr. and Mrs. Bey, their alleged wrongful conduct falls squarely within the scope of absolute judicial immunity. Accordingly, all of Mr. and Mrs. Bey's claims for monetary relief are dismissed with prejudice.

**\*6** Mr. and Mrs. Bey are also seeking declaratory and injunctive relief, which do not fall within the ambit of judicial immunity. These claims, however, fail as a matter of law. *First,* Mr. and Mrs. Bey's claims for injunctive relief under Section 1983 are barred because "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Further, to the extent that Mrs. Bey's constitutional claims arise out of the ongoing Family Court proceedings, they are barred either by the *Younger* abstention doctrine, *see Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002) ( "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." (citing *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669) (1971)); *Donkor v. N.Y.C. Human Res. Admin. Special Servs. for Children,* 673 F.Supp. 1221, 1224–27 (S.D.N.Y.1987), or the *Rooker–Feldman* doctrine, [6] *see Phifer v. City of N.Y.,* 289 F.3d 49, 57 (2d Cir.2002) ("This court may not review the family court's determinations regarding custody, neglect and visitation" if "those issues were decided by the family court after providing [the plaintiff] with a full and fair opportunity to litigate those issues").

*Second,* Mr. and Mrs. Bey's claim for breach of the public's trust is not a cognizable cause of action. *See Brady v. Lynes,* No. 05–CV–6540, 2008 WL 2276518, at \*6 (S.D.N.Y. June 2, 2008).

*Third,* their claim under the Alien Tort Claims Act fails because they are not "aliens" within the meaning of the statute. *See Topo v. Dhir,* 210 F.R.D. 76, 78 (S.D.N.Y.2002) (defining "alien" in the context of the Alien Tort Claims Act as a "foreign born person who

has not qualified as a citizen of the country" (internal quotation marks and citation omitted)). Mr. and Mrs. Bey assert that they are "aliens" because they have declared their independence from the United States (*see* Mr. Bey's Aff. in Support of Prelim. Inj. ¶ 4 ("Indigenous Affiant declares independence from the USA and all sub-corporations thereof, and heretofore, herein and hereafter claims absolute power, authority and control over himself, without limitation, and herein states, for the record, that he is a free, sovereign indigenous political power holder ...."); *see also* Compl. at 1 (Mr. Bey describing himself as a "Free Indigenous Sovereign Political Power Holder"); *id.* at 42 (requesting a "Declaratory Judgment verifying the lawful indigenous status of The Bey Family")); however, such arguments have been uniformly rejected by courts in this Circuit and others, *see, e.g., United States v. Hilgeford,* 7 F.3d 1340, 1342 (7th Cir.1993) ("The defendant in this case apparently holds a sincere belief that he is a citizen of the mythical 'Indiana State Republic' and for that reason is an alien beyond the jurisdictional reach of the federal courts. This belief is, of course, incorrect."); *Duwenhoegger v. King,* No. 10–CV–3965, 2012 WL 1516865, at \*14 (D.Minn. Feb. 13, 2012) ("[A]ny argument by plaintiff that he is not subject to the laws of Minnesota or the United States because he is a "Sovereign Citizen" is frivolous." (collecting cases)); *M & I Marshall & Ilsley Bank v. Glavin,* No. 10–CV–0616, 2011 WL 322663, at \*1 (W.D.Wis. Jan. 31, 2011) ("This 'sovereign citizen' argument has been rejected repeatedly by courts."); *United States v. Lumumba,* 741 F.2d 12, 14–15 (2d Cir .1984) (rejecting criminal defendant's argument that he is immune from prosecution due to his "proclaimed status" as "Vice President and Minister of Justice" of the "independent state" of "the Republic of New Afrika"—a self-created "Nation of Afrikans born in North America as a consequence of ... slavery" (alteration in original)).

**\*7** *Fourth,* any of Mr. and Mrs. Bey's claims arising under Title 18 of the United States Code necessarily fail because there is no private right of action under criminal statutes, *see, e.g., Sanchez v. Dankert,* No. 00–CV–1143, 2002 WL 529503, at \*10–11 (S.D .N.Y. Feb. 22, 2002) (collecting cases), and there is similarly no private right of action under international treaties or provisions of the United Nation's Charter, *see, e.g. id.* at \*11; *United States v. De La Pava,* 268 F.3d 157, 164 (2d Cir.2001) ("[T]here is a strong presumption against inferring individual rights from international treaties."); *Garza v. Lappin,*

253 F.3d 918, 924 (7th Cir.2001) ("[A]s a general rule, international agreements, even those benefitting private parties, do not create private rights enforceable in domestic courts."); RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES,, § 907 cmt. a. ("International agreements ... generally do not create private rights or provide for a private cause of action in domestic courts...."); Joyner–El v. Giammarella, No. 09–CV–3731, 2010 WL 1685957, at *3 n. 4 (S.D.N.Y. Apr. 15, 2010) (finding that the United Nations' Universal Declaration of Human Rights and Declaration on the Rights of Indigenous Peoples do not create federal causes of action (citing Sosa v. Alvarez–Machain, 542 U.S. 692, 734, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004))).

*Finally,* Mr. and Mrs. Bey's claim that "any Laws[,] statutes, ordinances and rules made since 1867 are unconstitutional" because Congress "ceased to exist as a lawful deliberative body" after the South seceded from the Union during the Civil War is frivolous and entirely without merit.

Accordingly, all claims against Judge Sullivan and Judge Dane are hereby dismissed with prejudice.[7]

3. *Claims against Defendants Fitzgerald and Coppola*
Defendants Fitzgerald and Coppola are also entitled to immunity because it is well established that "the clerk of the court and deputy clerks are shielded by an absolute quasijudicial immunity, particularly when they 'perform tasks that are an integral part of the judicial process.' " McGann v. Lange, No. 96–CV–0859, 1996 WL 586798, at *7 (E.D.N.Y. Oct. 10, 1996) (quoting Mullis v. U.S. Bankr.Ct., 828 F.2d 1385, 1390 (9th Cir.1987)); see also Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir.1997) (finding that the "court's inherent power to control its docket is part of its function of resolving disputes between parties" and is thus "a function for which judges and their supporting staff are afforded absolute immunity"). In this case, Mr. and Mrs. Bey allege that Defendant Coppola refused to refile Mr. Bey's "objection and counter claim" (Compl.¶ 40) and that Coppola and Fitzgerald did not provide him with a copy of the entire court file upon request (Compl .¶ 47). Courts have found similar actions by court clerks to be shielded by absolute quasi-judicial immunity. See, e.g., Rodriguez, 116 F.3d at 66 (finding that clerks were entitled to quasi-judicial

immunity for, *inter alia,* refusing an inmate's request for records on appeal); Pukulin v. Gonzalez, No. 07–CV–0412, 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office['s] activities of filing and docketing legal documents"); McKnight v. Middleton, 699 F.Supp.2d 507, 525–26 (E.D.N.Y.2010) (granting immunity to Family Court clerk for claims arising out of his failure to process the plaintiff's motions); Mullis, 828 F.2d at 1390 (finding that clerk was entitled to quasi-judicial immunity for, *inter alia,* refusing to file a document with the court); Stewart v. Minnick, 409 F.2d 826, 826 (9th Cir.1969) (holding that quasi-judicial immunity shielded court clerk from suit arising out of his refusal to provide litigant with a portion of the trial transcript).

**\*8** Accordingly, and for the reasons discussed above, all claims against Defendants Fitzgerald and Coppola are dismissed.

C. *Defendant Cohen's Motion to Dismiss*
The only allegations in the Complaint against Defendant Cohen, who according to the Complaint was Mr. and Mrs. Bey's court-appointed attorney (Compl.¶ 19), are that on October 19, 2010, he advised Mr. Bey that he missed a court appearance and directed him to return to court at 2:00PM (Compl.¶ 44). Upon Mr. Bey's return to court later that day, he was arrested. (Compl.¶ 44 .) Defendant Cohen argues that the claims against him must be dismissed because: (1) the Court lacks subject matter jurisdiction, (2) he was never properly served, and (3) the Complaint fails to state a claim.

The Court finds Defendant Cohen's jurisdictional arguments to be without merit as (1) the Complaint asserts claims for violations of the United States Constitution so this Court has subject matter jurisdiction, see 28 U.S.C. § 1331, and (2) allegations of improper service, without a sworn affidavit, are insufficient to establish improper service, see United States v. Riser, No. 10–CV–4550, 2011 WL 1004566, at *3 (E.D.N.Y. Mar. 16, 2011).

However, the Court finds that Mr. and Mrs. Bey have failed to state a cognizable claim for relief against Defendant Cohen. Their claims arising under Section 1983 fail because Defendant Cohen is not a state actor. See Browdy v. Karpe, 131 F. App'x 751, 753 (2d Cir.2005) ("[C]ourt-appointed attorneys 'performing a lawyer's traditional functions as counsel' to a defendant do not act

'under color of state law' and, therefore, are not subject to suit under 42 U.S.C. § 1983." (quoting *Rodriguez,* 116 F.3d at 65–66)). And to the extent that Mr. and Mrs. Bey attempt to cure this defect by conclusorily alleging that Defendant Cohen conspired with state officials, "[a] merely conclusory allegation that a private [party] acted in concert with a state actor does not suffice to state a § 1983 claim against [a] private [party]." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324 (2d Cir.2002) (citation omitted); *accord Browdy,* 131 F. App'x at 753.

Accordingly, all constitutional claims (and for the reasons discussed above, all other claims) against Defendant Cohen must be dismissed.

### D. *Defendant Kreger's Motion to Dismiss*

Mr. and Mrs. Bey's claims against Defendant Kreger arise out of her appointment as the Bey Children's law guardian. Defendant Kreger argues that the claims asserted against her must be dismissed because: (1) she is protected by quasijudicial immunity; (2) Mr. and Mrs. Bey lack standing to assert claims against her; (3) Mr. and Mrs. Bey lack privity with her; (4) the claims are barred by the *Rooker–Feldman* doctrine; (5) the Complaint does not contain a short and concise statement of Plaintiffs' claims in violation of Rule 8 of the Federal Rules of Civil Procedure; and (6) the Complaint fails to state a claim upon which relief can be granted. Because the Court finds that Defendant Kreger is protected by quasi-judicial immunity, it will not address her other arguments.

**\*9** Courts in New York have consistently held that law guardians are entitled to absolute quasi-judicial immunity for actions taken within the scope of their appointment. *See Yapi v. Kondratyeva,* 340 F. App'x 683, 685 (2d Cir.2009); *Dowlah v. Dowlah,* No. 09–CV–2020, 2010 WL 889292, at \*7 (E.D.N.Y. Mar. 10, 2010) (collecting cases); *see also Bluntt v. O'Connor,* 291 A.D.2d 106, 116–119, 737 N.Y.S.2d 471 (4th Dep't 2002) ("[M]ost courts that have considered suits by disgruntled parents against attorneys appointed by courts to protect children in custody disputes have granted, on public policy grounds, absolute quasijudicial immunity to the attorneys for actions taken within the scope of their appointments." (collecting cases)).

Because all of the claims against Defendant Kreger arise out of activities taken within the scope of her appointment as the Bey Children's legal guardian (*i.e.,*

participating in proceedings in Family Court (Comp.¶ 50) and interviewing the Bey Children about their parents (Compl.¶ 53)), her actions are protected by quasi-judicial immunity. Therefore, for this reason and the reasons discussed above, the Court GRANTS her motion, and all claims against Defendant Kreger are dismissed. [8]

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

(1) The pending motions to dismiss are GRANTED (Docket Entries 25, 29, 32), and all claims (including cross-claims) against Defendants Sullivan, Dane, Kreger, Fitzgerald, Coppola, and Cohen are DISMISSED; [9]

(2) Ms. Kreger's letter motion asking the Court to *sua sponte* dismiss the claims against her (Docket Entry 18) is DENIED AS MOOT;

(2) Mr. Bey's motions to vacate (Docket Entries 19, 27) are DENIED, and all claims brought on behalf of Rein, Drizzle, Truth, and Amicus Curiae Bey are DISMISSED without prejudice; and

(3) Mr. Bey's motion for a default judgment (Docket Entry 39) is DENIED; and

4) Mrs. Bey's remaining claims will be dismissed without prejudice unless the Court receives a copy of the Complaint signed by Mrs. Bey within thirty (30) days of the date of this Memorandum and Order.

The Clerk of the Court is directed to terminate Judge Sullivan, Judge Dane, Ms. Kreger, Ms. Fitzgerald, and Mr. Cohen as Defendants and Rein, Drizzle, Truth, and Amicus Curiae Bey as Plaintiffs. The Clerk of the Court is also directed to terminate the motion at Docket Entry 23 (*see supra* page 2 n. 2) which is not a motion but rather Defendant Cohen's opposition to Plaintiff's motion to vacate. The Clerk of the Court is further directed to mail a copy of this Memorandum and Order to each of the *pro se* Plaintiffs.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4370272

Footnotes

1   There is also a motion pending at Docket Entry 23. This is not a motion, however, but rather an opposition to Plaintiffs' motion to vacate. The Clerk of the Court is directed to terminate the motion and amend the docket entry to reflect that it is a "Letter in Opposition" to Docket Entry 19.

2   It appears as though Judge Dane presided over Mr. Bey's neglect proceedings. It is unclear what role, if any, Judge Sullivan had in these proceedings.

3   The contents of Mr. Bey's application are incomprehensible; however, the Complaint asserts that he is seeking an order enjoining the Family Court proceeding and vacating any judgments issued to date.

4   The County Defendants did not move to dismiss but rather answered the Complaint on November 7, 2011 and asserted cross-claims against the other defendants for indemnification and/or contribution.

5   Mr. Bey argues that his motion is "timely because non attorneys are not bound by the same rules as attorneys." (Docket Entry 19, at 2.) This is not true. A plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (internal quotation marks and citation omitted).

6   Although it appears as though the Family Court proceedings against Mrs. Bey are ongoing and the neglect petitions filed against Mr. Bey have been dismissed (Kreger Decl. ¶ 7 n. 1), Mr. and Mrs. Bey are also seeking, *inter alia,* vacatur of the "judgments issued by The Family Court and Nassau County Court CPS" (Compl. at 42).

7   To the extent that Mr. and Mrs. Bey assert claims for declaratory relief arising under state law, the Court declines to extend supplemental jurisdiction, and those claims are dismissed without prejudice. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

8   Defendant Kreger also filed a letter motion asking this Court to *sua sponte* dismiss the claims asserted against her. (Docket Entry 18.) This motion is DENIED AS MOOT.

9   With the exception of any claims for declaratory judgment arising under state law, all claims are DISMISSED WITH PREJUDICE.

---

End of Document            © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Ditta v. Branch Motor Exp., Not Reported in F.Supp. (1990)

1990 WL 112360

1990 WL 112360
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Joseph L. DITTA, Plaintiff,

v.

BRANCH MOTOR EXPRESS and Freight
Drivers, Helpers, Dockmen & Allied
Workers, Local Union 375, Defendants.

No. CIV–84–949E.
|
July 26, 1990.

**Attorneys and Law Firms**

Joseph L. Ditta, pro se.

John A. Collins, Lipsitz, Green, Fahringer, Roll, Schuller
& James, Buffalo, N.Y., for defendant.

MEMORANDUM and ORDER

ELFVIN, District Judge.

 **\*1** The abovenamed *pro se* plaintiff has moved to re-
open this action and to recuse the undersigned, asserting
(correctly) that counsel for defendant Freight Drivers,
Helpers, Dockmen & Allied Workers Local Union No.
375 ("Local 375") and I are neighbors, inasmuch as we
reside in the same complex of condominiums in Buffalo,
N.Y., and arguing therefore that the judgment of dismissal
of this suit was due to bias in favor of counsel and his
client.

Briefly and by way of background, this had been a
"hybrid" action brought in 1984 against the plaintiff's
employer under section 301 of the Labor Management
Relations Act, 29 U.S.C. § 185, for breach of a collective
bargaining agreement with Local 375, which union
allegedly breached its duty of fair representation to him.
The suit was dismissed February 18, 1986 and relief from
such order was denied September 1, 1987 and again
January 31, 1989, with the most recent ruling having
been summarily affirmed on appeal. *Ditta v. Branch
Motor Express,* No. 89–7221 (2d Cir., June 12, 1989)
(unpublished order not to be cited in unrelated cases).

Local 375 asserts that jurisdiction is lacking for
consideration of the plaintiff's motions in light of the
appellate mandate affirming the suit's dismissal, which
mandate assertedly disposes of any possibility for renewed
jurisdiction in this Court. Alternatively, Local 375
suggests that the motions are untimely and without
substance.

I proceed with confidence that jurisdiction is available
to determine the plaintiff's instant contentions. "When
a motion for relief has not raised matters that were
within the compass of the appellate court mandate, the
district court has always had the power to consider the
motion without appellate court leave." 7 Moore's Federal
Practice, ¶ 60.30[2]; *see Standard Oil of Cal. v. United
States,* 429 U.S. 17 (1976) (*per curiam* ). Additionally, I
determine that the motion to re-open (and to in effect
obtain relief from judgment as authorized by Fed.R.Civ.P.
rule 60(b)) is timely. Unlike an attack upon a judgment
based upon grounds of mistake, inadvertence, surprise,
excusable neglect, newly discovered evidence or fraud,
which attack must always be made within one year of the
judgment, a judgment may be set aside as *void* under Rule
60(b)(4) within a reasonable time but without a specific
maximum time limitation. 7 Moore's Federal Practice, ¶
60.25(4). And "[i]f, for example, a court * * * proceeds in
such an arbitrary or improper manner that its action may
be said to constitute a denial of due process the judgment
is void." *Id.,* ¶ 60.25[2]. The purported existence of such
a scenario here provides the substance of the plaintiff's
contention of bias, inasmuch as the denial of an impartial
arbiter constitutes a denial of due process. *E.g., In re
Murchison,* 349 U.S. 133, 136 (1955) ("A fair trial in a fair
tribunal is a basic requirement of due process.") Thus the
plaintiff's motions may presently be entertained.

 **\*2** Partiality or even the appearance of partiality are
grounds for mandatory disqualification of federal judges
from proceedings which would be tainted by such real or
apparent bias. *See* 28 U.S.C. §§ 144, 455. But it has been
said, in an off-quoted passage, that a judge "must have
*neighbors,* friends and acquaintances and be a part of his
day and generation. * * * [T]he ordinary results of such
associations and the impressions they create in the mind of
the judge are not the 'personal bias or prejudice' to which
the statute [s] refer[ ]." *Ex Parte N.K. Fairbank Co.,* 194
Fed. 978, 989 (M.D.Ala.1912) (emphasis supplied); *e.g.,
Patco v. Federal Labor Relations Authority,* 685 F.2d 547,
570 (D.C.Cir.1982). Hence, this action was not infected

**Ditta v. Branch Motor Exp., Not Reported in F.Supp. (1990)**

1990 WL 112360

with judicial bias (nor could it reasonably be so regarded) merely because I am neighbor to a defense counsel. The attorney and I have never socialized with each other. We have known each other merely as fellow attorneys and as judge and counsel. He had lived in the condominium prior to my moving there in mid–1984. He and I have served together on its Board of Managers for the past four years and I currently am its President and he its Vice–President. The judgment of dismissal cannot be held to be void on account of such limited association.

Accordingly, it is hereby ORDERED that the plaintiff's motions to re-open this action and to recuse the undersigned are denied.

**All Citations**

Not Reported in F.Supp., 1990 WL 112360

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by McKnight v. Middleton, E.D.N.Y., March 29, 2010

2008 WL 1945308
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

John Jay HUMPHREY, Plaintiff,
v.
COURT CLERK FOR THE
SECOND CIRCUIT, Defendant.

No. 508-CV-0363 (DNH)(DEP).
|
May 1, 2008.

**Attorneys and Law Firms**

John Jay Humphrey, pro se.

### *DECISION and ORDER*

DAVID N. HURD, District Judge.

**\*1** The Court has received plaintiff John Jay Humphrey's *pro se* complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), for review, together with an *in forma pauperis* application.[1] Dkt. Nos. 1, 2. For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e).

### I. *Background*

In his *pro se* complaint, plaintiff claims that the Clerk of the United States Court of Appeals for the Second Circuit failed to inform him until "months later" that his appeal was dismissed in three of his prior actions, *Humphrey v. WIXT News Channel 9,* 5:05-CV-0636 (FJS/DEP), *Humphrey v. Weichert,* 5:05-CV-1205 (NAM/GJD); *Humphrey v. Two Unknown Fed. Employees,* 5:06-CV-0786 (NAM/DEP). Dkt. No. 1 at ¶¶ 1, 4-7. According to plaintiff, the Clerk's failure to communicate with him hindered his ability to petition the United States Supreme Court for writs of *certiorari* in these actions. *Id.* at ¶¶ 10, 13. Plaintiff further alleges that the Clerk neglected to provide him with the status of his appeal in the action titled *Humphrey v. Styers,* 5:05-CV-1036 (FJS/GHL). *Id.*

at ¶¶ 3, 8. Plaintiff seeks monetary relief in the amount of One Million Dollars. *Id.* at p. 4. For a more complete statement of plaintiff's claims, reference is made to the complaint.

### II. *Discussion*

Turning to plaintiff's *in forma pauperis* application, the Court finds that he may properly commence this action *in forma pauperis* because he sets forth sufficient economic need. Dkt. No. 2.

Since the Court has found that plaintiff meets the financial criteria for commencing this case *in forma pauperis,* the Court must now consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that-... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[2] 28 U.S.C. § 1915(e)(2)(B). Thus, the court has a responsibility to determine that a complaint may be properly maintained in this district before it may permit a plaintiff to proceed with an action *in forma pauperis.*[3] *See id.* Although courts have a duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility placed upon the court to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* notwithstanding the fact the plaintiff has paid the statutory filing fee); *Wachtler v. Herkimer County,* 35 F.3d 77, 82 (2d Cir.1994) (finding that a district court has the power to dismiss a case *sua sponte* for failure to state a claim).

**\*2** As noted, plaintiff seeks to assert claims against the defendant for the violation of his constitutional rights. *Bivens* actions, although not precisely parallel, are the federal analog to Section 1983 actions against state actors. *See Chin v. Bowen,* 833 F.2d 21, 24 (2d Cir1987) (noting

that there is a "general trend in the appellate courts" to incorporate Section 1983 law into *Bivens* cases) (citation and quotations omitted). [4]

Plaintiff maintains that the "Court Clerk" for the Second Circuit Court of Appeals improperly failed to communicate with him regarding the status of the appeals in four of his cases. A review of the appellate dockets in *Humphrey v. Weichert, Humphrey v. Two Unknown Federal Employees,* and *Humphrey v. WIXT News Channel 9* reveals that plaintiff indeed was immediately notified of the mandates dismissing his appeals in those actions. [5] *See Humphrey v. Weichert,* Appellate Action No. 05-6846; *Humphrey v. Two Unknown Federal Employees,* Appellate Action No. 07-0631; *Humphrey v. WIXT News Channel 9,* Appellate Action No. 05-4122. Plaintiff's appeal in *Humphrey v. Styers* remains pending, and plaintiff is free to inquire regarding the status of his case at any time. *See Humphrey v. Styers,* Appellate Action No. 05-6695.

The Court also notes that plaintiff does not clearly allege wrongdoing on the part of the individual who serves as the Clerk of the Court for the Second Circuit, as opposed to one or more of the individuals employed in the Clerk's Office. As with claims asserted under Section 1983, a plaintiff seeking to recover money damages in a *Bivens* action must establish that the named defendant was personally involved in the misconduct complained of. [6] *See Elmaghraby v. Ashcroft,* No. 04 CV 01809, 2005 WL 2375202, at \*11 (E.D.N.Y. Sept. 27, 2005), *reversed on other grounds, Iqbal v. Hasty,* 490 F.3d 143 (2d Cir.2007); *Richardson v. Goord,* 347 F .3d 431, 435 (2d Cir.2003) (discussing supervisory liability in context of a section 1983 claim); *see also Wilson v. Layne,* 526 U.S. 603, 609 (1999) (explaining that the qualified immunity analysis under *Bivens* is identical to the analysis under section 1983). In this case, plaintiff has not set forth sufficient facts to establish that the Clerk of the Court was personally involved in the actions complained of. In light of plaintiff's *pro se* status, the Court has considered whether plaintiff's complaint states a claim upon which relief could be granted assuming, *arguendo,* that he has properly identified the defendant and concludes that it does not.

Courts have extended judicial immunity to court clerks for the performance of tasks "which are judicial in nature and an integral part of the judicial process."

*Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997); *see also Kampfer v. Rodriguez,* No. 97-CV-739, 1998 WL 187364, at \*2 (N.D.N.Y. Apr. 15, 1998) (Pooler, D .J.). Court clerks enjoy absolute immunity even for administrative functions if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court. *Rodriguez,* 116 F.3d at 67. A court clerk, however, may not be entitled to absolute immunity in all cases, such as where the clerk's refusal to accept the papers of a litigant seeking to commence an action under a state statute results in the deprivation of the litigant's constitutional rights. *LeGrand v. Evan,* 702 F.2d 415, 418 (2d Cir.1983). In this case, plaintiff's allegations arise out of and relate to actions taken by court personnel which were in accordance with the established practice of the Second Circuit, and pursuant to the direction of a judicial officer as articulated in the relevant appellate mandates; accordingly, these actions constitute an integral part of the judicial process and are shielded from liability by judicial immunity. In any event, although plaintiff contends that the Clerk's alleged failure to communicate with him deprived him of his right to seek writs of *certiorari,* the pertinent dockets indicate that such notification did indeed occur. Accordingly, defendant Clerk of the Court for the United States Court of Appeals for the Second Circuit is hereby dismissed with prejudice. [7]

## III. *Conclusion*

**\*3** Plaintiff's complaint, as drafted, is not sufficient to state a claim for the violation of plaintiff's constitutional rights by the named defendant. The named defendant is immune from damages on the claims asserted in this *Bivens* action and the complaint lacks an arguable basis in law or in fact. Accordingly, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e).

THEREFORE, it is hereby

ORDERED, that

1. This action is DISMISSED;

2. Plaintiff's *in forma pauperis* application is DENIED as moot; and

3. The Clerk of the Court is directed to serve a copy of this Order on plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1945308

Footnotes

1  The Court notes that plaintiff has filed numerous actions in this District in addition to the present case. *See Humphrey v. Onondaga County Sheriff,* 5:02-CV-1524 (NPM/DEP); *Humphrey v. State of New York,* 5:03-CV-1181 (HGM/GJD); *Humphrey v. U.S. Gov't,* 5:04-CV-145 (HJM/GJD); *Humphrey v. Carni,* 5:05-CV-0253 (FJS/GHL); *Humphrey v. WIXT News Channel 9,* 5:05-CV-0636 (FJS/DEP); *Humphrey v. Rescue Mission,* 5:05-CV-0795 (NAM/GJD); *Humphrey v. Rescue Mission,* 5:05-CV-0986 (FJS/GJD); *Humphrey v. Onondaga County Dep't of Soc. Servs.,* 5:05-CV-987 (NAM/GJD); *Humphrey v. Styers,* 5:05-CV-1036 (FJS/GHL); *Humphrey v. Court Clerk, NDNY,* 5:05-CV-1159 (NAM/GJD); *Humphrey v. Weichert,* 5:05-CV-1205 (NAM/GJD); *Humphrey v. Two Unknown Fed. Employees,* 5:06-CV-0786 (NAM/DEP); *Humphrey v. Onondaga County Sheriff's Dep't,* 5:07-CV-0721 (DNH/GJD); *Humphrey v. Onondaga County Sheriff's Dep't,* 5:07-CV-1102 (DNH/GJD).

2  In determining whether an action is frivolous, the Court must determine whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

3  Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327.

4  Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).

5  It bears mentioning that in *WIXT News Channel 9,* the docket reflects that the notice sent to plaintiff regarding the issuance of a mandate dismissing his appeal for failure to comply with the scheduling order in that action was returned as undeliverable. That fact, however, is not determinative of the validity of plaintiff's claim.

6  A supervisory official can, however, be personally involved in a constitutional violation in one of several ways: (1) the supervisor may have directly participated in the challenged conduct; (2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; (3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or (5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

7  In addition, while not deciding this matter on this basis, the Court notes that it is not clear that venue is appropriate in this District. *See* 28 U.S.C. § 1391(b).

End of Document
© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 382730
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

In the Matter of Ella CARD,

An Incapacitated Person.[1]

No. 12–cv–114 (ENV)(VVP).
|
Feb. 6, 2012.

## MEMORANDUM AND ORDER

VITALIANO, District Judge.

**\*1** Ella Rubina Card, appearing *pro se,* is before this Court having noticed removal from Supreme Court, Kings County of a guardianship proceeding in which she is the alleged incompetent ("the state court proceeding"). Card also moves to proceed *in forma pauperis,* which the Court grants solely for the purpose of this threshold decision that the Court is without subject matter jurisdiction. The removed proceeding is remanded to Supreme Court and this case is dismissed.

## Background

According to the notice of removal, several of Card's children filed an application in state court in January 2011, requesting that a guardian be appointed to make certain decisions for her. Supreme Court appointed a guardian after finding, in summary, that Card cannot recognize her inability to manage her own property. Card admits she received notice of the state court proceeding on March 21, 2011.

On January 3, 2012, Card sought to commence this action and filed a notice of removal, claiming that the state court proceeding became removable at some point after its filing because of "flagrant United States Constitution violations committed against her."[2] (Notice of Removal at 3.) More specifically, she claims her rights under the Fourteenth, Fifth, Sixth, and Seventh Amendments have been violated, in essence, by the prosecution of the guardianship proceeding in state court. Card alleges

that the parties who committed these violations include, among others, the judge presiding over the state court proceeding, the presiding judge's administrative judge, Card's court-appointed attorney, Card's court-appointed guardian, other court officials, Card's sons, the State of New York, and attorneys representing various parties. Card asks this Court, *inter alia,* to remove the guardian appointed by Supreme Court, to dismiss the state court proceeding, to undo the results of various actions allegedly taken by her guardian, and to award her damages from various parties involved in the state court proceeding. (Notice of Removal at 22–26.)

## Discussion

Federal jurisdiction is available only when a federal question is presented, 28 U.S.C. § 1331, or when the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000 .00. 28 U.S.C. § 1332. "[S]ubject matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Courts "have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Where jurisdiction is lacking, "dismissal is mandatory." *Manway Constr. Co Inc. v. Housing Authority of City of Hartford,* 711 F.2d 501, 503 (2d Cir.1983) (citing Fed.R.Civ.P. 12(h)). The fact that this Court is considering a notice of removal does not change matters or eliminate the obligation to dismiss where jurisdiction is wanting. *Morrison v. Seafarers Int'l Union of N. Am., AFL–CIO,* 954 F.Supp. 55, 56 (E.D.N.Y.1996) ("Where a case has been improperly removed and the Court *has.no* subject matter jurisdiction, the Court must remand the case *sua sponte* to the state court where it originated.").[3]

**\*2** Federal question jurisdiction does not exist here because the state court proceeding relates only to the appointment of a guardian and that guardian's ability to manage Card's property. *See In re Appointment of Smith,* No. 11–CV–2405, 2011 WL 2008512, at \*2 (E.D.N.Y. May 20, 2011) ("The appointment of a guardian and the allocation of real property and assets by the appointed

guardian do not raise federal questions."). Moreover, with respect to the removed proceeding, Card's offered bases for federal jurisdiction are merely potential defenses, dressed in constitutional trappings, and thus do not confer jurisdiction. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("[A] case may not be removed to federal court on the basis of a federal defense."). [4] As a consequence of the absence of subject matter jurisdiction, the guardianship proceeding must be, and hereby is, remanded to state court. [5]

Alternatively, despite Card's very clear intent to remove the guardianship proceeding from Supreme Court, but very liberally construing her complaint as seeking to bring damage claims against those involved in that proceeding for alleged violations of her federal constitutional rights, Card arguably could, as her best case claim, seek to advance a cause of action under 42 U.S.C. § 1983 to vindicate her rights. But, § 1983 claims must be brought against defendants who act under color of state law. *Zherka v. DiFiore,* 412 Fed. App'x. 345, 347 (2nd Cir.2011). There are, among the many named, a few potentially-covered state actors identified in Card's complaint. All of them, however, are either judicial officers or judicial officials, for example, the guardian. As such, all are entitled to absolute immunity. *See Dowlah v. Dowlah,* 2010 WL 889292, at *6–7 (E.D.N.Y. March 10, 2010). Given the jurisdictional futility of any such claims, as opposed to the substantive merit of such claims, the Court will not retain jurisdiction of the complaint. With amendment futile, leave to amend need not be granted. *See Hassan v. U.S. Dep't of Veteran Affairs.* 137 F. App'x 418, 420 (2d Cir.2005) ("While pro se plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile."); *see also Lerner v. Drager,* 2011 WL 1682348, at *6 (S.D.N.Y. April 18, 2011) (denying leave to amend because, *inter alia,* judicial immunity would make amendments futile).

Lastly, the Court is mindful of the recent, Second Circuit holding explaining that a "court may not determine on its merits the claim of an incompetent person who is not properly represented." *James v. New York,* 415 Fed. App'x. 295, 296 (2nd Cir.2011) (citing *Berrios v. N.Y.C. Hous. Auth.,* 564 F.3d 130, 134 (2d Cir.2009)). A ruling on subject matter jurisdiction, of course, is not a ruling "on the merits." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188 (2nd Cir.1996); *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291, 299 (2nd Cir.2000). *James,* therefore, is inapposite here.

### Conclusion

**\*3** For the forgoing reasons, the state court guardianship proceeding which is the object of the removal notice is hereby remanded to Supreme Court, Kings County. The complaint, for all other purposes, is dismissed without prejudice for want of jurisdiction.

The Clerk of Court is directed to close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in *forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 382730

---

Footnotes

1      Although Card filed a "Notice of Removal" and specifically requests that the state court proceeding be removed here, she styles her action with herself as the plaintiff and as having the following defendants: Betsy Barros, Judge at Kings County Supreme Court; Silvia Hinds–Radix, Administrative Judge for Civil Matter at the Kings County Supreme Courty; Lisa K. Friedeman, Esq., Court Evaluator for the Kings County Supreme Court and of the New York Law School Elder Law Clinic; Alexandra Schonfeld, Student Court Evaluator and of the New York Law School Elder Law Clinic; Christine Mooney, Esq., Attorney; Laura Negron Esq., Director of the Vera Institute and Temporary Guardian; Kermit Card; Raymond H. Card; Bonnie Bernstein, Esq., Attorney at Polizzotto and Polizzotto law firm and Attorney for Kermit and Raymond Card; Alfred Polizzotto, of Polizzotto and Polizzotto law firm; Kings County Supreme Court; The State of New York; The Vera Institute; Polizzotto and Polizzotto Law Firm; and The New York Law School. Because Card filed a notice of removal, the caption has been re-styled to reflect that of the proceeding removed from state court.

**2**    In addition to the notice of removal, the Court has received and considered Card's letters and submissions of January 25 and 26, 2012.

**3**    In reviewing plaintiff's complaint, the Court is mindful that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest. *See Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006).

**4**    On face, diversity jurisdiction does not exist. Card concedes its absence. (Notice of Removal at 3.)

**5**    Additionally, even if jurisdiction otherwise existed, the *Rooker–Feldman* doctrine would require a finding that subject matter jurisdiction is lacking because Card is essentially asking the Court to review an adverse state court judgment appointing a guardian made before she filed her notice of removal. *See Cluskey v. New York State Unified Court System,* 442 Fed. App'x. 586 (2nd Cir.2011) (explaining that under the *Rooker–Feldman* doctrine, "the Lower federal courts lack subject matter jurisdiction in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments' " (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005))); *Citibank. N.A. v. Swiatkoski,* 395 F.Supp.2d 5, 10 (E.D.N.Y.2005) (applying the Rooker–Feldman doctrine to find a removed action must be remanded to state court).

---

**End of Document**                © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 1718251
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Regina Lewis, Plaintiff,
v.
Eric Weiss, Defendant.

12-cv-07242 (ALC)
|
Signed 04/27/2016

OPINION AND ORDER

ANDREW L. CARTER, JR., United States District
Judge

**\*1** *Pro se* plaintiff Regina Lewis brings suit against
Deputy United States Marshal Eric Weiss, alleging
violations of her Fourth and Fifth Amendment rights
during her arrest and subsequent imprisonment. [1] Before
the Court is Weiss's motion to dismiss. For the reasons
stated below, that motion is GRANTED.

BACKGROUND

a. Factual Background

Unless otherwise noted, the following facts are taken from
allegations in Plaintiff's Amended Complaint and Second
Amended Complaint, which are assumed to be true for the
purposes of this motion. [2]

On July 25, 2012, the Government filed a sealed criminal
complaint, accusing Plaintiff of threatening to kill a
federal judge in violation of 18 U.S.C. § 115(a)(1)(B).
(Crim. Compl., Crim. ECF No. 1; Exh. 1, Def.'s Mot.
Dismiss, ECF No. 53 ("Crim. Compl.").) [3] The complaint
was signed by Deputy Marshal Eric Weiss. (*Id.*) In the
complaint, he described the results of his investigation,
including his interviews with two witnesses who had
received phone calls in which a person identifying herself
as Plaintiff made threats against a federal judge. (*Id.*) That
same day, based on the complaint, a magistrate judge
signed a warrant for Plaintiff's arrest. (Warrant, Crim.
ECF No. 2; Exh. 2, Def.'s Mot. Dismiss ("Warrant").)

The next day, July 26, 2012, Marshal Weiss and other
U.S. Marshals executed the arrest warrant. (Crim. ECF
No. 6.) According to Plaintiff, her arrest took place at
4:30 a.m. on July 26, 2012, when the marshals entered her
home by removing a sliding glass door. (Second Amended
Compl., ECF No. 16 ("SAC"), 1). Her arrest followed
several months in which she "noticed extra activity on
[her] computers" and "was receiving calls at 2:30 am while
there was silence from the caller." (*Id.*). Plaintiff also
alleged that Weiss hacked into her electronics, burglarized
her home, and crashed and stole her computers and other
electronic devices over the course of the arrest. (Amd.
Compl., ECF No. 10, 1-2.)

**\*2** At some point following her arrest, Plaintiff was
served the criminal complaint signed by Weiss. (SAC, 2.)
Plaintiff alleges that the affirmation was deficient first
because it did not identify the judge whom she allegedly
threatened by name, nor did it identify her as the caller,
and second because it "states no more than the offense as
charged and lacked merit and legal fact," and thus does
not establish probable cause. (Amd. Compl., 1) Plaintiff
claims that because both a "complainant" and a "witness"
are imperative to establish probable cause, the affirmation
was deficient, as Weiss "is not a victim nor a witness to
a crime." (*Id.*) She also alleges that Weiss did not have
the authority to arrest or investigate federal violations and
that he was not issued an arrest warrant. (*Id.*) At some
point after her arrest, Plaintiff informed her appointed
federal public defender, Martin Cohen, that Eric Weiss
had no arrest or search warrant when he entered her home.
(SAC, 3.)

Also after her arrest, Plaintiff was interviewed by Pre-Trial
Services and Cohen and informed them:

> "... Eric Weiss had an unhealthy
> interest in me and ... I believed that
> he was hacked into my computers.
> I also instructed Martin Cohen that
> Eric Weiss had no arrest warrant
> or search warrant, but [t]he court
> wouldn't care."

(SAC, 1.) Cohen allegedly informed her that "both Eric
Weiss and Michael Maimin were in the court room
waiting for [her] and he had no idea why." (*Id.*) Plaintiff
informed Cohen that Weiss had photos of her that
he carried with him. (*Id.*) When Plaintiff entered the

courtroom, Weiss was present, "sitting in the back of the courtroom slouched in a chair swatting his legs opened and closed ..." (*Id.*)

Plaintiff was indicted by a grand jury on August 23, 2012, on a single count of violating 18 U.S.C. § 115(a)(1)(B). (Crim. ECF No. 8.) Over the course of her criminal case, Plaintiff received psychiatric evaluations and treatment. (Crim. ECF No. 65; *see also* SAC). At a meeting with a psychologist in August 2012, Plaintiff allegedly reported that she felt that Weiss had unhealthy interest in her, that he may have hacked into her computer, and that she loved him. (SAC, 1.) She later spoke to her lawyer, Cohen, who allegedly told her that Weiss had, in fact, hacked her computer and who agreed that Weiss was "sick." (*Id.*) Throughout the proceedings, Plaintiff repeated similar allegations to other individuals. (*See* Amd. Compl.; SAC.)

While her case was pending, Plaintiff was held at the Metropolitan Detention Center in Brooklyn but was also transferred to several other state and federal facilities, including the Orange County, New York, jail, to face unrelated charges in other jurisdictions. (*See* SAC, 1.) Marshals were involved in these transfers, and Plaintiff alleges that "neither U.S. Marshals nor the Orange county Sheriff's Department had the legal right to hold me for each other with no detainers." (*See* Amd. Compl., 2.) She was also transferred to facilities around the country. (*Id.*) At some point, she allegedly received a sheet of paper indicating that she should be released, though various federal prison personnel interpreted the document differently. (*Id.*)

Following a bench trial in front of the Hon. Brian M. Cogan, U.S. District Judge for the Eastern District of New York, Plaintiff was convicted of violating 18 U.S.C. § 115(a)(1)(B). (Crim. ECF No. 109.) In January 2015, she was sentenced to time served and a one-year term of supervised release. (Crim. ECF No. 125.) Soon after, Plaintiff was arrested for violating the terms of her supervised release, and she served the remainder of her sentence. (Crim. ECF No. 146.) She was released on June 15, 2015, and is no longer in custody.

**b. Procedural Background**

Plaintiff, proceeding *pro se*, filed this action on September 24, 2012, against a number of defendants. (ECF No. 1.) On August 6, 2013, Chief Judge Loretta Preska *sua sponte* dismissed Plaintiff's claims against all of the defendants

except Deputy Marshal Weiss and directed Plaintiff to file an amended complaint. (ECF No. 8.)

**\*3** On September 5, 2013, Plaintiff filed an amended complaint, naming Marshal Weiss as well as a number of entities as defendants. (ECF No. 10.) This Court, upon review of the amended complaint, *sua sponte* dismissed Plaintiff's complaints against all defendants except Marshal Weiss and construed the complaint to raise claims of false arrest and false imprisonment. (ECF No. 12.) On December 17, 2013, Plaintiff filed a second amended complaint, making substantially the same allegations, without leave of the Court. (ECF No. 16.)

While Plaintiff did not receive leave to file the second amended complaint, the Court will consider it, given that she is proceeding *pro se.* Further, while Plaintiff was instructed that any amended complaint would supplant, rather than supplement, her prior complaint, the Court will consider the allegations and attachments to her amended complaint as well as those her second amended complaint. *See Davila v. Lee*, No. 11 Civ. 496 (LTS) (FM), 2014 WL 7476207, at *1 n. 1 (S.D.N.Y. Dec. 30, 2014), *report and recommendation adopted*, 2015 WL 1573323 (S.D.N.Y. Apr. 9, 2015) ("The Amended Petition does not incorporate [plaintiff's] original claims despite my warning that any claims not expressly set forth therein might be deemed abandoned. ... I nevertheless have addressed the claims raised in [plaintiff's] Initial Petition because he is proceeding *pro se.*"); *Anthony v. Brockway*, No. 15 Civ. 451, 2015 WL 3419536, at *1 (N.D.N.Y. May 27, 2015) ("Even though Plaintiff's original complaint is superseded by his amended/supplemental complaint, in light of Plaintiff's *pro se* status, the Court has considered the allegations in, and attachments to, both Plaintiff's original and amended/supplemental complaints upon its initial review.").

Weiss moves to dismiss, arguing that Plaintiff's amended complaint is frivolous and fails to state a claim as a matter of law. (ECF No. 52.) While Plaintiff has not submitted any papers styled as opposition to this motion, she has indicated in several letters to the Court her opposition to the dismissal of her case. (*See, e.g.* ECF Nos. 61, 62, 67.)

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b) (6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

**\*4** When presented with an unopposed motion, the court may not find for the moving party without reviewing the record and determining whether there is sufficient support for granting the motion. *See Kinlaw v. Walsh*, 10 Civ. 07539 (RMB) (JLC), 2012 WL 2548437, at \*1 (S.D.N.Y. June 29, 2012); *see also Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("[C]ourts, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law") (citation and internal quotation marks omitted). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure

to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Edwards v. Horn*, No. 10 Civ. 6194 (RJS), 2012 WL 760172, at \*4 (quoting *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)).

Finally, in a case brought by a *pro se* litigant, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted) Even so, the Court "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis*, 618 F.3d at 170.

## DISCUSSION

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). *Bivens* itself involved "a victim of a Fourth Amendment violation by federal officers," and the Court permitted the plaintiff to bring a suit for money damages against the offending officers. *Id.* "Since the doctrine's inception, the Supreme Court has been reluctant to extend *Bivens* liability further," *Zielinski v. DeFreest*, No. 12 Civ. 1160 JPO, 2013 WL 4838833, at \*4 (S.D.N.Y. Sept. 10, 2013) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 596 (2d Cir. 2009) (Sack, J., dissenting)) (internal alterations omitted), but the Second Circuit has recognized that "a deprivation of procedural due process rights can give rise to a *Bivens* claims." *Id.*; *see also id.* (collecting cases).

This Court construes Plaintiff's complaint to raise false arrest and false imprisonment in violation of the Fourth Amendment, as well as deprivation of property in violation of the Fifth Amendment. (*See* Pl.'s Ltr., ECF No. 67) ("I also wish to address my other civil case [No. 12 Civ. 7242] in Fourth Amendment terms for unlawful

search and seizure since no warrant could have been issued ... since no probable cause existed and no exigent circumstances ... for a warrantless search and seizure."); *see also* Order, ECF No. 12 ("Plaintiff may proceed, however, with her false arrest and wrongful imprisonment claims against Defendant Eric Weiss.").

### I. Fourth Amendment Claims

#### a. False Arrest and False Imprisonment

"The claims of false arrest and false imprisonment are premised on a lack of probable cause for the arrest." *Dockery v. Tucker*, 73 F. Supp. 2d 224, 231 (E.D.N.Y. 1998) (citing *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986)). Thus, *Bivens* claims of false arrest and false imprisonment implicate "the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause." *Williams v. Young*, 769 F. Supp. 2d 594, 602 (S.D.N.Y. 2011).

**\*5** "At common law, because conviction is considered conclusive evidence of probable cause, actions for false arrest and false imprisonment are barred if the plaintiff remains convicted of the offense for which he was arrested." *Dockery*, 73 F. Supp. 2d at 231 (citing *Cameron*, 806 F.2d at 387). The Supreme Court, in *Heck v. Humphrey*, 42 U.S. 477 (1994), held that this common-law bar applies to false arrest and false imprisonment claims brought pursuant to 42 U.S.C. § 1983, and the Second Circuit has concluded "that *Heck* should apply to *Bivens* actions as well." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). Thus, where a plaintiff does not demonstrate that her conviction has been invalidated in any manner, the court must dismiss claims of false arrest and false imprisonment relating to that conviction. *Id.*

Here, Plaintiff was arrested, imprisoned, and convicted for violating 18 U.S.C. § 115(a)(1)(B). Plaintiff's conviction still stands, as it has not been invalidated on direct appeal, in a habeas corpus proceeding, or otherwise. The same facts underlie her conviction and the instant *Bivens* action. Therefore, this Court must dismiss Plaintiff's false arrest and false imprisonment claims, as there has been nothing to disturb the "conclusive evidence of probable cause" provided by her conviction. *See Dockery*, 73 F. Supp. at 231.

#### b. Validity of Warrant

A plaintiff may also challenge the sufficiency of a warrant under *Bivens*. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (finding, in a *Bivens* action, that a search warrant lacked the particularity required by the Fourth Amendment); *see also Turkmen v. Hasty*, 789 F.3d 218, 237 (2d Cir. 2015). However, these challenges too may be subject to the *Heck* bar discussed above, if a challenge to the validity of the warrant would necessarily imply that a still-undisturbed conviction was invalid. *See Stegemann v. Rensselaer Cty. Sheriff's Office*, No. 15 Civ. 21, 2015 WL 736814, at \*4 (N.D.N.Y. Feb. 20, 2015) ("[I]n finding that the warrant was invalid in this civil suit, the Court would be challenging the exact vehicle through which the named law enforcement agencies found ... the evidence in the Criminal Indictment. Accordingly, were Stegemann to succeed ... he would necessarily call into question the validity of theory behind his pending criminal prosecution."); *see also Aderonmu v. Heavey*, No. 00 Civ. 9232 (AGS), 2001 WL 77099, at \*2 (S.D.N.Y. Jan. 26, 2001) ("Plaintiff's challenge to the constitutionality of the allegedly invalid search warrants and arrest, brought pursuant to the Fourth Amendment, as set forth in the Complaint, necessarily implicate the validity of plaintiff's conviction.").

In this case, it is unnecessary to delve into whether Plaintiff's challenge to the warrant under which she was arrested calls into question the validity of her conviction, as Plaintiff fails to plausibly allege that the warrant was invalid. Plaintiff claims that Weiss's affirmation in support of the warrant was insufficient because Weiss himself did not witness the alleged crime, because the warrant did not authorize Weiss by name to carry out the arrest, and because, Plaintiff alleges, "[T]he affirmation does not identify a judge (victim) nor me as the caller." (Amd. Compl. 1.) None of these allegations state a viable Fourth Amendment claim.

First, for an arrest warrant to issue, a magistrate must find that there is probable cause, *i.e.* that the stated information in support of the warrant is sufficient to cause a reasonably prudent person to believe a crime was committed by the accused. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006). In making this determination, a magistrate must evaluate the totality of the circumstances presented, and the evidence considered

need not be admissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 1101(d)(3) (Federal Rules of Evidence do not apply to "miscellaneous proceedings such as ... issuing an arrest warrant..."). Thus, "probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Given that, it is immaterial that Weiss did not swear that he personally witnessed Plaintiff commit a crime; even based on hearsay, the magistrate was permitted to make a finding of probable cause. Likewise, the warrant was not invalidated by the fact that Weiss did not conclusively rule out that another person, purporting to be Plaintiff, made the threatening phone calls in question. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

**\*6** Second, despite Plaintiff's contention that the warrant did not specifically authorize Weiss to arrest Plaintiff, it is directed, "To: United States Marshal or Any Other Authorized Officer," and it orders, "You are hereby commanded to arrest the above-named person ..." (Warrant). Weiss, as a United States Marshal, was specifically authorized to make arrests without warrant for any offense against the United States and to execute federal arrest warrants. *See* 28 U.S.C. § 566(d) (warrantless arrests); 28 C.F.R. § 0.111(a) (execution of federal arrest warrants). There is no requirement that an arrest warrant direct a *specific* law enforcement officer to carry it out.

Finally, as to Plaintiff's contention that the warrant and/ or criminal complaint did not identify her or the specific judge in question, her allegations are not supported by the documents in question, nor do they touch on any legal requirements. Both the complaint signed by Weiss and the warrant itself identify Plaintiff by name many times over. (*See, e.g.* Warrant (listing "Regina Lewis" in field labeled, "Name and Address of Individual to be Arrested"); Crim. Compl. ("Wherefore, deponent prays that Regina Lewis, the defendant, be arrested and imprisoned, or bailed, as the case may be.").) As to the identity of the victim, it is true that the judge in question is not named in either the complaint or the warrant. However, he is identified in the complaint as a United States District Judge in

the Southern District of New York, who had "closed" a civil lawsuit filed by Plaintiff, and the threats alleged to have been made against him by Plaintiff are set forth in detail. (Crim. Compl. ¶ 2.) There is no requirement that the victim of the offense be identified by name in the criminal complaint. *See United States v. Muyet*, 945 F. Supp. 586, 600 (S.D.N.Y. 1996) (where an indictment did not provide the defendants with the names of victims but set forth the date of the alleged attacks on victims, the names of charged defendants, and the nature of the attacks, "[t]he Government is not required to provide further specifics ..."); *United States v. Columbo*, No. 04 Cr. 273 (NRB), 2006 WL 2012511, at \*16 (S.D.N.Y. July 18, 2006) (explaining, where defendant moved to dismiss indictment on ground that Government failed to identify the victims, that "[t]o satisfy the requirements of Fed. R. Crim. P. 7(c) and the Constitution, an indictment 'need do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime'" (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)). Similarly, this Court can conceive of no reason why the name of the victim should be included in a warrant authorizing the arrest of a defendant. Thus, Plaintiff fails to state a facially plausible challenge to the sufficiency of the warrant.

### II. Fifth Amendment Claims

The Fifth Amendment provides that "[n]o person shall... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. A plaintiff claiming that a government agent has intentionally deprived her of property in an unauthorized manner may bring such a claim pursuant to *Bivens*. *See D'Amario v. United States*, 56 F. Supp. 3d 249, 254 (W.D.N.Y. 2014). However, "an unauthorized intentional deprivation of property ... does not constitute a violation of the procedural requirements of the Due Process Clause ... if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). That an individual "might not be able to recover under these remedies the full amount which he might receive ... is not determinative of the adequacy of the administrative remedies" *Stuto v. Fleishman*, 164 F.3d 820, 825 (2d Cir. 1999) (quoting *Hudson*, 468 U.S. at 435).

**\*7** Here, the Court construes Plaintiff to bring a Fifth Amendment claim, as she asserts that her "computers were .... damaged when U.S. Marshal Eric Weiss crushed all of them," that her "house was also burglarized by

U.S. Marshal Eric Weiss and the U.S. Marshals Service who stole my home and office computers, televisions, cell phone, digital camera and other electronic items." (Amd. Compl. 1.) However, her allegations do not constitute a violation of the procedural requirements of the Due Process Clause because a meaningful postdeprivation remedy for her loss is available.

Under 31 U.S.C. § 3724, the Government "may settle, for not more than $50,000 in any one case, a claim for ... damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer ..." 31 U.S.C. § 3724(a). While this remedy may not provide recovery for the full amount that Plaintiff might receive in a civil rights action, it still constitutes a postdeprivation remedy such that the deprivation of property alleged here does not constitute a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 435; *see also Cunningham v. McCluskey*, No. 05 Civ. 10169 (DAB) (KNF), 2011 WL 2791336, at *7 (S.D.N.Y. June 22, 2011), *report and recommendation adopted 2011 WL 3478312 (S.D.N.Y. Aug. 8, 2011)*. Because there is a postdeprivation remedy available, Plaintiff does not state a claim for violation of her Due Process rights. *See D 'Amario*, 56 F. Supp. at 255

("As numerous courts have found, the procedure provided by § 3724 is adequate to preclude a *Bivens* claim for a due process violation."); *id.* (collecting cases); *see also Stuto*, 164 F.3d at 825 (finding, regardless of the cognizability of a *Bivens* claim alleging violations of the Fifth Amendment right to due process, that plaintiff failed to state such a claim because there existed a "menu of possible post-deprivation remedies ...").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Plaintiff's Fifth Amendment claim is dismissed with prejudice, as any amendment would be futile. Her Fourth Amendment claims are dismissed without prejudice with leave to re-file in the event that her criminal conviction is disturbed.

**SO ORDERED.**

**All Citations**

Slip Copy, 2016 WL 1718251

Footnotes

1    Plaintiff has separately filed suit against Regina Eldridge, Associate Warden of the Metropolitan Correctional Center in New York, alleging violations of her Eighth Amendment rights. *See Lewis v. Eldridge*, No. 13 Civ. 1485 (ALC) (S.D.N.Y.). However, this Opinion relates only to her suit against Weiss.

2    In deciding a motion to dismiss, the court may consider the facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint, and matters of which judicial notice may be taken. *See Thomas v. Goord*, 215 Fed. Appx. 51, 52 (2d Cir. 2007). "It is common and entirely proper for courts to take judicial notice," although "a court may not take judicial notice of that proceeding for the truth of the matters asserted therein." *Guzman v. United States*, No. 11 Civ. 5834 (JPO), 2013 WL 543343, at *4 (S.D.N.Y. Feb. 14, 2013) (citations omitted).

3    Citations to "Crim. ECF" refer to the electronic docket for the criminal case against Plaintiff, *United States v. Lewis*, No. 12 Cr. 655 (S.D.N.Y.). All other citations to "ECF" refer to the electronic docket for the instant matter.

---

**End of Document**                                        © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2532482
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Frederick J. NERONI, Plaintiff,

v.

Ellen L. COCCOMA et al., Defendants.

No. 3:13–cv–1340 (GLS/DEP).
|
Signed June 5, 2014.

**Attorneys and Law Firms**

Frederick J. Neroni, Delhi, NY, pro se.

Ellen L. Coccoma, Michael V. Coccoma, Robert Mulvey, A. Gail Prudenti, Kevin Dowd, Eugene Peckham, Karen Peters, Thomas Mercure, Kelly Sanfilippo, Hon. Eric T. Schneiderman, New York State Attorney General, Bruce J. Boivin, Assistant Attorney General, of Counsel, Albany, NY, Hinman, Howard & Kattell, LLP, Hinman, Howard Law Firm, James S. Gleason, Esq., of Counsel, Binghamton, NY, Levene, Gouldin and Thompson, LLP, Margaret Fowler, Hiscock, Barclay Law Firm, Robert A. Barrer, Esq., of Counsel, Syracuse, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff *pro se* Frederick J. Neroni commenced this action against defendants[1] pursuant to 42 U.S.C.1983, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights, along with violations of the Nobility Clause.[2] (Compl., Dkt. No. 1.) Pending are defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (Dkt.Nos.29, 30, 44), and Neroni's cross motions for disqualification of the court, to transfer venue, and to disqualify counsel, (Dkt.Nos.40, 47). For the reasons that follow, defendants' motions are granted, Neroni's cross motions are denied, and Neroni's complaint is dismissed.

### II. *Background*[3]

This case presents yet another chapter in a barrage of lawsuits[4] filed by Neroni, a disbarred and disgruntled former attorney.[5] In his lengthy and disjointed complaint, Neroni names as defendants a host of New York state judges, court officials, private attorneys, and private law firms, and weaves a tangled web of judicial corruption, political favoritism, and professional improprieties, resulting in a range of—barely decipherable —constitutional transgressions. (*See generally* Compl.)

While difficult to discern, many of Neroni's claims tangentially relate to the circumstances surrounding his disbarment, (*id.* ¶¶ 8, 83–85, 140); others pertain to a New York state case, *Kilmer v. Moseman,* No.2009–298, pending in Supreme Court in Delaware County before Justice Kevin Dowd, in which Neroni's only involvement was receiving an order compelling him to appear for a deposition, (*id.* ¶¶ 18, 20, 34, 69, 86–95, 98–99). In an attempt to provide some clarity, below, the court addresses the relevant facts pertaining to, and the claims asserted against, each defendant.

#### A. *Ellen L. Coccoma*

Ellen Coccoma is an attorney in private practice at Hinman, Howard & Kattell, LLP (HHK) and a former member of New York's Committee on Professional Standards (COPS). (*Id.* ¶¶ 8, 82.) Neroni alleges that, during her time as a member of COPS, Ellen Coccoma "participated in [the] investigation and decision-making" that led to his disbarment, (*id.*), and used certain, unspecified information gained from the investigation for "private gain," (*id.* ¶¶ 84–85). Neroni further alleges that, during her involvement in his disciplinary case, Ellen Coccoma "accepted a private case prosecuting [his] then corporation for fraud." (*Id.* ¶ 83.) Ellen Coccoma's actions, Neroni contends, resulted in a deprivation of his Fourteenth Amendment due process rights. (*Id.* ¶ 85.)

In addition to her involvement in Neroni's disciplinary action, Ellen Coccoma is also involved as a private attorney in *Kilmer.* (*Id.* ¶ 18.) Neroni seems to allege that Ellen Coccoma exploited her relationship with her husband, Deputy Chief Administrative Judge Michael V. Coccoma, to obtain favorable treatment and avoid

the imposition of sanctions in *Kilmer*. (*Id* . ¶¶ 18–19.) Ellen Coccoma was also involved in procuring a court order requiring Neroni to provide deposition testimony in *Kilmer,* which, Neroni contends, violated his Fourth Amendment rights. (*Id.* ¶¶ 18, 86, 92, 138.) Neroni seeks treble, actual, and punitive damages against Ellen Coccoma. (*Id.* ¶¶ 138, 147.) He also seeks declaratory and injunctive relief, including a declaratory judgment that his disbarment is void. (*Id.* ¶¶ 120, 140.)

### B. *HHK*

**\*2** Neroni claims that HHK, a private law firm, acting in concert with its employee, Ellen Coccoma, "obtained by fraud ... an order to involuntarily depose [Neroni]" in the *Kilmer* state court litigation, resulting in a violation of Neroni's Fourth Amendment rights. (*Id.* ¶¶ 11, 92, 138.) HHK, as Ellen Coccoma's employer, is also responsible, Neroni claims, for Ellen Coccoma's "fraudulent failure" to disclose to the parties and court in *Kilmer* that she was involved with Neroni's disciplinary case. (*Id.* ¶ 138(c) (v).) Neroni seeks treble, actual, and punitive damages as against HHK. (*Id.* ¶¶ 138, 147.)

### C. *Judge Coccoma*

As noted above, Judge Coccoma is the Deputy Chief Administrative Judge for courts outside of New York City, and Ellen Coccoma's husband. (*Id.* ¶¶ 14, 16.) As the Chief Administrative Judge, he "controls [the] assignment of judges in courts" in upstate New York. (*Id.* ¶¶ 16–17.) Neroni claims that Judge Coccoma "controlled and monitored" the assignment of the justice to the *Kilmer* action, so that Ellen Coccoma could obtain favorable treatment, including, among other things, avoiding sanctions.[6] (*Id.* ¶ 18.) Additionally, at least briefly, Judge Coccoma presided over *Mokay v. Mokay,* No.2007–695, the New York Supreme Court case in which Neroni was found to have committed a fraud upon the court, and which ultimately led to his disbarment. (*Id.* ¶¶ 8, 15); *see In re Neroni,* 86 A.D.3d 710, 710–11 (3d Dep't 2011).

Neroni further claims that, pursuant to 22 N.Y.C.R.R. art. 122, a retired Supreme Court justice may be appointed as a judicial hearing officer. (Compl.¶ 22.) Neroni states that judicial hearing officers have the potential to earn up to $75,600 per year, which could "more than double a retired judge's income," and are appointed by the Deputy Chief Administrative Judge—in this case, Judge

Coccoma. (*Id.* ¶¶ 22, 23, 25, 26, 28.) Because Judge Coccoma has this power, Neroni alleges, the justices have a financial interest in doing favors for him, such as providing Ellen Coccoma with special treatment in matters that are before them. (*Id.* ¶¶ 28, 40, 56–57, 61, 95, 97.) Neroni claims that this violates the Nobility Clause of the United States Constitution, because Ellen Coccoma, ostensibly, has been "elevated to the ranks of nobility." (*Id.* ¶¶ 97, 106, 143.) Neroni seeks declaratory relief. (*Id.* ¶ 141.)

### D. *Justice Dowd*

Justice Dowd is a New York Supreme Court justice and was assigned to the *Kilmer* action by Judge Coccoma, after the previous judge—former New York Supreme Court Justice Eugene Peckham, also a defendant in this action—recused himself from the case. (Compl.¶¶ 20, 34, 40, 41.) In *Kilmer,* Justice Dowd granted Ellen Coccoma's motion to compel and ordered Neroni to appear to provide deposition testimony, in violation of Neroni's Fourth Amendment and due process rights.[7] (*Id.* ¶ 98.) Neroni surmises that, because Justice Dowd is nearing retirement, and will soon be eligible to be appointed to the position of a judicial hearing officer, Justice Dowd has a financial stake in granting favors to Judge Coccoma.[8] (*Id.* ¶¶ 28, 95, 97.) Neroni seeks damages against Justice Dowd and an injunction and a declaratory judgment prohibiting Justice Dowd from presiding over any cases where Neroni is a party or a non-party witness sought to be subpoenaed. (*Id.* ¶¶ 105, 134, 137.)

### E. *Judge Robert Mulvey*

**\*3** Judge Mulvey is the Administrative Judge of the Sixth Judicial District, and is responsible for assigning cases within that district. (*Id.* ¶¶ 36, 38.) Judges Coccoma and Mulvey, acting together, "helped deprive [Neroni] of his rights by assigning [Justice] Dowd to the Kilmer action where sanctions were requested against [Judge] Coccoma's wife." (*Id.* ¶¶ 40, 94.) Neroni claims that, as Judge Coccoma's "subordinate," Judge Mulvey has "a financial incentive to please" Judge Coccoma. (*Id* . ¶¶ 39, 40.)

### F. *Former Justice Peckham*

Justice Peckham is a former New York Supreme Court justice. (*Id.* ¶ 41.) Justice Peckham retired from his post in 2011, and has since joined the private law firm Levene

Gouldin & Thompson (LGT)—perhaps not surprisingly, another defendant in this action. (*Id.* ¶¶ 41–43, 63.) Prior to his retirement, and before Justice Dowd was assigned, Justice Peckham presided over the *Kilmer* action. (*Id.* ¶ 41.)

Additionally, after his retirement, Justice Peckham was appointed to the position of judicial hearing officer in Delaware County Supreme Court. (*Id.* ¶¶ 56–57, 61.) Neroni claims that Justice Peckham's position as a judicial hearing officer, coupled with Judicial Defendants' failure to publicly post a list of judicial hearing officers, should disqualify his law firm, LGT, from all matters in Delaware County Supreme Court. (*Id.* ¶¶ 57, 58, 64, 69, 70.) Neroni seeks treble, actual, and punitive damages as against Justice Peckham. (*Id.* ¶¶ 138, 147.)

### G. *LGT Defendants*

LGT is a private law firm in Binghamton, New York. (*Id.* ¶ 44.) Margaret Fowler is a partner in LGT; she also previously represented two codefendants in the *Kilmer* action, and "supported" Ellen Coccoma's motion to compel Neroni to provide deposition testimony. (*Id.* ¶¶ 46, 65–69.) LGT and Fowler "failed to announce to the Kilmer court that [Justice] Peckham, the previous judge on the Kilmer case, joined ... LGT ... as a partner." (*Id.* ¶ 64.) LGT and Fowler's actions, Neroni claims, violated his Fourth Amendment rights. (*Id.* ¶ 69.) Neroni seeks treble, actual, and punitive damages as against LGT Defendants. (*Id.* ¶¶ 138, 147.)

### H. *Judge Gail A. Prudenti, Justices Karen Peters and Thomas Mercure, and Kelly Sanfilippo*

Neroni's claims against Chief Administrative Judge Prudenti, Justice Peters, Presiding Justice [9] of the Appellate Division, Third Judicial Department, Justice Mercure, former acting Presiding Justice [10] of the Appellate Division, Third Judicial Department, and Kelly Sanfilippo, Court Clerk of Delaware County Supreme Court, boil down to the fact that they all had a duty to publicly disclose Justice Peckham's position as a judicial hearing officer, failed to do so, and allowed LGT and Fowler to continue to litigate the *Kilmer* matter. (*See generally id.* ¶¶ 56–61.) As a result, Neroni's Fourth Amendment rights were violated when he was ordered to provide deposition testimony in *Kilmer.* (*Id.* ¶ 69.) Neroni seeks injunctive relief against Judge Prudenti and

Justice Peters, essentially requiring them to publicly post the appointments of judicial hearing officers. (*Id.* ¶¶ 81, 142.)

### III. *Standard of Review*

**\*4** The standards of review under Rules 12(b)(1) and 12(b)(6), which are "substantively identical," *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003), are well settled and will not be repeated. For a full discussion of those standards, the parties are referred to the court's decisions in *Unangst v. Evans Law Associates, P.C.,* 798 F.Supp.2d 409, 410 (N.D.N.Y.2011), and *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N .D.N.Y.2010), respectively.

Furthermore, in general, *pro se* plaintiffs are "entitled to special solicitude," and the court has a duty to read and interpret a *pro se* party's submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F .3d 471, 477 (2d Cir.2006) (internal quotation marks and citations omitted). However, where "a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience such that it is appropriate to charge [him] with knowledge of ... particular requirements, it falls well within a district court's discretion to lessen the solicitude that would normally be afforded." *Tracy v. Freshwater,* 623 F.3d 90, 102 (2d Cir.2010).

### IV. *Discussion*

Given that Neroni graduated from law school and spent over thirty years practicing law, [11] the court "will not grant him the leeway afforded to legal neophytes." *NMD Interactive, Inc. v. Chertok,* No. 11 Civ. 6011, 2013 WL 1385213, at \*12 (S.D.N.Y. Mar. 18, 2013).

### A. *Neroni's Motion For Disqualification of the Court*

Neroni seeks the court's disqualification or recusal pursuant to 28 U.S.C. § 445. (Dkt. No. 47.) Neroni's motion is denied.

Neroni seeks the court's recusal based on several statutory provisions. [12] (Dkt. No. 40, Attach. 1 at 1–9.) As relevant here, recusal is appropriate under §

455(a) when a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b)(1) provides for recusal when a judge "has a personal bias or prejudice concerning a party." *Id.* § 455(b) (1). Section 455(b)(3) also mandates recusal when "[the judge] has served in governmental employment and in such capacity participated as counsel ... concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." *Id.* § 455(b)(3). And finally, recusal is appropriate under § 455(b)(5)(ii) when "a person within the third degree of relationship to [the judge] ... [i]s acting as a lawyer in the proceeding." *Id.* § 455(b)(5)(ii).

A recusal decision rests within the sound discretion of the judge whose recusal is sought. *See United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992). The standard for recusal is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality [might] reasonably be questioned." *Id.* (citation omitted). "Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *Id.* (citation omitted). Notably, recusal is not required where a case "involves remote, contingent, indirect or speculative interests." *Id.* To permit otherwise would be to "bestow upon litigants the power to force the disqualification of judges who are not to their liking." *United States v. Ahmed,* 788 F.Supp. 196, 202 (S.D.N.Y.1992), *aff'd,* 980 F.2d 161 (2d Cir.1992).

**\*5** First, Neroni contends that, based on prior adverse rulings, including sanctions, of this court against him, recusal is mandatory under §§ 455(a) and (b)(2). (Dkt. No. 40, Attach. 1 at 1–4.) Prior adverse rulings, however, are generally not a basis for disqualification. *See Gallop v. Cheney,* 645 F.3d 519, 520–21 (2d Cir.2011) (noting that an adverse ruling alone was insufficient to establish the sort of extreme antagonism required for disqualification); *see also Liteky v. United States,* 510 U.S. 540, 555 (1994) (noting that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible").

Second, Neroni contends that recusal is necessary under § 455(b) (3) because the court was involved with a criminal prosecution against Neroni in 1982, which was mentioned in his order of disbarment. (Dkt. No. 40, Attach. 1 at 4.) All that Neroni claims, however, is that at the time of the criminal prosecution, the court was "part of the prosecuting office." (*Id.*) Neroni does not claim, as § 455(b)(3) contemplates, that the court was actually involved in the prosecution. *See Maunsell v. WCAX TV,* 477 F. App'x 845, 846 (2d Cir.2012). Moreover, 28 U.S.C § 455(b)(3) mandates recusal where the judge, while serving in government employment, participated in a material way "concerning the proceeding" or "expressed an opinion concerning the merits of *the particular case in controversy.*" (emphasis added). Accordingly, even if the court was involved with Neroni's criminal prosecution, it has nothing to do with the merits of this proceeding. Neroni's argument suggests precisely the sort of "remote, contingent, indirect or speculative interests" that militate against recusal. *Lovaglia,* 954 F.2d at 815.

Third, Neroni argues that recusal is appropriate under § 455(b) (5)(ii) because "Judge Sharpe's son Michael A. Sharpe is employed as an Assistant Attorney General in the office that" represents Judicial Defendants. (Dkt. No. 40, Attach. 1 at 5–7.) As LGT Defendants point out, however, this is a civil matter, and Sharpe has: (1) not appeared in this action; and (2) serves as an Assistant Deputy Attorney General in the Organized Crime Task Force, and, as such, has no involvement in this matter, as he investigates and prosecutes criminal matters. (Dkt. No. 41 at 3–4.) Under these circumstances, recusal is not warranted. *See, e.g., Microsoft Corp. v. United States,* 530 U.S. 1301, 1301–03 (2000) (statement of Chief Justice Rehnquist explaining his decision not to recuse himself in a case in which his son was a partner at a law firm representing a party before the Court); *Faith Temple Church v. Town of Brighton,* 348 F.Supp.2d 18, 21 (W.D.N.Y.2004) (holding that recusal was not required where the judge's son had been hired by a law firm that was representing a party in the action).

**\*6** As the Second Circuit has observed, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda,* 241 F.3d 194, 201 (2d Cir.2001). Accordingly, Neroni's motion for recusal or disqualification of the court is denied.

Below, the court addresses the relevant arguments advanced by defendants in support of their motions to dismiss, Neroni's responses in opposition, and, finally, Neroni's remaining cross motions.

## B. *Judicial Immunity*

First, Judicial Defendants argue that the claims against Judges Coccoma, Mulvey, and Prudenti, and Justices Dowd, Peckham, Peters, and Mercure must be dismissed because they are entitled to absolute judicial immunity. (Dkt. No. 44, Attach. 2 at 6–9.) Neroni counters that judicial immunity does not apply. (Dkt. No. 47, Attach. 2 at 2–7.) The court agrees that Judges Coccoma and Mulvey and Justice Dowd are immune from suit in their individual capacities.[13] Further, while Judge Prudenti and Justices Peckham, Peters, and Mercure are not entitled to absolute judicial immunity, Neroni fails to state a claim against them.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (citation omitted). The 1996 Congressional amendments to § 1983 bar injunctive relief, unless a declaratory decree was violated or declaratory relief was unavailable. *See Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999). Therefore, a judge is immune from all forms of suit unless he has acted either beyond his judicial capacity, or "in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12.

In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is "to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter." *Ceparano v. Southampton Justice Court,* 404 F. App'x 537, 539 (2d Cir.2011) (internal quotation marks and citation omitted). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* (internal quotation marks and citation omitted). Moreover, if the judge is performing in his judicial capacity, immunity does not give way even if "the action he took was in error, was done maliciously,

or was in excess of his authority." *Id.* (internal quotation marks and citation omitted).

### 1. Judges Coccoma and Mulvey

The gravamen of Neroni's claims against Judges Coccoma and Mulvey is that they manipulated the assignment of judges so that Ellen Coccoma could obtain favorable treatment. (Compl. ¶¶ 18, 40, 94 .) Citing no authority, Neroni argues that these actions are outside the scope of judicial immunity. (Dkt. No. 47, Attach. 2 at 2–4.)

**\*7** Contrary to Neroni's unfounded assertions, courts have held that the assignment of cases is a judicial function and is therefore a protected act under judicial immunity. *See Martinez v. Winner,* 771 F.2d 424, 434 (10th Cir.1985) ("Although it is an 'administrative' act, in the sense that it does not concern the decision who shall win a case, the assignment of cases is still a judicial function in the sense that it directly concerns the case-deciding process."), *vacated on other grounds sub nom. Tyus v. Martinez,* 475 U.S. 1138 (1986); *Parent v. New York,* 786 F.Supp.2d 516, 532 (N.D.N.Y.2011) ("The assignment of cases and issuance of consolidation orders are judicial functions."), *aff'd,* 485 F. App'x 500 (2d Cir.2012); *see also Zahl v. Kosovsky,* No. 08 Civ. 8308, 2011 WL 779784, at \*9 (S.D.N.Y. Mar. 3, 2011) (holding that the alleged manipulation of the case assignment system is protected by judicial immunity), *aff'd,* 471 F. App'x 34 (2d Cir.2012).

Accordingly, Judges Coccoma and Mulvey's judicial assignment decisions are clearly judicial functions. As such, Judges Coccoma and Mulvey are entitled to judicial immunity, and the claims asserted against them in their individual capacities are dismissed.

### 2. Justice Dowd

Although Neroni makes numerous factual allegations against Justice Dowd, they generally concern his rulings and actions in *Kilmer,* particularly his ruling on Ellen Coccoma's motion to compel, which ordered Neroni to provide deposition testimony. (Compl.¶¶ 40, 98, 99, 101–08.) Neroni also complains of Justice Dowd's failure to impose sanctions on Ellen Coccoma, due to improper financial and political motives, and his acquiescence to her rent-free use of public buildings.[14] (*Id.* ¶¶ 28, 40, 93, 94, 97, 98, 110, 113, 136.)

Issuing orders compelling parties or nonparties to provide deposition testimony and deciding whether to impose sanctions are actions well within Justice Dowd's judicial capacity, and are also well within his jurisdiction.[15] *See Chandler v. Suntag,* No. 1:11–cv–02, 2011 WL 2559878, at *3 (D. Vt. June 28, 2011) ("Each of these alleged activities-considering complaints, facilitating subpoenas, and permitting certain forms of discovery-involve fundamental judicial functions, and are protected from liability by absolute judicial immunity." (citing *Mireles,* 502 U.S. at 11)); *Kapsis v. Brandveen,* No. 09–01352, 2009 WL 2182609, at *2 (E.D.N.Y. July 20, 2009) (noting that judicial immunity protects judges' decisions regarding whether to impose sanctions). Thus, Justice Dowd is immune from suit in his individual capacity.

### 3. Judge Prudenti and Justices Peckham, Peters, and Mercure

The essence of Neroni's claims against Judge Prudenti and Justices Peters, Peckham, and Mercure is that they all failed to publicly disclose Justice Peckham's position as a judicial hearing officer, and allowed LGT and Fowler to continue to litigate the *Kilmer* matter, which violated Neroni's Forth Amendment rights. (Compl.¶¶ 56–61, 69.)

**\*8** Neroni claims the judges' failure to "post names of judicial hearing officers prominently where the public could see" was not judicial, but administrative. (Dkt. No. 47, Attach. 2 at 6–7.) While the court agrees that posting names of judicial hearing officers is properly characterized as administrative, thus putting these omissions outside of the scope of judicial immunity, Neroni's claims against these defendants nevertheless fail because he has failed to state a cognizable federal claim. *See Morris v. Katz,* No. 11–CV–3556, 2011 WL 3918965, at *3 (E.D.N.Y. Sept. 4, 2011) (holding that the Chief Administrative Judge was not entitled to absolute immunity for administrative acts, but plaintiff, in any event, failed to state a claim); *Collins v. Lippman,* No. 04–CV–3215, 2005 WL 1367295, at *3 (E.D.N.Y. June 8, 2005) (noting that the Chief Administrative Judge's alleged failure to direct clerk to provide the plaintiff with copies of documents he requested was "beyond the scope of judicial immunity").

Although these defendants are not entitled to judicial immunity, Neroni has failed to state a claim. "[F]or a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions." *Porath v. Bird,* No. 9:11–cv–963, 2013 WL 2418253, at *23 (N.D.N.Y. June 3, 2013). As an initial matter, aside from receiving an order compelling him to appear for a deposition in *Kilmer*—which, by his own admission, he did not attend, (Dkt. No. 47, Attach. 2 at 6)—Neroni has failed to allege what injury, if any, he suffered as a result of defendants' failure to post the names of judicial hearing officers. Moreover, while Neroni contends that defendants' failure to post the names of judicial hearing officers caused a Fourth Amendment violation when he was compelled to provide deposition testimony in an action in which a judicial hearing officer's private law firm was representing a private party, (Dkt. No. 47, Attach. 1 at 7), this attempt to articulate causation is attenuated at best.

Further, aside from his bald, conclusory assertions, Neroni has cited no authority indicating that these judges were under a duty to post the names of judicial hearing officers. An "omission can ... only amount to an actionable claim under § 1983 if [defendants were] under a constitutional obligation." *Zigmund v. Wynne,* 189 F.3d 462, 1999 WL 642951, at *2 (2d Cir.1999); *see N . Y. Coastal P'ship, Inc. v. U.S. Dep't of Interior,* 341 F.3d 112, 117 (2d Cir.2003) (noting that failure to act may constitute a § 1983 violation only where the plaintiff identifies a duty); *see also Morris,* 2011 WL 3918965, at *3. Accordingly, all claims asserted against Judge Prudenti and Justices Peckham, Peters, and Mercure regarding their failure to post or disclose the names of judicial hearing officers are dismissed.

### C. Quasi–Judicial Immunity

**\*9** Judicial Defendants also argue that, to the extent that Neroni asserts any claims against Ellen Coccoma in her capacity as a member of COPS, she is entitled to quasi-judicial immunity. (Dkt. No. 44, Attach. 2 at 11–12.) The court agrees.

It is well settled that quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou,* 438 U.S. 478, 513 (1978); *see Cleavinger v. Saxner,* 474 U.S. 193, 201 (1985) ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell,* 585

F.3d 72, 81 (2d Cir.2009) ("Judicial and quasi-judicial immunity are both absolute immunities ." (citations omitted)).

Members of COPS are entitled to quasi-judicial immunity for conduct performed "within the course of their duties." *Koziol v.. Peters,* No. 12–CV823, 2012 WL 4854589, at *8 (N.D.N.Y. Oct. 11, 2012) (holding that three members of the Third Department COPS were protected by quasi-judicial immunity for their conduct in the course of an investigation); *see Anonymous v. Ass'n of the Bar of N.Y.,* 515 F.2d 427, 433 (2d Cir.1975) (observing that New York state courts regard disciplinary proceedings as "judicial proceeding[s]" and determining that the state bar association's grievance committee acted as a quasi-judicial body and an arm of the Appellate Division); *accord McKeown v. N.Y. State Comm'n on Judicial Conduct,* 377 F. App'x 121, 124 (2d Cir.2010). Accordingly, any claims against Ellen Coccoma relating to her conduct as a member of COPS, including her investigation and prosecution of Neroni's disciplinary action, must be dismissed because she is entitled to quasi-judicial immunity.

### D. *Eleventh Amendment Immunity*

Judicial Defendants argue that Neroni's claims against them in their official capacities must be dismissed because they are entitled to immunity under the Eleventh Amendment. [16] (Dkt. No. 44, Attach. 2 at 14–17.) The court agrees.

The Eleventh Amendment provides a state with sovereign immunity from suit. *See V.A. Office for Prot. Advocacy v. Stewart,* 131 S.Ct. 1632, 1638 (2011) (citation omitted). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 1638. Generally, New York and its agencies enjoy sovereign immunity from suit in federal court under the Eleventh Amendment. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006) (holding that the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities).

Under the doctrine established in *Ex Parte Young,* however, a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided

that his complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective." *Clark v. DiNapoli,* 510 F. App'x 49, 51 (2d Cir.2013) (internal quotation marks and citation omitted). Nevertheless, declaratory relief, while equitable in nature, is barred by the Eleventh Amendment "when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." *Kent v. New York,* No. 1:11–CV–1533, 2012 WL 6024998, at *7 (N.D.N.Y. Dec. 4, 2012) (internal quotation marks and citation omitted).

### 1. Monetary and Non–Prospective Declaratory or Injunctive Relief

**\*10** Here, to the extent that Neroni's complaint seeks monetary and/or non-prospective injunctive or declaratory relief against Judicial Defendants in their official capacities, they are immune from suit pursuant to the Eleventh Amendment. This includes: (1) as against Ellen Coccoma acting in her capacity as a member of COPS, Neroni's request for (a) treble damages, (Compl.¶¶ 138, 147), and (b) a declaratory judgment that his disbarment is void, (*id.* ¶ 140), as it is properly characterized as retroactive declaratory relief, *see Nat'l R.R. Passenger Corp. v. McDonald,* No. 12 Civ. 2731, 2013 WL 5434618, at *13 (S.D.N.Y. Sept. 26, 2013); (2) as against Judge Coccoma, Neroni's request for "a declaratory judgment that Ellen Coccoma's participation in the disciplinary action against [him] ... where [Judge] Coccoma recused [himself] from the related case involving [Neroni] ... constituted re-entry of [Judge] Coccoma into the Mokay case through his wife and a violation of [Neroni's] due process," (Compl.¶ 141), as it is also properly characterized as retroactive declaratory relief, *see Nat'l R.R. Passenger,* 2013 WL 5434618, at *13; (3) as against Justice Dowd, Neroni's request for money damages; and (4) all claims against Justice Mercure, Judge Mulvey, Justice Peckham, and Sanfilippo, [17] as Neroni has not requested prospective injunctive relief as against any of these Judicial Defendants in his complaint.

### 2. Prospective Injunctive Relief

Neroni seeks prospective injunctive relief against Justice Dowd, Judge Prudenti, and Justice Peters. Specifically, as against Justice Dowd, Neroni seeks an injunction and a declaratory judgment prohibiting Justice Dowd from presiding over any cases where Neroni is a party or a nonparty witness sought to be subpoenaed. (Compl.¶¶

134, 137.) As against Judge Prudenti, Neroni seeks injunctive relief "requiring her to promptly forward orders of appointment of judicial hearing officers to the County and Court clerks of the respective counties, as well as to the Court Clerks of the Appellate Divisions ... and to post the names of appointed hearing officers on the website of the Unified New York Court system ." (Compl.¶ 81.) Similarly, as against Justice Peters, Neroni seeks an injunction "ordering her to post all orders of appointment of all judicial hearing officers and of all members of ... [COPS] of her court going back [forty-five] years on her website." (*Id.* ¶ 142.) Because, as discussed *supra* Part IV.B.3, Neroni fails to state a claim against these defendants regarding their failure to post the names of judicial hearing officers, a discussion of whether Neroni's requested relief related to these claims fits within the *Ex Parte Young* exception is academic. [18]

### E. *State Action*

HHK, LGT Defendants, Ellen Coccoma, and Justice Peckham contend that any claims that Neroni asserts against them in their capacities as private attorneys or law firms must be dismissed for lack of state action. (Dkt. No. 29, Attach. 2 at 4–8; Dkt. No. 30, Attach. 3 at 6–8; Dkt. No. 44, Attach. 2 at 9–12.) Neroni retorts that he sufficiently alleged that all private conduct rose to the level of state action by way of conspiracy. (Dkt. No. 40, Attach. 2 at 2–4; Dkt. No. 40, Attach. 3 at 2–6; Dkt. No. 47, Attach. 2 at 18–20.) The court agrees with defendants that dismissal is required.

*11 "In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir.2002) (citation omitted). In order to prove a § 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324–25. However, "[a] merely conclusory allegation that a private [individual] acted in concert with a state actor does not suffice to state a § 1983 claim against the private [individual] ." *Id.* at 324 (citation omitted). Instead, a plaintiff must show "a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.,* 419 U.S.

345, 351 (1974) (internal quotation marks and citation omitted).

Here, despite his vehement contentions to the contrary, Neroni has failed to establish that any of the private law firms or attorneys were state actors for § 1983 purposes. As an initial matter, it is black letter law that "[p]rivate law firms and attorneys ... are not state actors for section 1983 purposes." *Jaffer v. Patterson,* No. 93 Civ. 3452, 1994 WL 471459, at *2 (S .D.N.Y. Sept. 1, 1994) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 318 (1981)); *see O'Bradovich v. Vill. of Tuckahoe,* 325 F.Supp.2d 413, 419 (S.D.N.Y.2004) ("Private attorneys and law firms ... do not act under color of state authority.") Furthermore, it is equally well settled that mere use, and even misuse, of the state courts does not turn private parties into state actors. *See Cramer v. Englert,* 93 F. App'x 263, 264 (2d Cir.2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under § 1983." (internal quotation marks and citation omitted)); *Dahlberg v. Becker,* 748 F.2d 85, 92–93 (2d Cir.1984) (dismissing § 1983 action against private attorney because allegations of "misuse of a state statute" did not give rise to a § 1983 action); *Barroga–Hayes v. Susan D. Settenbrino, P .C.,* No. 10 CV 5298, 2012 WL 1118194, at *8 (E.D.N.Y. Mar. 30, 2012) (holding that the issuance of and compliance with a subpoena did not transform defendants into state actors).

The genesis of Neroni's claims against these defendants is that Ellen Coccoma, a private attorney, avoided the imposition of sanctions, and filed a motion to compel Neroni's deposition testimony in *Kilmer,* which Justice Dowd granted solely as a favor to Judge Coccoma, resulting in a violation of Neroni's Fourth and Fourteenth Amendment rights. (Compl.¶¶ 18, 19, 86, 91, 92, 98.) Because Ellen Coccoma is an employee of HHK, Neroni argues, HHK and Ellen Coccoma "were the same legal person." (Dkt. No. 40, Attach. 2 at 3.) Further, because LGT Defendants "supported" Ellen Coccoma's motion in *Kilmer,* and because Justice Peckham, an LGT partner, was also a judicial hearing officer, LGT Defendants and Justice Peckham were part of the conspiracy to violate Neroni's Fourth Amendment rights. (Compl.¶¶ 65, 67, 69, 99, 114, 138(c) .) At best, however, Neroni has alleged misuse of state court procedures, which, as discussed above, does not morph private action into state action. Neroni even admits that "Ellen Coccoma and [Justice]

Peckham were sued predominantly for their conduct as private attorneys." (Dkt. No. 47, Attach. 2 at 22.)

**\*12** Further, Neroni also has not alleged facts demonstrating a "meeting of the minds," *Dahlberg,* 748 F.2d at 93, an agreement between private parties to deprive him of his constitutional rights, *Ciambriello,* 292 F.3d at 323, or a "a sufficiently close nexus between the State" and the actions of the private attorneys and law firms, *Jackson,* 419 U.S. at 351. Instead, Neroni conclusorily contends that judges nearing retirement, such as Justice Dowd, are financially motivated to provide Ellen Coccoma with special treatment in matters that come before them so that Judge Coccoma is incentivized to appoint these judges to judicial hearing officer positions upon their retirement. (Compl.¶¶ 28, 40, 56–57, 61, 95, 97.) Such far-removed and unfounded speculation does not a conspiracy make. *See Delbene v. Alesio,* No. 00 Civ. 7441, 2001 WL 170801, at \*10 (S.D.N.Y. Feb. 21, 2001) (holding that private attorneys' coordination of deposition with county attorney allegedly in violation of the plaintiff's First Amendment rights did not give rise to a conspiracy and did not elevate the private attorney to a state actor). Accordingly, Neroni's § 1983 claims against HHK, LGT Defendants, Ellen Coccoma, and Justice Peckham are dismissed.

### F. *State Law Claims*

Defendants contend that, to the extent that Neroni asserts state law claims against them, the court should decline to exercise supplemental jurisdiction. (Dkt. No. 29, Attach. 2 at 9–19; Dkt. No. 44, Attach. 2 at 19–20.) While no state law causes of action are readily apparent on the face of the complaint, to the extent that Neroni asserts state law claims, the court agrees that they must be dismissed.

"In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion." *Butler v. LaBarge,* No. 9:09–CV–1106, 2010 WL 39077258, at \*3 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.,* 455 F.3d 118, 121–22 (2d Cir.2006)). Where, as here, all federal claims have been eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal. *Kolari,* 455 F.3d at 122. Accordingly, the court declines to exercise jurisdiction over any state law claims and they are dismissed from this action.

### G. *Leave to Amend*

Although a *pro se* plaintiff's complaint "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of N.Y.,* 579 F.3d 176, 183 (2d Cir.2009) (internal quotation marks and citation omitted), "leave to amend is not necessary when it would be futile," *Ashmore v. Prus,* 510 F. App'x 47, 49 (2d Cir.2013). As an initial matter, as discussed above, *supra* Part IV, given his legal education and experience, the court, in its discretion, declines to afford Neroni any special solicitude. Moreover, Neroni has not requested leave to amend in any of his submissions. And in any event, considering the analysis above, any amended complaint would be just as frivolous, baseless, and vexatious as his original, and amendment, therefore, would be futile. Accordingly, Neroni's complaint is dismissed with prejudice.

### H. *Costs and Attorneys' Fees*

**\*13** In requesting dismissal of Neroni's claims, HHK and LGT Defendants seek costs and reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1988 and 1927. (Dkt. No. 29, Attach. 2 at 10–12; Dkt. No. 30, Attach. 3 at 16–20.) Because defendants did not provide any documentation upon which the court could quantify costs or attorneys' fees, however, this request is denied with leave to renew .[19]

### I. *Neroni's Remaining Cross Motions*

#### 1. *Transfer of Venue*

Providing no authority or analysis, Neroni requests a transfer of venue "to a court where the Chief Judge does not have relatives working in the office of New York State Attorney General." (Dkt. No. 40 at 1.) Neroni's motion is denied.

Section 1404(a) of Title 28 of the United States Code authorizes a district court to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The decision to transfer venue is entrusted to the sound discretion of the trial court, *see Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989) (citations omitted), and the party seeking transfer bears

the burden of proof, *see Rescuecom Corp. v. Chumley,* 522 F.Supp.2d 429, 449 (N.D.N.Y.2007). Because venue is proper in this district, and Neroni has not demonstrated that transfer is warranted, Neroni's motion to transfer venue is denied.

### *2. Disqualification of Counsel*

Finally, Neroni moves to disqualify the New York State Office of the Attorney General (OAG) from representing Ellen Coccoma and Justice Peckham against Neroni's claims related to the conduct of these defendants solely in their private capacity, to strike any filings made by OAG on their behalf, and to sanction the Attorney General and Assistant Attorney General.[20] (Dkt. No. 47; Dkt. No. 47, Attach. 2 at 22–23.) Judicial Defendants oppose Neroni's motion. (Dkt. No. 53 at 2–3.) For the reasons discussed below, Neroni's motion is denied.

Motions to disqualify counsel "are subject to fairly strict scrutiny" and "the courts must guard against tactical use of motions to disqualify counsel." *Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir.1989). A district court may "disqualify counsel where necessary to preserve the integrity of the adversary process," typically in the following situations: (1) where an attorney's conflict of interests in violation of New York's Rules of Professional Conduct "undermines the court's confidence in the vigor of the attorney's representation of his client"; or (2) "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, ... giving his present client an unfair advantage." *Bd. of Educ. of N.Y.C. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979) (citations omitted); *see Grant v. Harvey,* No. 09 Civ.1918, 2012 WL 1958878, at *1 (S.D.N.Y. May 24, 2012).

**\*14** Further, New York Public Officers Law § 17(2) states, in relevant part:

> the state shall provide for the defense of the employee in any civil action or proceeding in any state or federal court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties.

Judicial Defendants contend, and the court agrees, that the complaint raises allegations that certain conduct by both Ellen Coccoma and Justice Peckham, while acting within the scope of their public employment and duties, injured Neroni. (Dkt. No. 53 at 2–3; Compl. ¶¶ 8, 41, 82, 84–85.) Indeed, the caption of the complaint, which, in addition to their individual capacities, names Ellen Coccoma as a defendant "as a former member of the Committee for Professional Conduct, Appellate Division, Third Judicial Department," and names Justice Peckham as a defendant "as the former Acting Supreme Court Justice assigned to the Delaware County Supreme Court case *Kilmer v. Moseman,* Delaware County Index No.2009–298, and as a judicial hearing officer in Delaware County Supreme Court." (Compl.)

Because Neroni alleged in the complaint that at least some of the events giving rise to this action occurred while defendants were acting within the scope of their employment with the state, Ellen Coccoma and Justice Peckham are entitled to be represented by OAG unless the Attorney General determines that representation is inappropriate. *See* N.Y. Pub. Off. Law § 17(2); *Grant,* 2012 WL 1958878, at *2. Here, no such determination was made. Further, Neroni does not claim any violation of New York's Rules of Professional Conduct that would undermine the court's confidence in the vigor of the Attorney General's representation of his clients, and he does not claim that a conflict of interest exists. Accordingly, there is no basis on which to grant Neroni's motion, and it is therefore denied.

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions to dismiss (Dkt.Nos.29, 30, 44) are **GRANTED;** and it is further

**ORDERED** that Neroni's cross motions for disqualification or recusal of the court, transfer of venue, and disqualification of counsel (Dkt.Nos.40, 47) are **DENIED;** and it is further

**ORDERED** that Neroni's complaint (Dkt. No. 1) is **DISMISSED;** and it is further

**ORDERED** the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2532482

Footnotes

1    Defendants include Ellen L. Coccoma, Michael V. Coccoma, Robert Mulvey, A. Gail Prudenti, Kevin Dowd, Eugene Peckham, Karen Peters, Thomas Mercure, and Kelly Sanfilippo (collectively, "Judicial Defendants"); Hinman, Howard & Kattell, LLP; and Levene, Gouldin and Thompson, LLP and Margaret Fowler (collectively, "LGT Defendants").

2    *See* U.S. Const. art. I, § 9, cl. 8.

3    The facts are drawn from Neroni's complaint, and presented in the light most favorable to him.

4    *See Neroni v. Zayas,* No. 3:13–CV–0127, 2014 WL 1311560 (N.D . N.Y. Mar. 31, 2014); *Neroni v. Grannis,* No. 3:11–CV–1485, 2013 WL 1183075 (N.D.N.Y. Mar. 21, 2013); *Bracci v. Becker,* No. 1:11–cv–1473, 2013 WL 123810 (N.D.N.Y. Jan. 9, 2013); *Neroni v. Becker,* No. 3:12–cv1226, 2012 WL 6681204 (N.D.N.Y. Dec. 21, 2012), *aff'd in part, vacated in part by* 2014 WL 657927 (2d Cir. Feb. 21, 2014).

5    *See In re Neroni,* 86 A.D.3d 710 (3d Dep't 2011).

6    Neroni contends that Ellen and Judge Coccoma "have [a] common budget," thus rendering sanctions imposed against Ellen Coccoma adverse to both Ellen and Judge Coccoma's interests. (Compl. ¶ 19 .)

7    Although far from clear, it appears that Neroni allges that his Fourth Amendment rights were violated because Justice Dowd lacked jurisdiction to issue the order compelling Neroni's deposition testimony because, after the death of a party, William Kilmer, Justice Dowd failed to "properly restor[e] jurisdiction." (Compl.¶¶ 18, 67, 68, 86, 92, 98, 100–105.)

8    Other favors Justice Dowd allegedly provided to Ellen Coccoma include denying requests for sanctions against her and allowing her to have depositions in public buildings for private clients "at taxpayers, and [Neroni's], expense." (Compl.¶¶ 40, 93, 110, 113, 136.)

9    While Neroni captions Justice Peters' official position as "Chief Judge," (Compl.), she is, in fact, Presiding Justice. The court will use her correct title.

10   Again, Neroni captions Justice Mercure's official position as "former acting Chief Judge," (Compl.), when, in fact, he was the former acting Presiding Justice. The court will use his correct title.

11   Neroni is a graduate of Albany Law School and was admitted to the New York State Bar in 1974. *See Zayas,* 2014 WL 1311560, at *1. He was disbarred on July 7, 2011. *See id.; In re Neroni,* 86 A.D.3d at 711.

12   Reasserting previously-made arguments, Neroni also claims that recusal is mandated "as a matter of due process of law." (Dkt. No. 40, Attach. 1 at 7–9.) "Consistent with a defendant's due process right to a fair trial, a district judge must recuse himself 'in any proceeding in which his impartiality might reasonably be questioned.' " *United States v. Basciano,* 384 F. App'x 28, 32 (2d Cir.2010) (quoting 28 U.S.C. § 455(a)). Because this inquiry is identical to that considered under § 455(a), (*id.*), the court need not separately address Neroni's due process argument.

13   Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Martinez v. Queens Cnty. Dist. Attorney,* No. 12–CV–06262, 2014 WL 1011054, at *8 n.8 (E.D.N.Y. Mar. 17, 2014); *McKnight v. Middleton,* 699 F.Supp.2d 507, 521–25 (E.D.N.Y.2010), *aff'd,* 434 F. App'x 32 (2d Cir.2011). As further discussed below, the Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *Martinez,* 2014 WL 1011054, at *8 n.8.

14   Neroni also attacks Justice Dowd's mental capacity and claims that he has "mental health problems that appear to make him unfit to make decisions from the bench which are changing lives and affecting constitutional rights of individuals." (Compl.¶¶ 121–30.)

15   In his opposition, Neroni contends that judicial immunity should not apply to Justice Dowd because Neroni has "alleged enough to be entitled to prospective injunctive relief under *Ex Parte Young.*" (Dkt. No. 47, Attach. 2 at 4.) Neroni confuses judicial immunity with Eleventh Amendment immunity, which is addressed below. As discussed above, while judicial immunity does not bar injunctive relief if a declaratory decree was violated or declaratory relief was unavailable, Neroni has not alleged that Justice Dowd violated a declaratory decree or that declaratory relief was unavailable. *See Montero,* 171 F.3d at 761.

16  Neroni contends that the Eleventh Amendment does not bar claims of citizens against their own states. (Dkt. No. 47, Attach. 2 at 8, 15.) This same, baseless argument, offered by Neroni himself, was recently considered and rejected by a court in this District. *Bracci,* 2013 WL 123810, at *9 n.5. Accordingly, the court declines to entertain this obviously meritless argument again here.

17  For the first time, in his opposition to Judicial Defendants' motion to dismiss, Neroni claims that he seeks prospective injunctive relief against Sanfilippo. (Dkt. No. 47, Attach. 2 at 7–8.) Even if he properly stated so in his complaint, Neroni would be unable to circumvent Eleventh Amendment immunity because, as discussed *infra* Part IV.D.2, he has failed to allege an ongoing violation of federal law.

18  The court notes, however, that even if Neroni did state a claim, Neroni's requested relief does not fit within the *Ex Parte Young* exception. "Whether a litigant's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a state is a straightforward inquiry that asks whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 372 (2d Cir.2005) (internal quotation marks and citations omitted). Here, while the relief Neroni requests is prospective in nature, he has failed to allege that this relief will remedy an *ongoing* violation of federal law. *Clark,* 510 F. App'x at 51; *McKeown,* 377 F. App'x at 123. The sole bases for Neroni's requested relief are that Justice Dowd violated Neroni's Fourth Amendment rights by ordering him to provide deposition testimony in *Kilmer,* and that Justice Peters and Judge Prudenti violated his Fourth Amendment rights by failing to publicly disclose the list of judicial hearing officers, thus allowing LGT to continue to represent private parties in *Kilmer* while Justice Peckham was a judicial hearing officer. (Compl.¶¶ 56–61, 98.) Because Neroni has alleged only discrete, past acts or omissions, not an ongoing violation of federal law, Justice Peters, Justice Dowd, and Judge Prudenti are also entitled to Eleventh Amendment sovereign immunity and dismissal of any claims asserted against them in their official capacities.

19  Notably, while Neroni argues against the imposition of sanctions, (Dkt. No. 40, Attach. 2 at 15–16; Dkt. No. 40, Attach. 3 at 9–10), no Rule 11 motion is presently before the court.

20  As an initial matter, it is unclear that Neroni has standing to object to the representation of Ellen Coccoma and Justice Peckham by the Attorney General, as he "has failed to demonstrate that he has been aggrieved in any way different in kind and degree from the community generally by the Attorney General's representation" of these defendants. *Zaccaro v. Parker,* 169 Misc.2d 266, 269 (N.Y.Sup.Ct.1996).

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

Siino v. New York City Human Resources..., Not Reported in...

2015 WL 1877654

2015 WL 1877654
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Carolyn Jane SIINO, Plaintiff,

v.

NYC HUMAN RESOURCES ADMINISTRATION/
DEPARTMENT OF SOCIAL SERVICES,
NYC Department of Homeless Services,
City of New York, New York Foundation for
Senior Citizens, Guardian Services, Inc., and
Crown House Realty Co. LLC, Defendants.

No. 14–CV–7217 (MKB).
|
Signed April 21, 2015.

**Attorneys and Law Firms**

Carolyn Jane Siino, Ozone Park, NY, pro se.

***MEMORANDUM & ORDER***

MARGO K. BRODIE, District Judge.

**\*1** Plaintiff Carolyn Siino, proceeding *pro se*, commenced the above-captioned civil rights action against Defendants New York City Human Resources Administration/Department of Social Services, New York City Department of Homeless Services, City of New York, New York Foundation for Senior Citizens, Guardian Services, Inc. and Crown House Reality Co., LLC. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 for violations of her First, Fourth, Fifth and Fourteenth Amendment rights, relief under state law for intentional infliction of severe emotional distress, negligent infliction of severe emotional distress, larceny, conversion, and negligence, and injunctive or declaratory relief against the City. Plaintiff's request to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915 is granted. For the reasons discussed below, Plaintiff's claims are dismissed.

**I. Background**

Plaintiff is a sixty-five year old homeless person, living in New York City. (Compl.1, 2.) Approximately two years prior to the commencement of this action, Plaintiff lived in a rent-stabilized apartment but was evicted for nonpayment of rent. (Compl.2.) Plaintiff "became a ward in a guardianship in Queens Supreme Court," following guardianship proceedings. [1] (*Id.*) Plaintiff's Complaint centers on what "[she] believes has been an avoidable ordeal for [her] during that period until the present." (*Id.*)

In 2011, Plaintiff lived in an apartment owned by Crown House Realty Co. LLC ("Crown House"). (Compl.2.) Plaintiff sued Crown House for allegedly exposing her to fumes and carbon monoxide emanating from the laundry and boiler rooms. *See Siino v. Crown House Realty Co. LLC, et al.,* No. 12–CV–1905, 2012 WL 1450411 (E.D .N.Y. Apr. 25, 2012) (dismissing complaint for lack of subject matter jurisdiction and for failure to state a claim). Plaintiff was struggling to pay rent, and alleges that the New York City Human Resources Administration ("HRA") failed to pay her rent, and failed to enable her to obtain a loan in order to assist her with payment of rent. (Compl.3–4.) Plaintiff was involved in proceedings in Queens County housing court, and was served with eviction notices in 2013. (Compl.4–5.) Plaintiff alleges that during this time, HRA "pretend[ed] to be filling out applications for [Plaintiff's] housing while steering [Plaintiff] into guardianship," including "folding" a paper that Plaintiff signed, which Plaintiff alleges to be papers authorizing guardianship. (Compl.6.) Plaintiff alleges that on June 26, 2013, the HRA submitted "legal papers" to Queens County Supreme Court which authorized a "temporary limited guardianship." (Compl.7.) Plaintiff had no legal representation at that time. (*Id.*)

According to the Complaint, the guardianship required Plaintiff to relocate to a shelter, which Plaintiff was unable to do because "no shelter would accept [her] shopping cart," in which she kept "18 years of notes for future prophecy books as per [Plaintiff's] religious calling." (Compl.8.) Plaintiff alleges that the HRA and New York Foundation for Senior Citizens, Guardian Services, Inc. ("Guardian Services") failed to help Plaintiff pay her rent or relocate her, breached a fiduciary duty to her, and "violated guardianship ... laws." (Compl.8, 17.) Plaintiff contends that Guardian Services paid her an insufficient allowance to buy items, such as boots. (Compl.8–9.) She further contends that Guardian Services and the Human Resources Administration were engaged in the "theft" of her property by failing to provide storage facilities or otherwise safeguard the majority of her belongings when

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Siino v. New York City Human Resources..., Not Reported in...

2015 WL 1877654

she was required to vacate her residence at Crown House. (Compl.10–11, 14, 22, 35–36.)

**\*2** Plaintiff alleges that in late 2013 and early 2014, she went through a "[l]egal [p]ossession ... and [t]hree [u]nwanted [i]nstitutionalizations." (Compl.16.) At that time, Plaintiff was admitted to Forest Hills Hospital on two occasions and Elmhurst Hospital Center on another. (Compl.18–19.) During the visit to Elmhurst Hospital, Plaintiff alleges that her belongings, including her "wagon" (i.e., shopping cart) and bag were "seiz[ed]." (Compl.19.) Plaintiff makes references to New York City and Guardian Services, indicating that she believes they were involved. (*Id.*) Since the incident, Plaintiff has been "[t]rapped in an [i]llegal and [u]nconstitutional [g]uardianship." (Compl.21.) Plaintiff protests that she "cannot get rid of [Guardian Services], because [Plaintiff] does not have a high enough income and a lawyer, although Queens Supreme Court cites a housing concern and a financial management concern." (Compl.24.) Plaintiff believes that the actions of Guardian Services and the HRA were motivated by the fact that Plaintiff is not a veteran, does not have children, and is not employed, which Plaintiff alleges violates her right to equal protection because she has been placed in an unconstitutional "uncategorized" category. (Compl.3, 6, 28–29.)

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.,* 631 F.3d 57, 63 (2d Cir.2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotation marks omitted); *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (same); *Harris v.*

*Mills,* 572 F.3d 66, 72 (2d Cir.2009) (noting that even after *Twombly,* the court "remain [s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action, if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007).

### b. New York City agencies

Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter, chap. 17 § 396. This provision "has been construed to mean that New York City departments [and agencies], as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.,* 516 F.3d 156, 159–60 (2d Cir.2008) (*per curiam* ) (citing *Jenkins v. City of New York,* 478 F.3d 76, 93 n. 19 (2d Cir.2007)); *see also Shamilov v. Human Res. Admin.,* No. 10–CV–8745, 2011 WL 6085550, at \*5 (S.D.N.Y. Dec.6, 2011) ("As a municipal agency of New York City, the HRA is not a suable entity." (citing N.Y. City Charter, chap. 17 § 396; *Ximines,* 516 F.3d at 160)). For this reason, all claims against the HRA, Department of Social Services and the New York City Department of Homeless Services are dismissed. 28 U.S.C. §§ 1915(e)(2)(B).

### c. *Rooker–Feldman* doctrine

**\*3** To the extent Plaintiff seeks to vacate decisions entered by the state courts concerning either the appointment of a guardian or her eviction, or seeks declaratory judgment regarding the constitutionality of the state court proceedings, this Court cannot grant such relief. Under the *Rooker–Feldman* doctrine, federal courts generally lack subject matter jurisdiction over claims that seek review of adverse state court judgments. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings"); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse

Siino v. New York City Human Resources..., Not Reported in...

2015 WL 1877654

or modify [a state court's] judgment for errors"); *see also Teichmann v. New York,* 769 F.3d 821, 826 (2d Cir.2014) (denying relief "[t]o the extent that [the plaintiff] only seeks a declaration that his state conviction is invalid, [because the plaintiff] seeks nothing more than review of a state court judgment."); *Galtieri v. Kelly,* 441 F.Supp.2d 447, 453 (E.D.N.Y.2006) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." (quoting *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 84 (2d Cir.2005))).

Specifically, the *Rooker–Feldman* doctrine deprives a federal court of jurisdiction to consider a plaintiff's claim when that plaintiff is "complaining of injuries caused by state-court judgments rendered prior to the commencement of district court proceedings and inviting district court review of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *see also McKithen v. Brown,* 626 F.3d 143, 154–55 (2d Cir.2010) (rejecting as-applied challenge to New York state law which invited review of New York state court judgment, explaining the rule expressed in *Exxon* ). The underlying theory justifying this doctrine is "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock,* 422 F.3d at 85; *see also Williams v. 2720 Realty Co.,* No. 12–CV–6408, 2013 WL 55685, at *2 (E.D.N.Y. Jan. 3, 2013) ("[O]nly the United States Supreme Court is vested with jurisdiction over appeals from final state court judgments."). Under the *Rooker–Feldman* doctrine, federal courts must abstain from considering claims when the following four requirements are met:

> (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.

*McKithen,* 626 F.3d at 154. The first and fourth requirements are known as procedural requirements, whereas the second and third are seen as substantive requirements. *Morrison v. City of New York,* 591 F.3d 109, 112 (2d Cir.2010).

**\*4** The procedural requirements are met here, as Plaintiff directly alleges that she was "[t]rapped" in guardianship as the result of a state court judgment entered in 2013. Furthermore, the substantive requirements are also met, as Plaintiff alleges that that her injuries arise from her "guardianship in Queens Supreme Court." (Compl.21–24.) She further alleges that the City and HRA failed to meet the burden in the guardianship proceedings, thus subjecting her to an "illegal guardianship." (Compl.11–12.) To the extent that Plaintiff seeks review of state court decisions and orders relating to her guardianship proceedings, federal court review of those decisions and orders would be barred by the *Rooker–Feldman* doctrine. *See Duboys v. Bomba,* 62 F. App'x 404, 405 (2d Cir.2003) (summary order) (upholding determination of district court that request to vacate guardianship and probate proceedings was barred by the *Rooker–Feldman* doctrine); *In re Card,* No. 12–CV–114, 2012 WL 382730, at *2 n. 5 (E.D.N.Y. Feb. 6, 2012) (noting that "*Rooker–Feldman* doctrine would require a finding that subject matter jurisdiction is lacking because [plaintiff] is essentially asking the Court to review an adverse state court judgment appointing a guardian made before" the plaintiff commenced the federal action.) This Court may not consider Plaintiff's challenges to past New York state proceedings related to her guardianship proceedings, and thus any such claim is dismissed for lack of jurisdiction.

### d. Section 1983

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 against the Human Resources Administration and the City, alleging violations of her rights to "freedom of speech, freedom of the press, religious practice and religious viewpoints, and due process rights," and "seizure and search, liberty, and due process rights, "dignity right," "equal protection and freedom of speech rights." (Compl.29–31.) To the extent review of these claims is not barred by the *Rooker–Feldman* doctrine, Plaintiff's claims are dismissed for failure to state a claim.

In order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). Section 1983 claims generally must be brought against the individuals

Siino v. New York City Human Resources..., Not Reported in...

2015 WL 1877654

personally responsible for the alleged deprivation of constitutional rights, not against the government entities or agencies where those individuals are employed. A plaintiff seeking to recover money damages "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 678. Because Plaintiff has not alleged any claims against any individual Defendants, to the extent she was attempting to do so, Plaintiff has failed to state a Section 1983 claim.

### i. City of New York

**\*5** Plaintiff alleges that the City of New York, through its agencies, unlawfully deemed her "uncategorized" for the purpose of certain benefits in violation of equal protection, infringed on her First Amendment rights, tricked her into a search and seizure at the hospital which led to unwanted hospital stays, violated her right to dignity, and subjected her to an "illegal guardianship" in violation of the United States Constitution. (Compl.29–32.)

In order to sustain a claim for relief pursuant to Section 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983."); *see Torraco v. Port Auth. of N.Y. & N.J.,* 615 F.3d 129, 140 (2d Cir.2010) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (alteration in original) (quoting *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir.2007))). A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent or widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that

the policymakers exercised "deliberate indifference" to the rights of the plaintiff. *See Parker v. City of Long Beach,* 563 F. App'x 39, 41 (2d Cir.2014), *as amended,* (Apr. 21, 2014) (failure to train); *Matusick v. Erie Cnty. Water Auth.,* 757 F.3d 31, 62 (2d Cir.2014) (persistent and widespread practice); *Schnitter v. City of Rochester,* 556 F. App'x 5, 9 (2d Cir.2014) (failure to train or supervise); *Hines v. Albany Police Dep't,* 520 F. App'x 5, 7 (2d Cir.2013) (actions of policymakers); *Missel v. Cnty. of Monroe,* 351 F. App'x 543, 545 (2d Cir.2009) (formal policy and act of a person with policymaking authority for the municipality).

Here, Plaintiff does not allege, and nothing in her Complaint suggests, that any of the allegedly wrongful acts or omissions on the part of any City employee are attributable to an official policy or custom, through any of the four avenues discussed above. Plaintiff has failed to state a claim pursuant to Section 1983 against the City of New York, and her Section 1983 claims against the City of New York are dismissed.

### ii. New York Foundation for Senior Citizens, Guardian Services, Inc. and Crown House Realty Co. LLC

**\*6** It is unclear whether Plaintiff seeks to advance Section 1983 claims against Guardian Services and Crown House, but to the extent she intends to do so, such claims are dismissed for the reasons discussed below.

As an initial matter, Plaintiff makes no allegations as to Crown House regarding her Section 1983 claims. Her Section 1983 claims against Crown House are therefore dismissed. Plaintiff also fails to plausibly allege that the New York Foundation for Senior Citizens, a nonprofit organization, *see New York Foundation for Senior Citizens* http://www.nyfsc.org (last visited April 21, 2015), can be liable for any alleged violations of her constitutional rights pursuant to Section 1983 since Plaintiff fails to allege that it was acting under color of state law.

As for Guardian Services, Plaintiff's court-appointed guardian, Plaintiff has not alleged any facts to support a finding that Guardian Services is a state actor. A claim for relief under Section 1983 must allege facts showing that the challenged conduct was "committed by a person acting under color of state law," 42 U.S.C. § 1983. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.' " *Hooda v. Brookhaven Nat. Lab.,* 659 F.Supp.2d 382, 393 (E.D.N.Y.2009) (quoting

Siino v. New York City Human Resources..., Not Reported in...

2015 WL 1877654

*Rendell–Baker v. Kohn,* 457 U.S. 830, 837, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks and citation omitted); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan As s'n,* 396 F.3d 178, 186 (2d Cir.2005) (quoting *United States v. Int'l. Bhd. of Teamsters,* 941 F.2d 1292, 1295 (2d Cir.1991)) (internal quotation marks omitted). "[L]iability under § 1983 may be imposed upon private individuals who are not state actors [*inter alia* ] if there exists a 'sufficiently close nexus between the State and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the State itself' (the 'close nexus/joint action' test) ...." *Faraldo v. Kessler,* No. 08–CV–0261, 2008 WL 216608, at *4 (E.D.N.Y. Jan. 23, 2008) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004–1005, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)).

Plaintiff alleges that HRA, a New York City agency, "continues to Pay [Guardian Services] to keep [Plaintiff] silent." (Compl. 29 .) However, this allegation is insufficient to show that Guardian Services was acting with a sufficient "close nexus" to the state to support a Section 1983 claim against Guardian Services. *See Moose Lodge No. 107,* 407 U.S. at 173 ("The Court has never held, of course, that discrimination by an otherwise private entity would be violative of the Equal Protection Clause if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever."); *McKnight v. Middleton,* 699 F.Supp.2d 507, 531 (E.D.N.Y.2010) (dismissing Section 1983 claims when the plaintiff asserted no factual basis for allegations that private actors were acting in a conspiracy with state actors to deprive the plaintiff of constitutional rights) *aff'd,* 434 F. App'x 32 (2d Cir.2011) (summary order). The mere fact that Guardian Services was appointed by a State Court is also insufficient to show state action. *See Duboys ex rel. Duboys v. Bomba,* 199 F.Supp.2d 166, 170 (S.D.N.Y.2002)

("[A] court appointment of a private individual is not sufficient to establish state action.") *aff'd sub nom. Duboys v. Bomba,* 62 F. App'x 404 (2d Cir.2003) (summary order). Even affording the Complaint the most liberal reading, Plaintiff fails to state a claim against Guardian Services. [2] Plaintiff's Section 1983 claims against Guardian Services are dismissed.

### e. State Law Claims

**\*7** Plaintiff's only federal claims were brought pursuant to Section 1983. (*See* Compl. 2.) Plaintiff has not stated a claim under any federal law, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, larceny, conversion, and negligence. *See* 28 U.S.C. § 1367(c)(3). ("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."). Because Plaintiff's Complaint does not contain sufficient facts that may fairly be read to state a claim for any violation of Plaintiff's constitutional rights, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the Complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to replead her Complaint to correct the deficiencies noted above. Any amended complaint must be filed within 30 days of the date of this Memorandum and Order. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order. No summons shall issue at this time and all further proceedings shall be stayed until Plaintiff has complied with this order. If Plaintiff fails to file an amended complaint within 30 days, the instant action shall be dismissed.

### III. Conclusion

Plaintiff is granted 30 days from the date of this order to replead her Complaint as specified above. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.

*Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1877654

Footnotes

1    Plaintiff alleges that she agreed to a "limited guardianship," and was assigned a guardian by the New York State Supreme Court, Queens County, (*see* Compl. 2, 6), but also alleges that she "was considered to be mentally impaired and incapacitated." (Compl.16.) According to letters from New York Foundation for Senior Citizens Guardian Services Inc. and from Plaintiff, submitted in response to this Court's February 20, 2015 order, Plaintiff's guardianship ended in February or March of 2015. (*See* Letter from New York Foundation for Senior Citizens Guardian Services Inc. dated Mar. 13, 2015, at 1, Docket Entry No. 6; Pl. Letter dated Mar. 31, 2015, at 3, Docket Entry No. 6.)

2    Even if Plaintiff had made allegations as to Crown House, Plaintiff's Section 1983 claims against Crown House, a private business, would also be dismissed because Plaintiff has not alleged that Crown House acted under color of state law.

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6110489
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ben Gary Triestman, Petitioner,
v.
Eric Schneiderman, Attorney General,
State of New York, Respondent.

Civil Action No. 1:16-CV-1079 (TJM/DEP)
|
Signed 09/20/2016

**Attorneys and Law Firms**

FOR PLAINTIFF: BEN GARY TRIESTMAN, 28
Garrison Rd., Shady, NY 12409, Pro se.

## REPORT AND RECOMMENDATION

David E. Peebles, U.S. Magistrate Judge

**\*1** This is a proceeding commenced by petitioner Ben
Gary Triestman, who seeks to invoke this court's habeas
jurisdiction to review orders of protection issued by a
New York State Family Court judge. The matter has been
forwarded to me for initial review. Because the petitioner
cannot satisfy the "in custody" requirement necessary to
support a habeas petition under 28 U.S.C. §§ 2241, 2254,
this court lacks subject matter jurisdiction over his claims.
Accordingly, I recommend that the petition in this matter
be dismissed. [1]

## I. BACKGROUND

Petitioner and Suzanne Mary Cayley are the unwed
parents of a child, A.T., who was born in December 2003.
Dkt. No. 1 at 13; Dkt. No. 1-1 at 15. When the relationship
between the parents ended in 2010, Cayley became the
child's primary caretaker. Dkt. No. 1 at 13-14; Dkt. No.
1-1 at 15. Following termination of the union, Cayley and
A.T. continued to reside near petitioner in Woodstock,
New York. Dkt. No. 1 at 13.

In 2013, following the issuance of a temporary no-contact
order against petitioner and in favor of A.T., petitioner
and Cayley filed cross-petitions in Ulster County Family

Court for custody of the child. Dkt. No. 1-1 at 15.
During the course of the Family Court proceedings, a
temporary order of visitation was issued on January
2, 2014, permitting petitioner to engage in therapeutic
visitation of A.T. *Id.* at 16, 39-40; *see also* Dkt. No. 1 at
13-14.

Precipitated by an incident that occurred at A.T.'s school
in December 2014, her mother applied for and obtained
from Ulster County Family Court a temporary order
of protection entered on January 22, 2015 in favor of
A.T. and against petitioner. Dkt. No. 1 at 14-15; Dkt.
No. 1-1 at 2-3, 15. Petitioner appealed that order to the
New York State Supreme Court Appellate Division, Third
Department. Dkt. No. 1 at 9; Dkt. No. 1-1 at 12-14. The
appeal was dismissed by order entered on April 7, 2016,
based upon the court's finding that the Ulster County
Family Court order was not final, and therefore was non-
appealable. Dkt. No. 1-1 at 15-16. A subsequent petition
for leave to appeal to the New York State Court of
Appeals was denied on June 30, 2016. Dkt. No. 1 at 9; Dkt.
No. 1-1 at 26.

Since the issuance of the temporary order on January
22, 2015, the Ulster County Family Court has entered a
series of additional, similar orders of protection, including
on August 17, 2015 (temporary order of protection),
February 1, 2016 (temporary order of protection and
order of protection), and May 13, 2016 (order of
protection), all of which restrict petitioner's contact with
A.T. *See* Dkt. No. 1-1 at 4-11. The most recent of those
orders will expire on April 11, 2018. Dkt. No. 1-1 at 11.

## II. PROCEDURAL HISTORY

**\*2** Petitioner commenced this proceeding on September
2, 2016, and has paid the required filing fee of $5.00.
Dkt. No. 1. Named as the respondent in the matter is
Eric Schneiderman, the Attorney General of the State of
New York. *Id.* The petition raises four claims, arguing
that (1) the New York Family Court Act, Article 6,
section 154, providing for the issuance of orders of
protection in connection with visitation and custody
proceedings, is unconstitutional; (2) the policy of denying
the right to appeal temporary orders of protection is
unconstitutional; (3) petitioner's due process rights were
violated by the Ulster County Family Court's failure to
render factual findings supporting the issuance of the
challenged orders of protection; and (4) the issuance of
the orders of protection violated substantive due process

and the federal parental privilege. *Id.* at 16-22. As relief, petitioner requests that the court (1) vacate the orders of protection issued by Ulster County Family Court; (2) issue an order providing for "unsupervised, substantial and equal access of Petitioner to his child, or other equivalent relief;" (3) declare that New York Family Court Act, Article 6, section 154, is unconstitutional; and (4) declare unconstitutional the New York State appellate court policy of denying appeals of temporary orders of protection. *Id.* at 27.

III. <u>DISCUSSION</u>

A. In-Custody Requirement of [28 U.S.C. §§ 2241, 2254](#) [Section 2241](#) empowers district courts to grant writs of habeas corpus, *inter alia*, to persons who are "in custody in violation of the Constitution or laws or treaties of the United States[.]" [28 U.S.C. § 2241(c)(3)](#); *see [Razzoli v. United States Parole Comm'n](#)*, 116 Fed.Appx. 292, 293 (2d Cir. 2004) ("A prerequisite to maintaining a petition for a writ of habeas corpus under [[section] 2241](#) is that the petitioner is 'in custody' or 'detained].' "). Additionally, in relevant part, [section 2254](#) similarly provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the Unites States." [28 U.S.C. § 2254(a)](#); *see [Finkelstein v. Spitzer](#)*, 455 F.3d 131, 133 (2d Cir. 2006) ("[Section 2254](#) allows a federal court to entertain a habeas corpus petition for relief from a state-court judgment only on the ground that the petitioner is *in custody* in violation of the Constitution .... This provision requires that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." (quotation marks and alterations omitted) (emphasis in original)).

The in-custody requirement of [sections 2241](#) and [2254](#) was discussed by the Supreme Court in its decision in *[Hensley v. Municipal Court, San Jose Milpitas Judicial District, Santa Clara Cnty., State of Calif.](#)*, 411 U.S. 345 (1973). The petitioner in that case was convicted of a misdemeanor under California law and sentenced to serve one year of incarceration and pay a fine. *[Hensley](#)*, 411 U.S. at 346. Petitioner's appeals and collateral challenges to the conviction were unsuccessful. *Id.* Petitioner, however, was released on his own recognizance pending sentencing, and remained at large pursuant to a trial court order staying

the execution of his sentence. *[Id.](#)* [at 346-47](#). Addressing the custody requirement, the Court noted the following:

> The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.

*Id.* at 351.

While petitioner likens his situation to that faced by the petitioner in *Hensley*, Dkt. No. 1 at 11, in reality, there are few similarities. In concluding that the petitioner in *Hensley* was "in custody" for the purposes of [sections 2241](#) and [2254](#), the Court noted the following:

> He cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice. Disobedience is itself a criminal offense. The restraint on his liberty is surely no less severe than the conditions imposed on the unattached reserve officer whom we held to 'in custody' in *[Strait v. Laird](#)*, [406 U.S. 341 (1972)].

**\*3** *[Hensley](#)*, [411 U.S at 351](#). The Court further commented that the petitioner in that case remained at large only due to a court-ordered stay and that the State "has emphatically indicated its determination to put him behind bars, and the State has taken every possible step to secure that result." *Id.*

Having carefully reviewed the matter, I conclude that petitioner cannot satisfy the in-custody requirement necessary for him to pursue claims under [sections 2241](#)

and 2254. The order of protection at issue in this case restricts only petitioner's access to his child. His contention that he may inadvertently come into contact with his child and, therefore, subject himself to potential incarceration is entirely too speculative to support a finding that he is currently in custody. Accordingly, I recommend that his petition be dismissed. *See Moore-Beidl v. Beaudoin*, 553 F. Supp. 404, 406-07 (N.D.N.Y. 1981) (Munson, J.) ("Plaintiff's habeas petition seeks to release both the plaintiff, Mary Carol[,] and her son from the 'custody' of the County Department of Social Services. The plaintiff Mary Carol may not invoke the procedural safeguards of 28 U.S.C. §§ 2241, 2254, for she is not in 'custody.' She alleges no restraints upon her person other than the fact that she is forc[i]bly being prevented from being together with her youngest son, Joseph. She is otherwise unrestricted by the County Department of Social Services, hence the habeas petition is hereby dismissed with respect to the plaintiff, Mary Carol."), *aff'd without opinion*, 697 F.2d 294 (2d Cir. 1982); *cf. Gilmore v. Green Cnty. Dep't of Soc. Servs.*, No. 06-CV-0318, 2006 WL 1064181 (N.D.N.Y. Apr. 20, 2006) (Mordue, J.) (dismissing habeas petition challenging a Greene County Family Court's determination of permanent neglect resulting in the petitioner's parental rights being terminated based upon the failure to meet the "in-custody" requirement of 28 U.S.C. § 2254).

### B. Whether to Permit Amendment

Ordinarily, a court should not dismiss a petition filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001) (applying Rule 15(a) of the Federal Rules of Civil Procedure to motions to amend habeas petitions). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987

F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, permitting petitioner an opportunity to amend would be futile because the deficiencies identified above with respect to his habeas petition are substantive in nature, and better pleading would not cure them. In addition, any attempt to amend his petition to assert a civil rights violation, pursuant to 42 U.S.C. § 1983, would also fail for two reasons. First, the claim would squarely implicate the *Rooker-Feldman* doctrine, which relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." [2] *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (citation omitted). In this case, the requirements for application of *Rooker-Feldman* would be satisfied and would preclude this court from reviewing the orders of protection issued in Ulster County Family Court, even in the context of a section 1983 action.

**\*4** The second issue that would be implicated by a claim brought under section 1983 in the circumstances now presented would be based on the steadfast refusal of federal courts to become involved in domestic disputes. As the Supreme Court noted more than a century ago, "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593-94 (1890). This deference to state law has given rise to a recognized "domestic relations" exception, which deprives federal courts of the power to review, for example, child custody, divorce, alimony, and child custody decrees. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004). District courts in this circuit have extended the exception to civil rights actions challenging the results of domestic relations proceedings. *See, e.g., Martinez v. Cannataro*, No. 13-CV-3392, 2013 WL 5409205, at *2 (E.D.N.Y. Feb. 25, 2013) (citing cases).

In sum, it is clear that any attempt by Triestman to amend his habeas petition or convert the petition into a civil rights complaint challenging the orders of protection would be futile. For this reason, I recommend against permitting petitioner an opportunity to file an amended petition.

## IV. SUMMARY AND RECOMMENDATION

The petition in this matter, though well drafted and supported by attachments that are well organized and indexed, fails to establish that petitioner can meet the "in custody" requirement for a habeas proceeding under 28 U.S.C. §§ 2241 and/or 2254. Moreover, it appears that granting petitioner leave to amend would be futile; any civil rights claim that may be brought based upon the circumstances set forth in his petition would be precluded by the *Rooker-Feldman* doctrine and the domestic relations exception to federal court jurisdiction. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter (Dkt. No. 1) be DISMISSED for lack of jurisdiction without leave to amend.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: September 20, 2016.

**All Citations**

Slip Copy, 2016 WL 6110489

## Footnotes

1   Although petitioner has paid the required $5.00 filing fee and has not sought leave to proceed *in forma pauperis*, the court may nonetheless dismiss the petition *sua sponte* for lack of jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").

2   The preclusion of *Rooker-Feldman* "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme Court]." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). In other words, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

**End of Document**                                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3919650
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Andre Youngblood, Plaintiff,
v.
City of New York, Detective Louis
Pena, #6992, Officer Jesus Sanchez
#5644, C.O. TJ #19297, Defendants.

15 Civ. 3541(AT)(HBP)
|
Signed 06/27/2016

**Attorneys and Law Firms**

Andre Youngblood, Butner, NC, pro se.

Daniel Guillermo Saavedra, New York City Law
Department, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

ANALISA TORRES, District Judge

**\*1** Plaintiff *pro se*, Andre Youngblood, brings this action
pursuant to 42 U.S.C. § 1983, alleging violations of his
federal rights stemming from his March 10, 2015 arrest
at St. Barnabas Hospital in the Bronx. Defendants City
of New York and Detective Louis Pena ("Defendants")
move to dismiss the amended complaint pursuant to
Federal Rule of Civil Procedure 12(c). For the reasons
stated below, Defendants' motion is GRANTED in part
and DENIED in part.

## BACKGROUND [1]

On March 5, 2015, after sustaining a work-related injury,
Plaintiff was admitted to St. Barnabas Hospital with
"walking pneumonia and flexor tendon rupture of [his]
right hand." Am. Compl. ¶ 13, ECF No. 8; *accord* Pl.
Op. Br. at 2, ECF No. 37. On March 10, 2015, while
Plaintiff was awaiting surgery on his right hand, nine
police officers without "raid jackets or shields showing"
entered Plaintiff's hospital room with their guns drawn,
Pl. Op. Br. at 2; *see also* Am. Compl. ¶ 13, pursuant to

a warrant issued by a state magistrate judge in South
Carolina for the arrest of "Andri Youngblood," Pl. Op.
Br. at 2; *see also* Arrest Warrant, Answer, Ex. 1 at 1,
ECF No. 25-1 (describing "Andri Youngblood" as a black
male with a height of 5'10' and weight of 150 pounds). [2]
After being asked for his name, Plaintiff, who is an African
American, told the officers that his name was "Andre
Youngblood" and that they "had the wrong man." Pl. Op.
Br. at 3; *accord* Am. Compl. ¶ 6. Plaintiff contends that
the officers nonetheless identified Plaintiff as the person
named in the warrant on the basis that "Plaintiff was a
black male," which "was enough for Defendant Pena,"
despite the availability of multiple forms of identification
stating Plaintiff's name to be "Andre Youngblood," the
warrant's lack of a picture, and the officers' access to
Plaintiffs pictures and fingerprints from his past brushes
with the law. *Id.* at 1-3.

**\*2** Upon identifying Plaintiff, Pena spoke with the
attending physician, "Dr. Smith," who "stated in no
uncertain words that Plaintiff needed to stay in the
hospital." Pl. Op. Br. at 4. Plaintiff contends that Pena
then "lied" to Dr. Smith, "stating that Plaintiff, was going
to be arraigned, then brought back to the hospital to
have his needed hand surgery." *Id.* As a result, Plaintiff
was "forcibly discharged from medical care." Am. Compl.
¶ 15. Specifically, the officers "took over the hospital
operations" and demanded that Plaintiff's intravenous
tube be removed; confiscated Plaintiff's pain and seizure
medication, as well as the antibiotics prescribed for
Plaintiff's walking pneumonia; and took Plaintiff into
custody. Am. Compl. ¶ 13; Pl. Op. Br. at 3-4. Plaintiff
was brought to the 42nd Precinct in the Bronx "in a
drug [g]ed daze, continuing to assert that he was not
Andri Youngblood." Pl. Op. Br. at 4. At his arraignment,
Plaintiff again stated his name, and Pena told the
arraigning judge that "he had checked and he had the
'right guy.' " *Id.*

Plaintiff has been incarcerated since March 2015, but did
not receive surgery on his right hand until late summer
2015. *Id.* at 4-5. Plaintiff contends that he still needs
additional surgery; will "never regain full use of his
hand" due to the "needless delays" he faced in receiving
surgery; that he "would not have lost the use of his
hand" if he had received surgery in March 2015 as
originally scheduled; and that his carpentry skills have
been rendered useless due to his hand injury. *Id.* at 5.
Plaintiff alleges that as a result of Defendants' actions,

he has suffered, *inter alia*, "bodily injuries, me[n]tal anguish, shock, fright, apprehension, embarrassment, and humiliation, and deprivation of his constitutional rights." Am. Compl. ¶ 17.

## DISCUSSION

### I. Rule 12(c) Standard

To survive a Rule 12(c) motion for judgment on the pleadings, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to [Rule 12(b)(6)] motions to dismiss applies to [Rule 12(c)] motions for judgment on the pleadings."). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In considering a Rule 12(c) motion, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *Johnson*, 569 F.3d at 43.

The court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). "The policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (internal quotation marks, citation, and brackets omitted). Although the court is "obligated to draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports, [the court] cannot invent

factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Finally, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted).

### II. Claims Against the Individual Defendants

**\*3** Liberally construed, Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for false arrest; malicious abuse of process; excessive force; and deliberate indifference to serious medical needs. Am. Compl. ¶¶ 18-40. The Court will address each claim in turn.

#### A. False Arrest

To state a claim for false arrest under § 1983, a plaintiff must allege: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (construing New York state law); *see also Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (holding that the elements of a false arrest claim under § 1983 are "substantially the same" as the elements of a false arrest claim under New York state law). However, "[w]here an arrest is made pursuant to a warrant, there can be no claim for false arrest or unlawful imprisonment." *Jones v. Trump*, 971 F. Supp. 783, 788 (S.D.N.Y. 1997); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007).

Plaintiff does not dispute that he was arrested pursuant to a warrant, but argues that he is not the individual named in the warrant. "A mistaken arrest based on a facially valid warrant does not violate the Fourth Amendment if the officers reasonably mistook the arrestee for the person named in the warrant." *Gonzalez v. City of New York*, 69 Fed.Appx. 7, 9-10 (2d Cir. 2003) (summary order) (citing *Hill v. California*, 401 U.S. 797, 804 (1971)). Because there is insufficient evidence at this preliminary stage to determine whether the officers reasonably believed that Plaintiff was the individual identified in the warrant and because Plaintiff has otherwise stated a plausible false

arrest claim, Defendants' motion as to the false arrest claim is DENIED.

## B. Malicious Abuse of Process

To state a claim for malicious abuse of process under § 1983, a plaintiff must allege that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2004). As reflected in this pleading standard, a malicious abuse of process claim requires that legal process be abused to achieve a collateral objective beyond or in addition to legitimate ends, such as "extortion, blackmail or retribution." *See Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 343 N.E.2d 278, 283 (N.Y. 1975); *see also Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). That Defendants sought Plaintiff's arrest and prosecution does not constitute such a "collateral objective." *See Hauser v. Bartow*, 7 N.E.2d 268, 270 (N.Y. 1937) (finding no abuse of process because "whatever may have been respondent's motives, she used the process of the court for the purpose for which the law created it"). Accordingly, because Plaintiff does not identify any collateral objective outside legitimate ends of process that Defendants sought to achieve, [3] Plaintiff's malicious abuse of process claim is DISMISSED.

## C. Excessive Force

**\*4** "[C]laims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The "reasonableness" question is "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The inquiry involves consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Reasonableness "must be judged

from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "[A] motion to dismiss an excessive force claim is appropriate if, accepting all of the allegations as true, it is clear that the force used by the officers was objectively reasonable under the circumstances." *Messina v. Mazzeo*, 854 F. Supp. 116, 128-29 (S.D.N.Y. 1994).

Plaintiff's only allegations regarding use of force are that he was "forcibly discharged from medical care," that "the level of force employed by defendants was objectively unreasonable," and that due to the "conduct of defendants, [P]laintiff ... was subjected to excessive force and sustained, inter alia, physical and emotional injuries." Am. Compl. ¶¶ 15, 29, 30. Plaintiff's allegations are no more than "labels and conclusions," *Twombly*, 550 U.S. at 555, and do not plausibly state an excessive force claim. Beyond the bare contention that Defendants used objectively unreasonable force resulting in physical and emotional injury, Plaintiff does not plead any facts describing, *inter alia*, the nature of the force used or the injuries caused by that use of force. Accordingly, Plaintiff's excessive force claim is DISMISSED without prejudice.

## D. Deliberate Indifference to Serious Medical Needs

A claim of deliberate indifference to the serious medical needs of a pretrial detainee in state custody is brought under the Due Process Clause of the Fourteenth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009); *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 724 (S.D.N.Y. 2015). To state a deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege that he "had a 'serious medical condition' " and that "it was met with 'deliberate indifference,' " meaning that the defendant "kn[ew] of and disregard[ed] an excessive risk" to plaintiff's health or safety and was "both ... aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and ... also dr[e]w the inference." *Caiozzo*, 581 F.3d at 72 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (alterations in original).

Plaintiff's injuries constitute a "serious medical condition" within the meaning of the deliberate indifference standard. Plaintiff contends that he suffered a ruptured flexor

tendon in his right hand that went untreated for months, such that he has suffered pain, has been unable to regain full use of his hand, and cannot perform the carpentry skills that he previously used to support himself. Pl. Op. Br. at 5. These injuries, which have caused Plaintiff significant pain and impair both his daily activities and ability to work, constitute a "serious medical condition." *See, e.g., Vining v. Dep't of Correction*, No. 12 Civ. 3267, 2013 WL 2036325, at *4-5 (S.D.N.Y. Apr. 5, 2013) ("Application of settled Second Circuit doctrine points toward the conclusion that chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis."); *see also Caiozzo*, 581 F.3d at 72 (holding that deliberate indifference claims "should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment").

**\*5** Plaintiff does not, however, establish that Defendant Pena or any of the unnamed officers acted with deliberate indifference to his serious medical needs. Although the facts alleged establish that Pena knew that Plaintiff would be undergoing hand surgery and needed to remain in the hospital, they do not show that Pena knew of and disregarded an "excessive risk" to Plaintiff's health— merely that Pena may have been aware of some risk to Plaintiff's health. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he charged official [must] act or fail to act while actually aware of a substantial risk that serious ... harm will result."). Plaintiff does not, for example, plead facts demonstrating that Pena was aware that removing Plaintiff from the hospital would result in lasting and serious injury to Plaintiff's hand or that Pena deliberately disregarded such a risk when forcibly discharging Plaintiff from the hospital. Moreover, to the extent that Plaintiff seeks to premise his deliberate indifference claim on the delays that he faced in receiving medical attention while incarcerated, Plaintiff does not show how such delays resulted from the actions or failure to act of Pena or his fellow officers, *Salahuddin*, 467 F.3d at 280, as opposed to prison officials or medical professionals within the prison system—none of whom have been named as defendants in this action. [4]

Accordingly, Plaintiff's deliberate indifference claim is DISMISSED without prejudice.

III. Claims Against the City of New York

A local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* A *Monell* claim requires a plaintiff to plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).

Plaintiff contends that the City's customs and policies include "arresting individuals regardless of probable cause," "[u]tilizing excessive force in executing said arrests," and "[f]alsifying evidence to cover up police misconduct," Am Compl. ¶ 33, and that these customs and policies were the "direct and proximate cause" of his injuries, *id.* ¶ 35. Without more, Plaintiff's bare allegations of the existence of a custom and policy and his conclusory assertion that the policy was linked to his constitutional injuries are insufficient to state a *Monell* claim. *See Carpinone v. City of New York*, No. 11 Civ. 2074, 2012 WL 760073, at *2 (S.D.N.Y. Mar. 9, 2012) ("Plaintiff offers no facts which would render plausible his allegations of a policy or custom within the New York City Police Department that was affirmatively linked to the purported constitutional violations he suffered."). Accordingly, Plaintiff's claims against the City of New York are DISMISSED.

## CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED in part and DENIED in part. [5] However, because "a liberal reading of the complaint ... indicat[es] that a valid claim might be stated," *Cuoco*, 222 F.3d at 112 (internal quotation marks and citation omitted), the Court grants Plaintiff leave to file an amended complaint by **July 25, 2016** to address the pleading deficiencies described above relating to Plaintiffs excessive force and deliberate indifference claims. [6] If Plaintiff fails to file an amended complaint by **July 25, 2016** and does not show good cause to excuse such failure, the claims shall be dismissed with prejudice. *See* Fed. R. Civ. P. 41(b).

**\*6** Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motions at ECF Nos. 32 and to mail a copy of this order and all unpublished cases cited herein to Plaintiff *pro se*.

SO ORDERED.

**All Citations**

Slip Copy, 2016 WL 3919650

Footnotes

1    The following facts are taken from Plaintiff's amended complaint and opposition papers and are accepted as true for purposes of this motion. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering facts alleged in affidavit submitted by *pro se* plaintiff in opposition to motion to dismiss); *Flores v. N.Y.C. Human Res. Admin.*, No. 10 Civ. 2407, 2011 WL 3611340, at \*1 n.1 (S.D.N.Y. Aug. 16 2011) ("Because of [plaintiff's] *pro se* status, ... the Court may consider factual allegations [plaintiff] makes in her opposition papers, in addition to the allegations in the complaint...."); *see also Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to [Rule 12(b)(6)] motions to dismiss applies to [Rule 12(c)] motions for judgment on the pleadings.").

2    Although not attached as an exhibit to Plaintiff's amended complaint, the Court considers the South Carolina arrest warrant in ruling on Defendants' Rule 12(c) motion as Plaintiff relies on the arrest warrant and incorporates it by reference in his amended complaint. *See In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). The Court has not considered any other exhibits to Defendants' answer as "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies" in ruling on a Rule 12(c) motion. *Id.*

3    Plaintiff makes the conclusory allegation that "Defendants arrested [P]laintiff in order to [achieve] a collateral objective outside the legitimate ends of the legal process," but does not identify what collateral objective Defendants sought to achieve. Am. Compl. ¶ 25.

4    To the extent that Plaintiff premises his deliberate indifference claim on the officers' confiscation of his antibiotics and pain and seizure medication, the claim fails as Plaintiff has not pleaded injury resulting from the confiscation.

5    Plaintiff characterizes his opposition brief as a " 'Roseboro Response" to Defendants' motion to dismiss and [Plaintiff's] motion for Summary Judg[ ]ment." Pl. Op. Br. at 1. To the extent that Plaintiff in fact intended to move for summary judgment, the motion is DENIED without prejudice to renewal after the close of discovery, as Plaintiff does not cite to any evidence in the factual record to support a summary judgment motion.

6    Plaintiff also claims violations of the First Amendment and Equal Protection Clause, but provides no detail as to how his rights under those constitutional provisions were violated. Accordingly, the claims are DISMISSED. To the extent that Plaintiff wishes to maintain these claims, Plaintiff is granted leave to address these pleading deficiencies in his amended complaint.

**End of Document**                                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Zavalidroga v. Oneida Cnty. Dep't of Adult Protect. Servs., Not Reported in F.Supp.3d...

2015 WL 9255557

2015 WL 9255557
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Tomas Zavalidroga, and
Margaret Zavalidroga, Plaintiffs,

v.

Oneida Cnty. Dep't of Adult Protect. Servs.;
Kristen Palmer, an Oneida Cnty. Soc. Servs.
Employee; Carola Seider-zavalidrogra,
Individually; Jon Zavalidroga, Individually; and
Victor Zavalidroga, Individually; Defendants.

Case No. 6:14-CV-1273 (GTS/TWD)
|
Signed 12/18/2015

**Attorneys and Law Firms**

Tomas Zavalidroga, P.O. General Delivery, Old Forge,
New York 13420, pro se.

Margaret Zavalidroga, pro se.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District
Judge

**\*1** Currently before the Court, in this *pro se*
civil rights action filed by Tomas Zavalidroga
individually and on behalf of his mother, Margaret
Zavalidroga ("Plaintiffs") against the above-captioned
county department, county department employee and
three individuals ("Defendants") pursuant to 42 U.S.C.
§§ 1981, 1983, and 1985, are (1) United States Magistrate
Judge Thérèse Wiley Dancks' Order and Report-
Recommendation denying Plaintiffs' third motion for
the appointment of counsel without prejudice and
recommending that Plaintiffs' Complaint be dismissed
without prejudice based on the *Younger* abstention
doctrine, and (2) Plaintiffs' Objection to the Order and
Report-Recommendation. (Dkt. Nos. 23, 26.) For the
reasons set forth below, Magistrate Judge Dancks' Order
is affirmed, her Report-Recommendation is accepted
and adopted in its entirety, and Plaintiffs' Complaint is
dismissed without prejudice.

## I. RELEVANT BACKGROUND

Liberally construed, Plaintiffs' Objection asserts five
specific challenges to Magistrate Judge Dancks' Order
and Report-Recommendation: (1) that Magistrate Judge
Dancks should have appointed counsel to Plaintiffs before
recommending dismissal; (2) that federal courts should
apply the *Younger* abstention doctrine only in exceptional
circumstances, none of which are present in this action;
(3) that, at the time Plaintiff Tomas Zavalidroga filed this
action, he had a valid power of attorney over Plaintiff
Margaret Zavalidroga's affairs (which permitted him to
conduct litigation on her behalf), and the Complaint
should survive the state court judgment terminating that
power of attorney because the state court judgment does
not deprive the Court of jurisdiction over the Complaint;
(4) that Magistrate Judge Dancks erred when she found
that the Complaint is inadequate under *Twombly* and
*Iqbal*, because many of the allegations in the Complaint
"are based on sworn statements made by Defendants
and their privies"; and (5) that Magistrate Judge Dancks
should have granted Plaintiffs an opportunity to amend
their Complaint before recommending dismissal. (*See
generally* Dkt. No. 26.)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing Appeal from Non-
Dispositive Order

"When considering an appeal from a magistrate judge's
ruling on a non-dispositive matter, a district court will
modify or set aside any portion of the magistrate judge's
ruling that it finds to be 'clearly erroneous or contrary to
law.'" *Aquastore, Inc. v. Pelseal Techn., LLC*, 06-CV-0093,
2010 WL 610685, at \*2 (N.D.N.Y. Feb. 17, 2010) (Scullin,
J.) (quoting 28 U.S.C. § 636[b][1][A]; Fed. R. Civ. P.
72[a] ). A finding is clearly erroneous if "the reviewing
court on the entire evidence is left with the definite and
firm conviction that a mistake has been committed."
*United States v. U.S. Gypsum Co*., 333 U.S. 364, 395
(1948); *United States v. Isiofia*, 370 F.3d 226, 232 (2d
Cir. 2004). "An order is contrary to law 'when it fails to
apply or misapplies relevant statutes, case law, or rules of
procedure.'" *Tompkins v. R.J. Reynolds Tobacco Co.*, 92
F. Supp.2d 70, 74 (N.D.N.Y. 2000) (Scullin, J.).

Zavalidroga v. Oneida Cnty. Dep't of Adult Protect. Servs., Not Reported in F.Supp.3d...

2015 WL 9255557

**B. Legal Standard Governing Review of Report-Recommendation**

**\*2** When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence. ..." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at \*1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3]

**\*3** Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**III. ANALYSIS**

After carefully reviewing the relevant papers herein, the Court can find no clear error or misapplication of law in Magistrate Judge Dancks' Order. As a result, the Order is affirmed in its entirety for the reasons stated therein. To those reasons, the Court adds only that it denies Plaintiffs' third motion for the appointment of counsel for the alternative reason that, based on a balancing of the factors set forth in Magistrate Judge Dancks' Decision and Order of May 19, 2015, Plaintiffs' third motion for the appointment of counsel fails to show cause for the same reasons that their second motion for the appointment of counsel fails to show cause. (Dkt. No. 14.)

For example, a review of the file in this matter reveals that the issues in dispute herein are not readily apparent to be overly complex, and it is not clear that Plaintiffs have pled a viable cause of action. While it is possible that there would be conflicting evidence implicating the need for cross-examination at the time of any trial of this matter, as is the case in many actions brought by *pro se* litigants, this factor alone is not determinative of a motion for appointment of counsel. Finally, this Court is unaware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. The Court therefore finds that, based upon the existing record in this case, appointment of counsel is unwarranted.

Turning to Magistrate Judge Dancks' Report-Recommendation, after carefully reviewing the relevant papers herein, the Court can find no error in those parts of the Report-Recommendation to which Plaintiffs specifically objected, and no clear error in the remaining

Zavalidroga v. Oneida Cnty. Dep't of Adult Protect. Servs., Not Reported in F.Supp.3d...

2015 WL 9255557

parts of the Report-Recommendation: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein. To those reasons, the Court adds only four points.

First, with regard to the second objection described above in Part I of this Decision and Order (i.e., regarding the *Younger* abstention doctrine), Plaintiff Tomas Zavalidroga does not, in Plaintiffs' Objection, retract his prior concession that there exists a pending state court proceeding. (*Compare* Dkt. No. 11 *with* Dkt. No. 26.) Moreover, Magistrate Judge Dancks specifically (and correctly) found that no facts have been alleged plausibly suggesting the existence of an exception to the *Younger* abstention doctrine in the circumstances. (Dkt. No. 23, at 12–13.)

**\*4** Second, with regard to the third objection described above in Part I of this Decision and Order (i.e., regarding the deprivation of the Court's jurisdiction based on the issuance of a state court judgment), Magistrate Judge Dancks did not recommend dismissal based on the *issuance* of a state court *judgment* but the *pendency* of a state court *proceeding*. (Dkt. No. 23, at 11–13.)

Third, with regard to the fourth objection described above in Part I of this Decision and Order (i.e., regarding the asserted inapplicability of the pleading standard set forth in *Twombly* and *Iqbal* where the allegations "are based on sworn statements made by Defendants and their privies"), Plaintiffs are incorrect that the pleading standard set forth in *Twombly* and *Iqbal* does not apply where the allegations are based on sworn statements.

Fourth, and finally, with regard to the fifth objection described above in Part I of this Decision and Order (i.e., regarding an opportunity to amend the Complaint), for the sake of brevity the Court will not linger on the fact that (1) Plaintiff Margaret Zavalidroga was previously given an opportunity to amend (Dkt. No. 6), and (2) an opportunity to amend need not be given to Plaintiff Tomas Zavalidroga because better pleading will not cure the defect in his causes of action (Dkt. No. 23, at 7). This is because just as important, under the circumstances, is the fact that Plaintiff Tomas Zavalidroga has filed no motion to amend his Complaint and no proposed Amended Complaint, as required by Local Rule 7.1(a)(4) of the District's Local Rules of Practice. (Dkt. No. 26.) The Court notes that, on October 20, 2014, he received a courtesy copy of the District's Local Rules of Practice and *Pro Se* Manual, both of which advised him of those requirements. (Dkt. No. 4.)

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Order (Dkt. No. 23) is **AFFIRMED**; and it is further

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 23) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED** without prejudice.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 9255557

Footnotes

1    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137–38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at

**Zavalidroga v. Oneida Cnty. Dep't of Adult Protect. Servs., Not Reported in F.Supp.3d...**

2015 WL 9255557

the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

3    *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

4    *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

**End of Document**                                          © 2017 Thomson Reuters. No claim to original U.S. Government Works.